**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>GELESIS HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-11787 (BLS)<br>(Jointly Administered)<br><br>**Related Doc. No. 54, 56** |

**ASSET AND SHARE PURCHASE AGREEMENT**
**dated as of April 4, 2024**

**BY AND BETWEEN**

**T-INVESTMENTS S.R.L.**
and
**ANDROMEDA ENERGY S.R.L.**

**AS PURCHASER, AND**

**GEORGE L. MILLER, THE CHAPTER 7 TRUSTEE OF THE ESTATES OF GELESIS HOLDINGS, INC., GELESIS, INC. AND GELESIS, LLC**

**AS SELLER**

Dated: April 9, 2024
Wilmington, DE

COZEN O'CONNOR

By: */s/ John T. Carroll, III*

John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE 19801
(302) 295-2000 Phone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

*Counsel to George L. Miller,*
*Chapter 7 Trustee*

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are In re: Gelesis Holdings, Inc. (0610), Case No. 23-11787; In re: Gelesis, Inc. (9933), Case No. 23-11788; and In re: Gelesis, LLC (0102), Case No. 23-11789. The Debtors' headquarters was located at 501 Boyleston Street, Suite 6102, Boston, MA 02116.

*Execution Version*

**ASSET AND SHARE PURCHASE AGREEMENT**
**dated as of April 4, 2024**

**BY AND BETWEEN**

**T-INVESTMENTS S.R.L.**

and

**ANDROMEDA ENERGY S.R.L.**

**AS PURCHASER, AND**

**GEORGE L. MILLER, THE CHAPTER 7 TRUSTEE OF THE ESTATES OF GELESIS HOLDINGS, INC., GELESIS, INC. AND GELESIS, LLC**

**AS SELLER**

**TABLE OF CONTENTS**


**Page**

**ARTICLE I DEFINITIONS** .......... 2

**ARTICLE II PURCHASE AND SALE OF ASSETS** .......... 6

Section 2.1 Sale and Transfer of Purchased Assets .......... 6
Section 2.2 Assumed Liabilities .......... 6
Section 2.3 Excluded Liabilities .......... 7

**ARTICLE III** .......... 7

**CONSIDERATION** .......... 7
Section 3.1 Purchase Price .......... 7
Section 3.2 Payment of the Consideration .......... 7
Section 3.3 Withholding .......... 7

**ARTICLE IV CLOSING** .......... 7

Section 4.1 Closing .......... 7
Section 4.2 Deliveries by Seller .......... 8
Section 4.3 Deliveries by Purchaser .......... 8
Section 4.4 Deliveries by Seller and Purchaser. .......... 8

**ARTICLE V REPRESENTATIONS AND WARRANTIES OF SELLER** .......... 8

Section 5.1 Authorization; Enforceability .......... 8
Section 5.2 FDA Regulatory Matters .......... 9
Section 5.3 **No Other Representations or Warranties** .......... 9

**ARTICLE VI REPRESENTATIONS AND WARRANTIES OF PURCHASER** .......... 10

Section 6.1 Organization .......... 10
Section 6.2 Authorization; Enforceability .......... 10
Section 6.3 No Conflicts .......... 10
Section 6.4 Consents and Approvals .......... 10
Section 6.5 Financial Capability .......... 10
Section 6.6 Broker's, Finder's or Similar Fees .......... 10
Section 6.7 **No Other Representations or Warranties** .......... 10

**ARTICLE VII BANKRUPTCY COURT MATTERS** .......... 11

Section 7.1 The Trustee's Obligation to Solicit Competing Bids .......... 11
Section 7.2 Break-Up Fee. Expense Reimbursement .......... 11
Section 7.3 Conditions to Purchaser's Obligations .......... 11
Section 7.4 Approval of the Bidding Procedures .......... 11

Section 7.5 Bankruptcy Actions ..... 12
Section 7.6 Approval ..... 12
Section 7.7 Presentation to Bankruptcy Court/ Alternate Bid ..... 12

**ARTICLE VIII COVENANTS** ..... 13

Section 8.1 Tax Matters. ..... 13
Section 8.2 Reasonable Efforts; Cooperation. ..... 13
Section 8.3 Further Assurances ..... 13

**ARTICLE IX CONDITIONS** ..... 13

Section 9.1 Conditions Precedent to Performance ..... 13
Section 9.2 Conditions to Obligations of Purchaser ..... 14
Section 9.3 Conditions to Obligations of Seller ..... 15

**ARTICLE X TERMINATION** ..... 15

Section 10.1 Termination ..... 15
Section 10.2 Effect of Termination; Required Deposit ..... 16

**ARTICLE XI MISCELLANEOUS** ..... 17

Section 11.1 Survival of Covenants, Representations and Warranties ..... 17
Section 11.2 Amendment and Modification ..... 17
Section 11.3 Notices ..... 17
Section 11.4 Counterparts ..... 18
Section 11.5 Mutual Drafting ..... 18
Section 11.6 Entire Agreement; No Third Party Beneficiaries ..... 19
Section 11.7 Severability ..... 19
Section 11.8 Governing Law ..... 19
Section 11.9 Exclusive Jurisdiction ..... 19
Section 11.10 Remedies ..... 19
Section 11.11 Specific Performance. ..... 19
Section 11.12 Assignment ..... 20
Section 11.13 Headings ..... 20
Section 11.14 No Consequential or Punitive Damages ..... 20
Section 11.15 **"As Is" Transaction** ..... 20
Section 11.16 Bulk Transfer Notices ..... 21
Section 11.17 Interpretation. ..... 21

# ASSET AND SHARE PURCHASE AGREEMENT

**THIS ASSET AND SHARE PURCHASE AGREEMENT** (this "Agreement"), dated as of April 4, 2024 (the "Execution Date"), is made and entered into by and between T-Investments S.r.l., a company formed under the laws of Italy or its affiliated or controlled entity ("Theras") and Andromeda Energy S.r.l., a company formed under the laws of Italy ("Andromeda" and together with Theras, the "Purchaser"), and George L. Miller, the chapter 7 trustee (the "Trustee" or "Seller" and, together with the Purchaser, the "Parties" and each a "Party") of the chapter 7 estates (collectively, the "Estates") of Gelesis Holdings, Inc. ("Holdings"), Gelesis, Inc. ("Operating") and Gelesis, LLC ("LLC", and together with Holdings and Operating, "Debtors" and each entity individually, a "Debtor").

## RECITALS

WHEREAS, on October 30, 2023, Debtors each filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, as amended (the "Bankruptcy Code"), commencing a chapter 7 case (each, a "Bankruptcy Case" and, collectively, the "Bankruptcy Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the Estate of Operating holds a participation interest having a nominal value of euro 1,505,480.34 (the "Quota") of Gelesis S.r.l., an Italian corporation (the "Company");

WHEREAS, by operation of law, the Estates have acceded to the Debtors' rights in the Patents (as defined herein);

WHEREAS, Purchaser desires to purchase and acquire from Seller, acting on behalf of the Estates, all of the Estates' right, title and interest in and to the Quota, the Patents and certain other assets and rights, and to assume certain liabilities, all on the terms set forth herein;

WHEREAS, Seller desires to sell, convey, assign and transfer to Purchaser all of the Estates' right, title and interest in and to the Quota, the Patents and such other assets, rights and liabilities in the manner and subject to the terms and conditions set forth herein and as authorized under, among other things, Sections 105 and 363 of the Bankruptcy Code;

WHEREAS, Seller's ability to consummate the Transactions set forth in this Agreement is subject to, among other things, the entry of the Sale Order by the Bankruptcy Court;

WHEREAS, the Seller has determined that it is advisable and in the Estates' best interests to enter into this Agreement and to consummate the Transactions provided for herein, subject to entry of the Sale Order, and has approved the same; and

NOW, THEREFORE, in consideration of the foregoing premises and the representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

## ARTICLE I

## DEFINITIONS

For all purposes of this Agreement, except as otherwise expressly provided or unless the context clearly requires otherwise:

"Action" means any claim, hearing, charge, action, suit, arbitration, litigation, mediation, grievance, audit, examination, inquiry, proceeding or investigation by or before any Governmental Entity or arbitrator.

"Affiliate" means, with respect to any Person, any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"Agreement" or "this Agreement" means this Asset and Share Purchase Agreement, together with the Exhibits hereto and the exhibits and schedules thereto.

"Alternate Bid" has the meaning set forth in the Bidding Procedures.

"Alternate Bidder" has the meaning set forth in the Bidding Procedures.

"Alternative Transaction" means the sale, transfer or other disposition, directly or indirectly, including through an asset sale, share sale, merger, amalgamation or other similar transaction resulting from the Auction, of the Purchased Assets, in a transaction or series of transactions with one or more Persons other than Purchaser.

"Applicable Law" means any law, regulation, rule, order, judgment, guideline or decree of any Governmental Entity to which the Business or any Purchased Asset is, or the Company, or Estates are, subject, or which otherwise apply to the Transactions or to any obligation of a Party under this Agreement.

"Assumed Liabilities" has the meaning set forth in Section 2.2.

"Auction" has the meaning ascribed to such term in the Bidding Procedures Order.

"Bankruptcy Case" or "Bankruptcy Cases" has the meaning set forth in the recitals hereof.

"Bankruptcy Code" has the meaning set forth in the recitals hereof.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"Bidding Procedures" has the meaning set forth in Section 7.1.

"Bidding Procedures Order" has the meaning set forth in Section 7.3.

"Break-Up Fee" shall mean $450,000 (3% of Purchase Price).

"Business" means the business conducted by the Company.

"Business Day" means any day other than a Saturday, Sunday or a day on which banks in New York are authorized or obligated by Applicable Law or executive order to close or are otherwise generally closed.

"Closing" means the consummation of all Transactions on the terms set forth in this Agreement.

"Closing Date" has the meaning set forth in Section 4.1(b).

"Company" has the meaning set forth in the recitals hereof.

"Contract" means any written or oral contract, purchase order, service order, sales order, indenture, note, bond, lease, sublease, mortgage, agreement, guarantee, license or other agreement, arrangement, instrument or commitment, in each case that is binding upon a Person.

"Conveyance Documents" means (a) the Patents and Intellectual Property Assignments; (b) the Quota Purchase Deed; and/or (c) all documents of title and instruments of conveyance necessary to Transfer record and/or beneficial ownership to Purchaser of Purchased Assets from the Estates which require execution, endorsement and/or delivery of a certificate of title or other document in order to vest record or beneficial ownership thereof in Purchaser.

"Damages" means actual out-of-pocket losses, damages, liabilities, costs or expenses, including reasonable attorneys' fees.

"Debtor" or "Debtors" has the meaning set forth in the preamble hereof.

"Estates" has the meaning set forth in the preamble hereof.

"Execution Date" has the meaning set forth in the preamble hereof.

"Expense Reimbursement" has the meaning set forth in Section 7.2.

"Loan Documents" means the financing agreements entered into by the Company (as borrower) listed under Schedule 9.2(g) (*Loan Documents*);

"Governmental Entity" means any foreign, national, federal, state, municipal, local, provincial, territorial, government or any department, commission, board, bureau, agency, regulatory authority or instrumentality thereof, or any court, judicial, administrative or arbitral body or public or private tribunal, including any United States or other such entity anywhere in the world.

"Indebtedness" means, as to any Person, without duplication, as of the date of determination (i) all obligations of such Person for borrowed money, including accrued and unpaid interest, and any prepayment fees or penalties, (ii) all obligations of such Person evidenced by bonds, debentures, notes or similar instruments, (iii) all lease obligations of such Person capitalized in the books and records of such Person, (iv) all obligations of others secured by a Lien on property or assets owned or acquired by such Person, whether or not the obligations secured thereby has been assumed, (v) all letters of credit or performance bonds issued for the account of such Person, to the extent drawn upon, and (vi) all guarantees of such Person of any of the foregoing of any other Person.

"Intellectual Property" means all of the trademarks and domain names listed on *Schedule 2.1(b)*.

"IRS" means the United States Internal Revenue Service.

"Knowledge" means the actual knowledge of the Trustee.

"Liabilities" means all claims, demands, expenses, commitments and obligations (whether accrued or not, known or unknown, disclosed or undisclosed, matured or unmatured, fixed or contingent, asserted or unasserted, liquidated or unliquidated, arising prior to, at or after the commencement of the Bankruptcy Case) of or against any of the Debtors, the Estates, the Purchased Assets or the Business.

"Lien" or "Liens" means, with respect to any asset, any mortgage or deed of trust, pledge, hypothecation, assignment, deposit arrangement, lien, charge, claim, security interest, easement or encumbrance, or preference, priority or other form of security interests of any kind or other limited right, attachment, seizure, privilege, right of retention, personal right of use, beneficial ownership rights, option, right of first refusal or other security agreement or preferential arrangement of any kind or nature whatsoever (including any lease or title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing, and the filing of, or agreement to give, any financing statement perfecting a security interest under the Uniform Commercial Code of any jurisdiction) and, in the case of securities, any purchase option, call or similar right of a third party with respect to such securities.

"Material Adverse Effect" means any event, occurrence, fact, condition or change that is materially adverse to (a) the Business, results of operations, financial condition or assets of the Company, or (b) the Patents, (c) and Intellectual Property or (d) the ability of Seller to consummate the Transactions; provided, however, that "Material Adverse Effect" shall not include any event, occurrence, fact, condition or change, directly or indirectly, arising out of or attributable to: (i) general economic or political conditions; (ii) conditions generally affecting the industries in which the Company operates; (iii) any changes in financial, banking or securities markets in general, including any disruption thereof and any decline in the price of any security or any market index or any change in prevailing interest rates; (iv) acts of war (whether or not declared), armed hostilities or terrorism, or the escalation or worsening thereof; (v) any action required or permitted by this Agreement or any action taken (or omitted to be taken) with the written consent of or at the written request of Purchaser; (vi) any matter of which Purchaser is aware on the date hereof; (vii) the announcement, pendency or completion of the transactions contemplated by this Agreement, including losses or threatened losses of employees, customers, suppliers, distributors or others having relationships with the Company; (viii) the announcement, pendency or completion of the Bankruptcy Cases, including the Bidding Procedures; (ix) any epidemics, pandemics, disease outbreaks, or other public health emergencies; or (x) any failure by the Company to meet any internal or published projections, forecasts or revenue or earnings predictions (provided that the underlying causes of such failures (subject to the other provisions of this definition) shall not be excluded).

"Order" shall mean any order, ruling, decision, verdict, decree, writ, subpoena, mandate, precept, command, directive, consent, approval, award, judgment, injunction, or other similar determination or finding by, before, or under the supervision of any Governmental Entity, or any arbitrator, mediator, or other quasi-judicial or judicially sanctioned Person or body.

"Organizational Documents" means with respect to any Person, its certificate of incorporation, formation or organization (or comparable) document, its by-laws, partnership agreement or any certificate of formation, limited liability company agreement or operating agreement, or any other similar organizational instrument or document governing such Person or applicable to ownership.

"Patents" means all of the patent rights listed on *Schedule 2.1(b)*.

"Patents and Intellectual Property Assignments" means the instruments of assignment of the Patents and Intellectual Property substantially in the forms attached hereto as **Exhibit B** and **Exhibit C**.

"Person" means any individual, sole proprietorship, partnership, limited liability company, joint venture, trust, incorporated organization, association, corporation, institution, public benefit corporation, Governmental Entity or other entity.

"Product" means (1) any product manufactured, sold or licensed by the Company on or before Closing or (2) any product manufactured, sold or licensed by the Company or by any third parties on or before Closing and which is based, in whole or in part, on the Patents.

"Purchase Price" has the meaning set forth in Section 3.1.

"Purchased Assets" means the assets set forth on *Schedule 2.1(a)*. For the avoidance of doubt, "Purchased Assets" includes the Quota, the Patents and Intellectual Property.

"Purchaser" has the meaning set forth in the preamble hereof.

"Qualified Initial Overbid" has the meaning set forth in Section 7.3.

"Quota Purchase Deed" means the deed for the transfer of the Quota from the Seller to the Purchaser, which shall be executed by the Parties on the Closing Date for the purposes and to the effects of article 2470 of the Italian Civil Code pursuant to Section 4.2 below, in a form compliant with the draft attached hereto as Exhibit D.

"Quotaholders' Agreement" means the Quotaholders' Agreement, dated July 29, 2020, by and between Operating and RIF.

"Representatives" means, with respect to a Person, the directors, officers, employees, consultants, financial advisors, accountants, legal counsel, investment bankers and other agents, advisors and representatives of such Person and its Subsidiaries.

"Required Deposit" means five (5%) percent of the Purchase Price, paid by Purchaser to Seller at the time of execution of this Agreement, to be held in accordance with the Bidding Procedures and this Agreement.

"RIF" means Fondo Per La Ricerca E L'Innovazione S.r.l., an Italian company holding a participation interest in the Company having a nominal value of euro 386,539.69 of the Company.

"Sale Hearing" has the meaning ascribed to such term in the Bidding Procedures Order.

"Sale Order" means an order of the Bankruptcy Court substantially in the form and substance of **Exhibit A,** any material change to which must be acceptable to the Purchaser.

"Seller" has the meaning set forth in the preamble hereof.

"Subsidiary" means, with respect to any Person, (i) any corporation of which a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is owned or controlled, directly or indirectly,

by such Person, or (ii) any limited liability company, partnership, association or other business entity of which a majority of the equity interest is owned or controlled, directly or indirectly, by such Person.

"Successful Bidder" or "Successful Bid" have the meaning set forth in the Bidding Procedures.

"Tax" or "Taxes" means any and all United States federal, state, local or non-United States taxes, fees, levies, duties, tariffs, imposts, and other similar charges on or with respect to net income, alternative or add-on minimum, gross income, gross receipts, sales, use, *ad valorem*, franchise, capital, paid-up capital, profits, license, withholding, payroll, employment, excise, severance, stamp, occupation, premium, property, environmental, or windfall profit tax, customs duties, value added or other tax, escheat or unclaimed property, governmental fee or other like assessment or charge of any kind whatsoever, together with any interest or any penalty, addition to tax or additional amount imposed by any Governmental Entity responsible for the imposition of any such tax.

"Tax Authority" means any Governmental Entity with responsibility for, and competent to impose, collect or administer, any form of Tax.

"Tax Return" means any return, claim, election, information return, declaration, report, statement, schedule, or other document required to be filed in respect of Taxes and amended Tax Returns and claims for refund.

"Transactions" means the purchase and sale of the Purchased Assets by Seller to Purchaser, the delivery of the Purchase Price and the other transactions provided for or contemplated by this Agreement and/or any other document required hereunder.

"Transfer" means sell, convey, assign, transfer, deliver or otherwise dispose of, and "Transferable" shall have a corollary meaning.

"Transfer Taxes" means all goods and services, harmonized sales, excise, sales, use, transfer, stamp, stamp duty, recording, value added, gross receipts, documentary, filing, and all other similar Taxes or duties, fees or other like charges, however denominated (including any real property transfer Taxes and conveyance and recording fees and notarial fees), in each case including interest, penalties or additions attributable thereto whether or not disputed, arising out of or in connection with the Transactions, regardless of whether the Governmental Entity seeks to collect the Transfer Tax from Seller or Purchaser.

"Trustee" has the meaning set forth in the preamble herein.

## ARTICLE II

## PURCHASE AND SALE OF ASSETS

Section 2.1 Sale and Transfer of Purchased Assets. On the terms and subject to the conditions set forth in this Agreement, including entry of the Sale Order and such order not being subject to any stay and remaining in effect, on the Closing Date, Seller shall Transfer to Purchaser, and Purchaser shall purchase, acquire, assume and accept from the Estates free and clear of all Liens and Liabilities (except for any Assumed Liabilities), all of the Estates' right, title and interest in and to the Purchased Assets as provided in the Sale Order.

Section 2.2 Assumed Liabilities. On the terms and subject to the conditions set forth herein and in the Sale Order, effective as of the Closing, Purchaser shall assume from Seller (and

from and after the Closing pay, perform, discharge, or otherwise satisfy in accordance with their respective terms), and Seller shall convey, transfer, and assign to Purchaser, all Liabilities arising out of the ownership or operation of the Purchased Assets, in each case, by Purchaser, solely to the extent arising from periods occurring after the Closing (the "Assumed Liabilities").

Section 2.3 Excluded Liabilities. Purchaser shall not assume and shall not be deemed to have assumed, nor shall Purchaser be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of, or Actions against, Seller, the Estates, or any Debtor, or any Liabilities of or Actions against, the Seller, the Estates, or any Debtor relating to the Purchased Assets or the Business, other than the Assumed Liabilities, including those Liabilities set forth below (collectively, the "Excluded Liabilities"):

(a) all Liabilities of Seller or any Debtor for Indebtedness;

(b) subject to Section 8.1 of this Agreement, all Liabilities for any Taxes of Seller or any Debtor; and

(c) all Liabilities arising out of the ownership or operation of the Purchased Assets prior to the Closing (whether such Liability arises prior to or after the Closing).

## ARTICLE III

## CONSIDERATION

Section 3.1 Purchase Price. The aggregate consideration for the sale and transfer of the Purchased Assets (the "Purchase Price") will be fifteen million Dollars ($15,000,000 USD) in cash, which shall be allocated among the Purchased Assets in accordance with the Bidding Procedures as set forth in *Schedule 2.1(a)* hereto.

Section 3.2 Payment of the Consideration. The Parties hereto acknowledge and agree that, upon execution of this Agreement, the Purchaser paid the Required Deposit to the Seller, to be held by Trustee in a separately identified Trustee bank account with interest accruing to the benefit of Purchaser until Closing. On the Closing Date, Purchaser shall pay to Seller, by wire transfer of immediately available funds to an account or accounts designated in writing by Seller prior to the Closing Date, an amount equal to the Purchase Price less the Required Deposit.

Section 3.3 Withholding. Purchaser shall pay all consideration payable pursuant to this Agreement free and clear of any withholding Tax, except as required by Applicable Law. Any Tax withheld and remitted to the applicable Governmental Entity shall be treated as an amount paid to the Person in respect of which such withholding was made.

## ARTICLE IV

## CLOSING

Section 4.1 Closing.

(a) Upon the terms and subject to the conditions of this Agreement, the Closing shall take place at the offices of Cozen O'Connor at 1650 Market Street, 28th Floor, Philadelphia, PA 19103 at 10:00 am local time, as specified below, unless another date, time and/or place is agreed in writing by each of the Parties hereto.

(b) The Closing shall occur on or before the date (the "Closing Date") that is not later than the fifth Business Day following the satisfaction and/or waiver of all conditions to the Closing as set forth in Article IX (other than conditions which by their nature can be satisfied only at the Closing).

(c) If the Closing shall occur, Seller shall retain the Required Deposit and the Purchase Price to be paid at Closing shall be the difference between the Purchase Price and the Required Deposit as set forth in Section 4.3(a).

Section 4.2 Deliveries by Seller. At the Closing unless otherwise provided herein, Seller shall deliver or cause to be delivered to Purchaser (unless previously delivered) each of the following:

(a) duly executed counterparts of the Patents and Intellectual Property Assignments, **Exhibit B** and **Exhibit C** to the Company as the designee of the Purchaser, and each other Conveyance Document in respect of the Purchased Assets, each of which shall be in the form agreed upon with the Purchaser;

(b) an IRS Form W-9 duly executed by the Estates;

(c) an IRS Form W-9 duly executed by Seller of any assets located in the United States (or, if a Seller or Debtor is a disregarded entity within the meaning of Treasury Regulations Section 1.1445-2(b)(2)(iii), by the entity that is treated as the transferor of the relevant Purchased Assets); and

(d) a certificate, dated as of the Closing Date, executed by Seller certifying that the conditions in Section 9.2(a) and Section 9.2(b) have been satisfied.

Section 4.3 Deliveries by Purchaser. At the Closing, Purchaser shall deliver or cause to be delivered to Seller (unless previously delivered) each of the following:

(a) the Purchase Price (less the Required Deposit) by wire transfer of immediately available funds to an account designated by Seller;

(b) duly executed counterparts of each Conveyance Document in respect of the Purchased Assets; and

(c) the certificate referred to in Section 9.3(b).

Section 4.4 Deliveries by Seller and Purchaser. At the Closing, Seller and Purchaser shall enter into the Quota Purchase Deed to be executed by duly authorized representatives in front of an Italian Notary Public identified by the Purchaser for the purposes and to the effects of article 2470 of the Italian Civil Code.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser as follows:

Section 5.1 Authorization; Enforceability Subject to the entry of the Sale Order, Seller has all requisite power and authority to enter into, execute and deliver this Agreement and any other document to which Seller, on behalf of the Estates, is a party or is to be a party as required hereunder and to perform its obligations hereunder and thereunder. The execution, delivery and performance by Seller

of this Agreement and any other document to which Seller, on behalf of the Estates, is or is to be a party as required hereunder, and the consummation by Seller of the Transactions, have been duly authorized by all necessary action on the part of Seller. This Agreement has been and, when executed and delivered, any other document to which each of them is to be a party, will be, duly and validly executed and delivered by Seller and, subject to the entry of the Sale Order, constitutes (in the case of this Agreement) and will constitute (in the case of each such other document) the valid and binding obligation of Seller, on behalf of the Estates, enforceable against Seller in accordance with its terms subject to laws of general application relating to bankruptcy, insolvency, and the relief of debtors and other laws of general application affecting enforcement of creditors' rights generally, rules of law governing specific performance, injunctive relief and other equitable remedies.

Section 5.2 FDA Regulatory Matters.

(a) General Compliance. To the Trustee's Knowledge, the Product constitute all of the products currently tested, manufactured, handled, labeled, packaged, stored, supplied, promoted, distributed, marketed, commercialized, imported, exported, or sold by or on behalf of any Debtor.

(b) Administrative/Enforcement Action. The Trustee has not Knowledge of (i) any written notice, other communication from the FDA, the Federal Trade Commission, the Consumer Product Safety Commission, or any other Governmental Entity requiring, recommending, or threatening to initiate any Action to terminate or to suspend the sale of any Product, to withdraw a new Product application or approval, or alleging material noncompliance with any healthcare laws or (ii) any written notice of adverse finding, warning letter, notice of violation, or notice of import detention or refusal from the FDA or similar communications from any Governmental Entity relating to the Products.

(c) Recalls. To the Trustee's Knowledge the Product has not been voluntarily recalled, suspended, or discontinued by any Debtor at the request of the FDA or any other Governmental Entity, nor has any Debtor received any written notice from the FDA or any other Governmental Entity that it has commenced, or threatened to initiate, any action to withdraw approval of, place sales or marketing restrictions on, request the recall of, or seize the Products, or that it has commenced or threatened to initiate any action to enjoin or place restrictions on the production of the Product.

Section 5.4 **No Other Representations or Warranties**. **EXCEPT AS EXPRESSLY PROVIDED IN THIS ARTICLE V OR IN THE SALE ORDER, PURCHASER AGREES AND ACKNOWLEDGES THAT THE TRANSFER OF THE PURCHASED ASSETS IS MADE PURSUANT TO ORDER OF THE BANKRUPTCY COURT AND IS MADE "AS IS" AND "WHERE IS", AND ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN ARTICLE V OF THIS AGREEMENT, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE PURCHASED ASSETS OR OTHERWISE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING THE CONDITION OF THE ASSETS OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR ANY BUSINESS PROSPECTS, OR VALUATION OF THE PURCHASED ASSETS, OR THE COMPLIANCE OF THE ASSETS IN THEIR CURRENT OR FUTURE STATE WITH APPLICABLE LAWS OR ANY VIOLATIONS THEREOF.**

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller as follows.

Section 6.1 Organization. Purchaser is a company duly organized, validly existing and in good standing under the laws of Italy.

Section 6.2 Authorization; Enforceability. Purchaser has all requisite company power and authority to enter into this Agreement and any other document to which Purchaser is a party or is to be a party as required hereunder and to perform its obligations hereunder and thereunder. The execution, delivery and performance by Purchaser of this Agreement and any other document to which Purchaser is a party as required hereunder, and the consummation by Purchaser of the Transactions, have been duly authorized by all necessary action on the part of Purchaser. This Agreement and, when executed, any other document to which Purchaser is a party as required hereunder, have been duly and validly executed and delivered by Purchaser and, assuming due and valid execution and delivery by Seller, constitute the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency, and the relief of debtors and other laws of general application affecting enforcement of creditors' rights generally, rules of law governing specific performance, injunctive relief and other equitable remedies.

Section 6.3 No Conflicts. Assuming that requisite Bankruptcy Court approvals are obtained, the execution, delivery and performance of this Agreement and any other document to which Purchaser is a party as required hereunder, and the consummation of the Transactions will not (a) result in a violation of the Organizational Documents of Purchaser or (b) result in a violation of any law, statute, rule or regulation of any Governmental Entity or any applicable order of any court or any rule, regulation or order of any Governmental Entity applicable to Purchaser or by which any property or asset of Purchaser is bound.

Section 6.4 Consents and Approvals. No consent, approval, authorization, order, registration or qualification of or with any Governmental Entity having jurisdiction over Purchaser or any of its properties is required for the execution and delivery by Purchaser of the Agreement and any other document to which Purchaser is a party as required hereunder and performance of and compliance by Purchaser with all of the provisions hereof and thereof and the consummation by Purchaser of the Transactions, except the entry of the Sale Order and the expiration, or waiver by the Bankruptcy Court, of the 14-day period set forth in Bankruptcy Rule 6004(h).

Section 6.5 Financial Capability. Purchaser (a) has sufficient funds available to pay the Purchase Price and any expenses incurred by Purchaser in connection with the Transactions, and (b) has the resources and capabilities (financial or otherwise) to perform its obligations hereunder.

Section 6.6 Broker's, Finder's or Similar Fees. There are no brokerage commissions, finder's fees or similar fees or commissions payable by Purchaser in connection with the Transactions.

Section 6.7 **No Other Representations or Warranties. Notwithstanding anything contained in this Agreement to the contrary, Purchaser acknowledges and agrees that none of Seller, on behalf of the Estates, the Estates' Affiliates or any other Person is making any representations or warranties whatsoever, express or implied, beyond those expressly given by Seller**

**in Article V, or with respect to any other information provided to the Purchaser in connection with the Transactions, including as to the probable success or profitability of the ownership, use or operation of the Business or the Purchased Assets after Closing. Purchaser further represents that none of Seller, on behalf of the Estates, the Estates' Affiliates or any other Person has made any representation or warranty, express or implied as to the accuracy or completeness of any information regarding Seller or the transactions contemplated by this Agreement not expressly set forth in this Agreement, and none of Seller, on behalf of the Estates, the Estates' Affiliates or any other Person will have or be subject to liability to Purchaser or any other Person resulting from the distribution to Purchaser or its Representatives or Purchaser's use of, any such information, including data room information provided to Purchaser or its Representatives, in connection with the Transactions. Purchaser acknowledges that it has conducted to its satisfaction its own independent investigation of the Purchased Assets and, in making the determination to proceed with the Transactions, Purchaser has relied on the results of its own independent investigation.**

## ARTICLE VII

## BANKRUPTCY COURT MATTERS

Section 7.1 The Trustee's Obligation to Solicit Competing Bids. The Purchaser acknowledges that its purchase of the Purchased Assets pursuant to this Agreement is subject to the Trustee's obligation to market the Estates' assets, and to solicit, discuss and negotiate higher or better competing offers, if any, for the Purchased Assets. The Trustee will submit certain bidding procedures for Bankruptcy Court approval in connection with the proposed sale of the Purchased Assets (as ultimately approved by the Bankruptcy Court, the "Bidding Procedures"). The Trustee shall give notice of the transactions contemplated in this Agreement in accordance with Bankruptcy Rule 6004.

Section 7.2 Break-Up Fee. Expense Reimbursement. The Trustee acknowledges and agrees that the Purchaser has expended considerable time and expense and incurred substantial documented actual out-of-pocket expenses in connection with the negotiation and execution of this Agreement, its due diligence with respect to the Purchased Assets, and its efforts to consummate the transactions contemplated hereby. In consideration therefor, the Trustee shall seek Bankruptcy Court approval of the Break-Up Fee. Furthermore, the Trustee acknowledges and agrees that Purchaser's obligations under this Agreement are expressly conditioned on the Bankruptcy Court's approval of the Break-Up Fee and an amount up to $85,000 for out-of-pocket expenses (the "Expense Reimbursement"). Trustee acknowledges that Purchaser's efforts have substantially benefited and will benefit the bankruptcy estate through the submission of the offer reflected in this Agreement which will serve as a minimum bid on which other potentially interested bidders can rely. Therefore, as compensation for entering into this Agreement, taking action to attempt to consummate the transactions contemplated hereby and incurring the costs and expenses related thereto and other losses and damages, including foregoing other opportunities, subject to limitations set forth in the Bidding Procedures, Seller agrees, subject to approval by the Bankruptcy Court, to pay to Purchaser the Expense Reimbursement, plus the Break-Up Fee equal to three percent of the Purchase Price promptly following this Agreement being validly terminated by Purchaser or Seller pursuant to Section 10.1(f).

Section 7.3 Conditions to Purchaser's Obligations. Furthermore, the Trustee acknowledges and agrees that Purchaser's obligations under this Agreement are expressly conditioned on the Bankruptcy Court's approval of the Break-Up Fee and Expense Reimbursement.

Section 7.4 Approval of the Bidding Procedures. As soon as reasonably possible after the execution of this Agreement, the Trustee shall file a motion with the Bankruptcy Court seeking, *inter alia*, entry of an order approving the Bidding Procedures in substantially in the form attached

hereto as **Exhibit D** (the "Bidding Procedures Order") which shall be reasonably acceptable to Purchaser. The Trustee shall use commercially reasonable efforts to obtain entry of the Bidding Procedures Order, and the Trustee shall substantially comply with all of the terms and conditions contained in the Bidding Procedures. The Bidding Procedures shall provide for, subject to the terms and conditions thereof, among other things an initial overbid amount of $735,000, subsequent overbids in increments of $100,000, the submission of an initial overbid from a bidder meeting the Trustee's qualification standards (the "Qualified Initial Overbid") by no later than twenty (20) calendar days after the entry of the Bidding Procedures Order and, in the event of the timely submission of a Qualified Initial Overbid, an auction by no later than four (4) Business Days thereafter.

Section 7.5 Bankruptcy Actions.

(a) Seller shall use its commercially reasonable efforts to obtain the entry of the Sale Order within sixty (60) days of full execution hereof. Purchaser covenants and agrees that it shall reasonably cooperate with Seller as necessary to obtain entry of the Sale Order, including without limitation by furnishing information or documents to Seller as necessary to satisfy the requirements for obtaining Bankruptcy Court approval of the Sale Order.

(b) Each of Seller and Purchaser shall appear formally in the Bankruptcy Court if reasonably requested by the other Party or required by the Bankruptcy Court in connection with the transactions contemplated by this Agreement and keep the other reasonably apprised of the status of material matters related to this Agreement, including, upon reasonable request promptly furnishing the other with copies of notices or other communications received by Seller from the Bankruptcy Court or any third party and/or any Governmental Entity with respect to the transactions contemplated by this Agreement.

(c) If the Bidding Procedures Order or the Sale Order or any other orders of the Bankruptcy Court relating to this Agreement shall be appealed by any party (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such order), the Trustee shall diligently defend against such appeal, petition or motion and shall use commercially reasonable efforts to obtain an expedited resolution of any such appeal, petition or motion; provided that the Trustee shall consult with the Purchaser at the Purchaser's reasonable request regarding the status of any such proceeding.

Section 7.6 Approval. Seller's obligations under this Agreement and in connection with the transactions contemplated hereby are subject to entry of the Sale Order, and to the terms of the Sale Order and any other orders of the Bankruptcy Court applicable to the transactions contemplated in this Agreement. Nothing in this Agreement shall require the Seller or its Affiliates to give testimony to or submit a motion to the Bankruptcy Court that is untruthful or to violate any duty of candor or other duty to the Bankruptcy Court or its stakeholders.

Section 7.7 Presentation to Bankruptcy Court/ Alternate Bid . The Trustee's presentation to the Bankruptcy Court of the Purchaser's bid and the applicable Alternate Bid will not constitute the Trustee's acceptance of such bids until such bids are approved by the Bankruptcy Court at the Sale Hearing. Following approval of the sale to the Purchaser, if the Purchaser fails to consummate the sale for any reason, then the applicable Alternate Bid will be deemed to be the Successful Bid and the Trustee will be authorized, but not directed, to effect the sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.

## ARTICLE VIII

## COVENANTS

Section 8.1 Tax Matters.

(a) Purchaser shall be responsible for any Transfer Taxes. Purchaser shall promptly pay directly to the appropriate Tax Authority all applicable Transfer Taxes that may be imposed upon or payable or collectible or incurred in connection with this Agreement or the Transactions contemplated herein, or that may be imposed upon or payable or collectible or incurred in connection with the Transactions, and file all necessary Tax Returns with respect to all such Transfer Taxes.

(b) Purchaser and Seller shall cooperate in providing each other with any appropriate certification and other similar documentation relating to exemption from Transfer Taxes (including any appropriate resale exemption certifications), as provided under Applicable Law.

Section 8.2 Reasonable Efforts; Cooperation.

(a) Without prejudice to any other term or provision of this Agreement, each Party shall, and shall cause its Subsidiaries and its and their respective Representatives to, use its reasonable best efforts to perform their respective obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things reasonably necessary, proper or advisable to cause the Transactions to be effected as soon as reasonably practicable in accordance with the terms hereof, and to reasonably cooperate with each other Party and its Representatives in connection with any step required to be taken as a part of its obligations hereunder.

(b) The obligations of Seller pursuant to this Agreement, including this Section 8.2(b), shall be subject to any Orders entered, or approvals or authorizations granted or required, by or under the Bankruptcy Court or the Bankruptcy Code.

Section 8.3 Further Assurances. Without prejudice to any other term or provision of this Agreement, from time to time, as and when requested by any Party hereto and at such requesting Party's expense, any other Party hereto will execute and deliver, or cause to be executed and delivered, all such documents and instruments and will take, or cause to be taken, all such further or other actions as such requesting Party may reasonably deem necessary or desirable to evidence and effectuate the transactions contemplated by this Agreement and the transfer of title to the Purchased Assets to Purchaser or its designee(s) in accordance with the terms of the Agreement. For the avoidance of doubt, Seller's obligations under this Section 8.3 shall not extend beyond the closing of the Bankruptcy Cases.

## ARTICLE IX

## CONDITIONS

Section 9.1 Conditions Precedent to Performance. The respective obligations of Seller and Purchaser to consummate the Transactions contemplated by this Agreement are subject to the satisfaction (or to the extent permitted by law, written waiver signed by each of Seller and Purchaser), on or prior to the Closing Date, of the following conditions:

(a) Bankruptcy Matters. The Bankruptcy Court shall have entered the Sale Order. The Sale Order shall provide for a sale free and clear of all Liens, claims, and encumbrances and other interests in the Purchased Assets, as well as successor liability claims, to the fullest extent permissible under §363(f)

of the Bankruptcy Code, and shall make a finding under §363(m) of the Bankruptcy Code that the Purchaser is purchasing the Purchased Assets in good faith. Unless otherwise agreed by the Parties or ordered by the Bankruptcy Court, the Sale Order shall also waive the stay of the sale pursuant to Bankruptcy Rule 6004(h). The Sale Order shall have become final and non-appealable and shall not have been stayed, vacated, modified or supplemented without the prior written consent of Purchaser.

(b) No Order. No order, statute, rule, regulation, executive order, injunction, stay, decree, directive, or restraining order shall have been enacted, entered, promulgated or enforced by any court of competent jurisdiction or Governmental Entity that would (i) prevent the consummation of any of the Transactions contemplated by this Agreement or (ii) cause any of the Transactions contemplated by this Agreement to be rescinded following consummation, nor shall any such order, statute, rule, regulation, executive order, injunction, stay, decree, directive, or restraining order be in effect. No action shall be pending before any Governmental Entity or before any arbitral body wherein an unfavorable injunction, judgment, order, decree, ruling, directive or charge would (x) prevent consummation of any of the Transactions contemplated by this Agreement or (y) cause any of the Transactions contemplated by this Agreement to be rescinded following consummation.

Section 9.2 Conditions to Obligations of Purchaser. The obligations of Purchaser to consummate the Closing shall be subject to the satisfaction (or waiver by Purchaser) on or prior to the Closing Date, of each of the following conditions:

(a) Representations and Warranties. All representations and warranties made by Seller in ARTICLE V shall be true and correct in all material respects on and as of the Closing Date as if again made by Seller on and as of such date (or, if made as of a specific date, at and as of such date).

(b) Performance of the Obligations of Seller. Seller shall have performed in all material respects all obligations required under this Agreement to be performed by Seller on or before the Closing Date.

(c) Sellers' Deliverables. Seller shall have delivered, and Purchaser shall have received, all of the items set forth in Section 4.2 of this Agreement.

(d) Legal Proceedings. No legal proceeding shall have been commenced against Purchaser, Seller, or the Company which would prevent the Closing. No Order shall have been issued by any Governmental Entity, and be in effect, which has the effect of making the Transaction contemplated by this Agreement illegal, otherwise restraining or prohibiting consummation of this Transaction or causing any of the transactions contemplated hereunder to be rescinded following completion thereof.

(e) Sale Order. The Sale Order shall provide that, to the fullest extent permissible under section 363(f) of the Bankruptcy Code, all of the Estates' right, title and interest in and to the Purchased Assets consisting of the Quota, Patents and Intellectual Property are transferred to the Purchaser or its designee(s) free and clear of all Liens or any other right or restriction which may impair the full transfer of such rights, title and interest of the Estates to the Purchaser.

(f) Absence of Certain Changes, Events and Conditions. Except as expressly contemplated by this Agreement, since the date of execution of this Agreement and up to the Closing, there should not have been with respect to the Company, nor should have the Company caused, any event, occurrence or development that has had, or would reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

(g) Notices and Consents Under the Loan Documents. The Seller shall instruct the Company: (i) to deliver any notices of the Transactions that may be required of the Seller to parties under the Loan Documents; and (ii) to cooperate with the Purchaser to obtain any consents related to the Transactions required under the Loan Documents. The Seller and the Purchaser shall cooperate and reasonably assist the Company in this regard.

(h) Quotaholders' Agreement. RIF shall have agreed in writing to waive its tag along and drag along rights under Sections 5 and 6 of the Quotaholders' Agreement.

The foregoing conditions in this Section 9.2 are for the sole benefit of Purchaser and may be waived by Purchaser, in whole or in part, at any time and from time to time in its sole discretion.

Section 9.3 Conditions to Obligations of Seller. The obligations of Seller to consummate the Closing shall be subject to the satisfaction (or waiver by Seller) on or prior to the Closing Date, of the following conditions:

(a) Representations and Warranties. All representations and warranties made by Purchaser in Article VI of this Agreement shall be true and correct in all material respects on and as of the Closing Date as if again made by Purchaser on and as of such date (or, if made as of a specific date, at and as of such date).

(b) Performance of the Obligations of Purchaser. Purchaser shall have performed in all material respects all material obligations required under this Agreement to be performed by it on or before the Closing Date (except with respect to the obligation to pay the Purchase Price in accordance with the terms of this Agreement, which obligation shall be performed in all respects as required under this Agreement), and Seller shall have received a certificate dated as of the Closing Date and signed by an authorized signatory of Purchaser to that effect.

(c) Purchaser's Deliverables. Purchaser shall have delivered, and Seller shall have received, all of the items set forth in Section 4.3 of this Agreement.

The foregoing conditions in this Section 9.3 are for the sole benefit of Seller and may be waived by Seller, in whole or in part, at any time and from time to time in its sole discretion.

## ARTICLE X

## TERMINATION

Section 10.1 Termination. This Agreement may be terminated and the transactions contemplated hereby may be abandoned, at any time prior to the Closing Date as follows:

(a) By the mutual written consent of Purchaser and Seller;

(b) By either Purchaser or Seller upon written notice given to the other, if the Bankruptcy Court or any other Governmental Entity shall have issued an order, decree or ruling or taken any other action (which order, decree, ruling or other action the Parties hereto shall use their reasonable efforts to prevent the entry of and remove) that permanently restrains, enjoins or otherwise prohibits the consummation of the Transactions, and such order, decree, ruling or other action shall have become final and non-appealable;

(c) By Seller upon written notice given to Purchaser, if Purchaser shall have breached or failed to perform in any material respect any of its representations, warranties, covenants or other agreements

contained in this Agreement, which breach or failure to perform (i) would result in a failure of a condition set forth in Section 9.3 and (ii) cannot be cured within seven (7) Business Days after Seller provides written notice to Purchaser of such breach;

(d) By Purchaser upon written notice given to Seller, if Seller shall have breached or failed to perform in any material respect any of its representations, warranties or covenants of Article VIII contained in this Agreement, which breach or failure to perform (i) would result in a failure of a condition set forth in Section 9.2 and (ii) cannot be cured within seven (7) Business Days after Purchaser provides written notice to Seller of such breach;

(e) Subject to Purchaser's rights under the Bidding Procedures Order to amend the terms of this Agreement at the Auction, with respect to any Purchased Assets being purchased by Purchaser, by either Purchaser or Seller, if, at the conclusion of the hearing for the sale of Purchased Assets to Purchaser, Purchaser is not determined by the Bankruptcy Court to be the Successful Bidder with respect to such Purchased Assets, unless Purchaser is an Alternate Bidder; provided, however, that the Purchaser shall have the right to terminate this Agreement pursuant to this Section 10.1(e) on or at any time after the sixtieth (60th) day following the date of the entry of the Sale Order unless the Purchaser becomes the Successful Bidder on or prior to such date;

(f) By Purchaser or Seller upon written notice given to the other if Seller consummates an Alternative Transaction;

(g) By either Seller or Purchaser, if the transactions contemplated hereby shall not have been consummated on or prior to 5:00 p.m. Eastern time, on May 30, 2024 (the "End Date"); provided that the right to terminate this Agreement pursuant to this Section 10.1(g) shall not be available to a Party if the failure of the transactions contemplated hereby to be consummated by the End Date shall be due to the breach by such Party of any material covenant or other material agreement of such Party set forth in this Agreement;

(h) By Purchaser, if (i) the Bidding Procedures Order, (ii) the Bidding Procedures, (iii) Break-Up Fee, (iv) Expense Reimbursement or (v) the Sale Order is modified in any material respect without the consent of Purchaser and cannot be remedied by the Seller in a manner acceptable to Purchaser (and such action has not been reversed or vacated within ten (10) Business Days after its occurrence); or

(i) By Purchaser, if the Bankruptcy Court enters a final Order providing that the Bankruptcy Case is dismissed for any reason prior to the Closing Date.

For the avoidance of doubt, if the Purchaser or Seller terminates this Agreement with respect to any individual or combination of Purchased Assets, the Agreement, as amended as permitted by the Bidding Procedures Order, shall remain in full force and effect for any Purchased Assets for which Purchaser is the Successful Bidder. Any Party seeking to invoke its rights to terminate this Agreement shall give written notice thereof to the other Party or Parties specifying the provision hereof pursuant to which such termination is made and the effective date of such termination being the date of such notice.

Section 10.2 Effect of Termination; Required Deposit.

(a) If this Agreement is terminated by Seller or Purchaser in accordance with and pursuant to Section 10.1, then all rights and obligations of the Parties under this Agreement shall terminate; provided, however, that nothing herein shall relieve any Party from liability for any breach of this Agreement prior to such termination; provided further, that if this Agreement is terminated by Seller pursuant to Section

10.1(c), then Purchaser shall forfeit and Seller shall retain the Required Deposit as its sole and exclusive remedy for such breach.

(b) If this Agreement is terminated pursuant to Section 10.1 (except pursuant to Section 10.1(c)), then Seller shall promptly (but in any event within three (3) Business Days after such termination) return the Required Deposit to Purchaser by wire transfer of immediately available funds to an account or accounts designated by Purchaser.

(c) If this Agreement is terminated other than in a manner provided by Section 10.1, then, without limiting any other rights and remedies that may be available to Purchaser, then within five (5) Business Days after such termination, Seller shall refund the Required Deposit to Purchaser by wire transfer of immediately available funds to an account designated by Purchaser.

## ARTICLE XI

## MISCELLANEOUS

Section 11.1 Survival of Covenants, Representations and Warranties. The representations and warranties set forth in Article V and Article VI shall not survive the Closing Date; provided, however, that all covenants and agreements in this Agreement shall survive the Closing Date and remain in full force and effect indefinitely, unless otherwise specified therein.

Section 11.2 Amendment and Modification. This Agreement may be amended, modified and supplemented in any and all respects, but only by a written instrument signed by all of the Parties hereto expressly stating that such instrument is intended to amend, modify or supplement this Agreement; provided, however, any material amendment shall be subject to approval by the Bankruptcy Court except as may be otherwise provided in the Sale Order.

Section 11.3 Notices. All notices and other communications hereunder shall be in writing and mailed, delivered personally, emailed (which is confirmed) or sent by an overnight courier service, such as Federal Express, to the parties at the following addresses:

If to Seller:

George L. Miller, Trustee
1628 John F. Kennedy Blvd., Suite 950
Philadelphia, PA 19103-2110
Telephone: (215) 561-0950 Ext. 14
Facsimile: (215) 561-0330
Email: gmiller@mctllp.com

with a copy to:

John T. Carroll, III
Cozen O'Connor
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2028
Facsimile: (302) 295-2013
Email: jcarroll@cozen.com

If to Purchaser: T-Investments S.r.l.
Via Amilcare Ponchielli, 7 (20129) Milano
P.Iva: 11856010969
Email: t-investments@legalmail.it

with a copy, which will not constitute notice, to:
Offit Kurman PA
590 Madison Avenue – 6th floor
New York, NY 10022
Attn: Lydia Ferrarese, Esq.
Email: lydia.ferrarese@offitkurman.com

If to Purchaser: Andromeda Energy S.r.L.
Via Savoia, 82
Rome
Italy
Attn: Francesca Tusino
Email: f.tusino@margheritaenergy.it

with copy, which will not constitute notice, to:
Studio Legale Guzzetti
Via Larga, 9
Milan
Italy
Attn: Paolo Guzzetti, Marta Munafò
Email: paolo.guzzetti@studiolegaleguzzetti.it; marta.munafo@studiolegaleguzzetti.it

or to such other address as a Party may from time to time designate in writing in accordance with this Section 11.3. Each notice or other communication given to any Party hereto in accordance with the provisions of this Agreement shall be deemed to have been received (i) on the Business Day it is sent, if sent by personal delivery or email during normal business hours of the recipient (otherwise, on the first Business Day thereafter), or (ii) on the first Business Day after sending, if sent by overnight delivery, properly addressed and prepaid or (iii) upon receipt, if sent by mail (regular, certified or registered); provided, however, that notice of change of address shall be effective only upon receipt. The Parties agree that delivery of process or other papers in connection with any such action or proceeding in the manner provided in this Section 11.3, or in such other manner as may be permitted by law, shall be valid and sufficient service thereof.

Section 11.4 Counterparts. This Agreement may be executed by facsimile or PDF signature and in one or more counterparts, all of which shall be considered one and the same agreement and shall become effective when two or more counterparts have been signed by each of the Parties and delivered to the other Party.

Section 11.5 Mutual Drafting. This Agreement is the result of the joint efforts of Purchaser and Seller, and each provision hereof has been subject to the mutual consultation, negotiation

and agreement of the Parties and there is to be no construction against either Party based on any presumption of that Party's involvement in the drafting thereof.

Section 11.6 Entire Agreement; No Third Party Beneficiaries. This Agreement and other schedules, annexes, and exhibits hereto, any other document required hereunder, the Conveyance Documents and the Sale Order (i) constitute the entire agreement and supersede all prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof and thereof and supersede and cancel all prior agreements, negotiations, correspondence, undertakings, understandings and communications of the Parties, oral and written, with respect to the subject matter hereof, and (ii) are not intended to confer upon any Person other than the Parties hereto and thereto any rights, obligations or remedies hereunder; provided further that Affiliates and representatives of each Party are express third-party beneficiaries of Section 11.14 and this Section 11.6.

Section 11.7 Severability. Any term or provision of this Agreement that is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. If the final judgment of a court of competent jurisdiction or other authority declares that any term or provision hereof is invalid, void or unenforceable, the Parties agree that the court making such determination shall have the power to reduce the scope, duration, area or applicability of the term or provision, to delete specific words or phrases, or to replace any invalid, void or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision.

Section 11.8 Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE AND THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE.

Section 11.9 Exclusive Jurisdiction. All actions and proceedings arising out of or relating to this Agreement, including the resolution of any and all disputes hereunder, shall be heard and determined in the Bankruptcy Court, and the Parties to this Agreement hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defense of an inconvenient forum to the maintenance of any such action or proceeding. If the Bankruptcy Court does not have or declines to exercise subject matter jurisdiction over any action or proceeding arising out of or relating to this Agreement, then each Party (i) agrees that all such actions or proceedings shall be heard and determined in federal court of the United States for the District of Delaware, (ii) irrevocably submits to the jurisdiction of such courts in any such action or proceeding, (iii) consents that any such action or proceeding may be brought in such courts and waives any objection that such Party may now or hereafter have to the venue or jurisdiction or that such action or proceeding was brought in an inconvenient court, and (iv) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such Party at its address as provided in Section 11.3 (provided that nothing herein shall affect the right to effect service of process in any other manner permitted by Delaware law).

Section 11.10 Remedies. Neither the exercise of nor the failure to exercise a right of set-off or to give notice of a claim under this Agreement will constitute an election of remedies or limit Seller or Purchaser in any manner in the enforcement of any other remedies that may be available to any of them, whether at law or in equity.

Section 11.11 Specific Performance.

(a) Purchaser acknowledges and agrees that any breach of the terms of this Agreement by Purchaser would give rise to irreparable harm for which money damages would not be an adequate remedy, and, accordingly agrees that, in addition to any other remedies, Seller shall be entitled to enforce the terms of this Agreement, including, for the avoidance of doubt, Purchaser's obligation to fund the Purchase Price, by a decree of specific performance without the necessity of proving the inadequacy of money damages as a remedy and without the necessity of posting a bond. Seller acknowledges and agrees that any breach of the terms of this Agreement by Seller would give rise to irreparable harm for which money damages would not be an adequate remedy, and, accordingly agrees that, in addition to any other remedies, Purchaser shall be entitled to enforce the terms of this Agreement, including by a decree of specific performance without the necessity of proving the inadequacy of money damages as a remedy and without the necessity of posting a bond.

(b) Each Party hereto agrees that it will not oppose the granting of an injunction, specific performance and other equitable relief when expressly available pursuant to the terms of this Agreement on the basis that (i) there is adequate remedy at law or (ii) an award of specific performance is not an appropriate remedy for any reason at law or equity. In the event a Party hereto seeks an injunction or injunctions to prevent breaches of this Agreement when expressly available pursuant to the terms of this Agreement and to enforce specifically the terms and provisions of this Agreement when expressly available pursuant to the terms of this Agreement, such Party shall not be required to provide any bond or other security in connection with any such order or injunction.

Section 11.12 Assignment. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the Parties hereto (whether by operation of law or otherwise) without the prior written consent of the other Parties; provided that no such prior written consent shall be required for (a) an assignment by the Purchaser to one or more of its Affiliates, so long as the Purchaser remains liable for all of its obligations hereunder, or (b) an assignment by the Purchaser of its rights and interests hereunder after the Closing. Subject to the first sentence of this Section 11.12, this Agreement shall be binding upon, inure to the benefit of and be enforceable by the Parties and their respective successors and permitted assigns.

Section 11.13 Headings. The article, section, paragraph and other headings contained in this Agreement are inserted for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

Section 11.14 No Consequential or Punitive Damages. NO PARTY (OR ITS AFFILIATES OR REPRESENTATIVES) SHALL, UNDER ANY CIRCUMSTANCE, BE LIABLE TO THE OTHER PARTY (OR ITS AFFILIATES OR REPRESENTATIVES) FOR ANY CONSEQUENTIAL, EXEMPLARY, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES CLAIMED BY SUCH OTHER PARTY UNDER THE TERMS OF OR DUE TO ANY BREACH OF THIS AGREEMENT, INCLUDING LOSS OF REVENUE OR INCOME, DAMAGES BASED ON ANY MULTIPLIER OF PROFITS OR OTHER VALUATION METRIC, COST OF CAPITAL, DIMINUTION OF VALUE OR LOSS OF BUSINESS REPUTATION OR OPPORTUNITY.

Section 11.15 **"As Is" Transaction. THE PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ARTICLE V OF THIS AGREEMENT, (i) SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE PURCHASED ASSETS, (ii) WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLER HEREBY DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ALL OR ANY PORTION OF THE PURCHASED ASSETS AND (iii) ACCORDINGLY, THE PURCHASER**

**WILL ACCEPT THE PURCHASED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."**

Section 11.16 Bulk Transfer Notices. Seller and Purchaser hereby waive compliance with any bulk transfer provisions of the Uniform Commercial Code (or any similar Applicable Law), to the extent not repealed in any applicable jurisdiction, in connection with this Agreement and the Transactions.

Section 11.17 Interpretation.

(a) When a reference is made in this Agreement to a Section, Article, subsection, paragraph, item or Exhibit, such reference shall be to a Section, Article, subsection, paragraph, item or Exhibit of this Agreement unless clearly indicated to the contrary.

(b) Whenever the words "include," "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation."

(c) The words "hereof," "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement.

(d) The meaning assigned to each term defined herein shall be equally applicable to both the singular and the plural forms of such term, and words denoting any gender shall include all genders. Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(e) A reference to any Party to this Agreement or any other agreement or document shall include such Party's predecessors, successors and permitted assigns.

(f) A reference to any legislation or to any provision of any legislation shall include any amendment to, and any modification or re-enactment thereof, any legislative provision substituted therefore and all regulations and statutory instruments issued thereunder or pursuant thereto.

(g) References to $ are to United States Dollars.

(h) The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provisions of this Agreement.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

**SELLER:**

GEORGE L. MILLER, AS TRUSTEE FOR THE ESTATES

By: ______________________________
Name: George L. Miller
Title: Trustee

**PURCHASER:**

T-INVESTMENTS S.R.L.

By: ______________________________
Name: Federico Ferrari
Title: CEO

ANDROMEDA ENERGY S.R.L.

DI MUZIO FRANCO
04.04.2024 16:16:24
GMT+01:00

By: ______________________________
Name: Franco Di Muzio

# EXHIBIT A

## Sale Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>GELESIS HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-11787 (BLS)<br><br>(Jointly Administered)<br><br>Re D.I. No. _____ |

**ORDER GRANTING TRUSTEE'S MOTION FOR AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS AND (B) GRANTING CERTAIN RELATED RELIEF**

This matter comes before the Court upon consideration of the *Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estates' Assets, (B) Approving Payment of Break-Up Fee to Stalking Horse Purchaser, (C) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (D) Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Approving the Sale and (B) Granting Certain Related Relief* (the "Sale Motion"),[2] seeking, among other things, entry of an order: (a) approving the Sale of the assets identified as "Purchased Assets" in the *Asset and Share Purchase Agreement, dated as of March __, 2024,* by and among the Trustee as seller and T-Investments S.r.l. and Andromeda Energy S.r.l. (collectively, the "Purchaser") as purchaser (the "Purchase Agreement"); (b) authorizing the Trustee to sell the Purchased Assets free and clear of Liens (as defined below), Claims (as defined below), and other interests; and (c) granting related relief; and this Court, in furtherance of the Sale Motion, having entered an order on _____, 2024

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are In re: Gelesis Holdings, Inc. (0610), Case No. 23-11787; In re: Gelesis, Inc. (9933), Case No. 23-11788; and In re: Gelesis, LLC (0102), Case No. 23-11789. The Debtors' headquarters was located at 501 Boyleston Street, Suite 6102, Boston, MA 02116.
[2] All capitalized terms used, but not otherwise defined, in this Order shall have the meanings given in the Sale Motion and/or the Purchase Agreement, as applicable.

approving, among other things, the Bidding Procedures and the Notice Procedures; and the Trustee having determined, after an extensive marketing process, that the Purchaser has submitted the highest and best bid for the Purchased Assets; and adequate and sufficient notice of the Bidding Procedures, the Purchase Agreement, and all transactions contemplated thereunder and in this Order having been given in the manner directed by the Court in the Bidding Procedures Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered the Sale Motion and all relief related thereto, and having held a hearing regarding the Sale Motion (the "Sale Hearing"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation; and good and sufficient cause appearing,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

**Jurisdiction, Final Order, and Statutory Predicates**

A. This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief requested in the Sale Motion are sections 105(a), and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), 6004, 9007, and 9014.

C. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule

[3] These findings and conclusions constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

**Notice of the Sale Motion**

D. Actual written notice of the Sale Motion was provided to the Notice Parties.

E. The Trustee's Notice of Auction and Sale Hearing was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing, and Auction.

F. As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Bid Deadline, Auction, Sale Hearing, Sale, and the transactions contemplated thereby have been provided in accordance with the Bidding Procedures Order, sections 105(a) and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 9007. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, and Sale is or shall be required.

G. The disclosures made by the Trustee concerning the Sale Motion, Auction, Purchase Agreement, Sale, and Sale Hearing were good, complete, and adequate.

H. A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion, and the relief requested therein, has been afforded to all interested persons and entities, including but not necessarily limited to the Notice Parties. Any objections to this Order have been withdrawn or overruled.

**Good Faith Purchaser**

I. The Purchase Agreement was negotiated, proposed, and entered into by the Trustee and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions pursuant to section 363(m) of the Bankruptcy Code. The consideration to be paid by

Purchaser constitutes reasonably equivalent value and fair and adequate consideration for the Purchased Assets.

J. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreements among the bidders.

K. The Purchaser is purchasing the Purchased Assets in good faith, and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser complied with the provisions in the Bidding Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) the Purchaser in no way induced or caused the filing of the Bankruptcy Cases; and (e) all payments to be made by the Purchaser in connection with the Sale have been disclosed. The terms and conditions set forth in the Purchase Agreement are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying, or defrauding the Debtors or their present or future creditors under any applicable laws.

**Highest and Best Offer**

L. The Trustee conducted an auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order. The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets. The auction process

was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher and better offer for the Purchased Assets.

M. The Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Estates with respect to the Purchased Assets than would be provided by any other available alternative. The Trustee's determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

**No Fraudulent Transfer**

N. The consideration provided by the Purchaser pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) constitutes the highest and/or best offers for the Purchased Assets, and (iii) constitutes reasonably equivalent value and fair consideration for the Purchased Assets. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Estates than the Purchaser. Approval of the Sale Motion and the Purchase Agreement, and the consummation of the transactions contemplated thereby, are in the best interests of the Estates.

O. The Purchaser is not a mere continuation of the Debtors or the Estates, and no continuity of enterprise exists between the Purchaser and the Debtors or the Estates. The Purchaser is not holding itself out to the public as a successor to, or a continuation of, the Debtors or the Estates. The Purchaser is not a successor to the Debtors or the Estates, and the Sale does not amount to a consolidation, succession, merger, or de facto merger of the Purchaser and the Debtors or the Estates. At all times prior to the Closing Date, the Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common

identity of incorporators, directors, or controlling stockholders existed between the Debtors and the Purchaser. To the greatest extent permitted by law, the transfer of the Purchased Assets to the Purchaser, except as otherwise explicitly set forth in the Purchaser Agreement or this Order, does not, and will not, subject Purchaser to any liability with respect to claims arising from the Debtors' operation of the Debtors' businesses prior to the Petition Date and/or the Closing Date or by reason of such transfer, including under the laws of the United States, any state, territory, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of liability, including successor, vicarious, antitrust, environmental, fraudulent transfer or avoidance, revenue, pension, ERISA, tax, labor or the federal Worker Adjustment and Retraining Act of 1988 or any similar state or local analog, employment or benefits, de facto merger, business continuation, alter ego, derivative transferee, veil piercing, product liability, bulk sales or similar laws, or other applicable law, rule, or regulation ("Successor or Other Liabilities"). This finding and the use of the term Successor or Other Liabilities is limited to claims against the Debtors prior to the Closing Date and does not release, nullify, or enjoin the enforcement of any liability that the Purchaser would be subject to after the Closing Date relating to the Purchaser's independent ownership or operation of the Purchased Assets after the Closing Date.

**Validity of Transfer**

P. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors. Neither the Trustee nor the Purchaser is entering into the transactions contemplated by the Purchase Agreement fraudulently for purposes of statutory and/or common law fraudulent conveyance and fraudulent transfer laws.

Q. The Estates are the sole and lawful owners of the Purchased Assets. Subject to section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets to the Purchaser will

be, as of the Closing Date, a legal, valid, and effective transfer of the Purchased Assets, which transfer will vest the Purchaser with all right, title, and interest of the Estates to the Purchased Assets free and clear of: (a) all liens and encumbrances relating to, accruing or arising any time prior to the Closing Date (collectively, "Liens"), and (b) all claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims and Liens (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Estates' or the Purchaser's interests in the Purchased Assets, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) (collectively, as defined in this clause (b), "Claims"), relating to, accruing, or arising any time prior to the Closing Date.

**Section 363(f) is Satisfied**

R. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Trustee may sell the Purchased Assets free and clear of Liens and Claims in the Purchased Assets.

S. The Purchaser would not have entered into the Purchase Agreement, and would not consummate the transactions contemplated thereby, if the sale of the Purchased Assets to the Purchaser was not free and clear of all Liens and Claims of any kind or nature whatsoever. The

Purchaser shall not be responsible for any Liens or Claims other than Liabilities that have been expressly assumed by the Purchaser pursuant to the Purchase Agreement. The total consideration to be provided under the Purchase Agreement reflects the Purchaser's reliance on this Order to provide it, to the greatest extent possible pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Claims and Liens of any kind or nature whatsoever.

T. The Trustee may sell the Purchased Assets free and clear of all Liens and Claims against the Estates and/or any of the Purchased Assets because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Liens or Claims against the Estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Liens or Claims are adequately protected by having their Liens or Claims, if any, in each instance against the Estates or any of the Purchased Assets, attach to the net cash proceeds of the Sale ultimately attributable to the particular Purchased Assets in which such creditor alleges a Lien or Claim, in the same order of priority, with the same validity, force and effect that such Lien or Claim had prior to the Sale, subject to any claims and defenses that the Estates may possess with respect thereto.

**Compelling Circumstances for Immediate Sale**

U. Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated. The relief requested in the Sale Motion with respect to the Purchase Agreement is in the best interests of the Estates. The Trustee has demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for a Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy

Code in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Estates. Time is of the essence in consummating the Sale.

V. Given all of the circumstances of the Bankruptcy Cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

W. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

**General Provisions**

1. The relief requested in the Sale Motion is granted and approved with respect to the sale of the Purchased Assets to the Purchaser as set forth herein, and the Sale contemplated in the Sale Motion is approved with respect to the Purchaser and the Purchased Assets.

2. All objections (if any) to the Sale Motion or the relief requested therein with respect to the Purchase Agreement and the sale of the Purchased Assets to the Purchaser that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

**Approval of the Purchase Agreement**

3. The Purchase Agreement (and all schedules and exhibits affixed thereto) and all other ancillary documents, all of the terms and conditions thereof, and the transactions contemplated therein are hereby approved and authorized.

4. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to: (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order; (ii) close the Sale as contemplated in the Purchase Agreement and this Order; and (iii) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale.

5. This Order shall be binding in all respects upon the Trustee, the Estates, the Debtors, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, Claims, or other interests in, against, or on all or any portion of the Purchased Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, and the Purchased Assets. This Order and the Purchase Agreement shall inure to the benefit of the Estates and their creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

**Transfer of the Purchased Assets**

6. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets to the Purchaser on the Closing Date and, upon the Closing under the Purchase Agreement and the Trustee's receipt of the full Purchase Price, such

transfers shall constitute legal, valid, binding, and effective transfers of such Purchased Assets, shall vest the Purchaser with title to the Purchased Assets, and shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims, with all such Liens, Claims or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, that such Liens, Claims, or interests now have against the Purchased Assets. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets. The Purchaser shall not be liable for any Claims against the Debtors and shall have no successor liability of any kind by virtue of its having purchased the Purchased Assets.

7. All persons and entities in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing or upon any subsequent demand by Purchaser. On the Closing Date, each of the Estates' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims, or other interests in the Purchased Assets, if any, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

8. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Estates' interests in the Purchased Assets. Each and every national, federal, state, and local governmental agency or department, including without limitation every patent and/or trademark office, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

9. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record.

10. If any person or entity that has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Claims, or other interests that the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Trustee is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets.

11. This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, or other interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, patent and/or trademark offices, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title; and each of the foregoing persons and entities is hereby

directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

12. To the greatest extent available under applicable law, the Purchaser shall be authorized as of the Closing Date to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date to the extent permitted under applicable law.

13. No governmental unit may deny, revoke, suspend, or refuse to renew, a license, permit, charter, franchise, or other similar grant relating to the operation of the Purchased Assets solely because the Debtors are or have been debtors under the Bankruptcy Code and/or have been insolvent.

**Prohibition of Actions against the Purchaser**

14. Except as otherwise provided in this Order or the Purchase Agreement, the Purchaser shall not have any liability or other obligation to the Estates arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise provided herein or in the Purchase Agreement, the Purchaser shall not be liable for any Claims against the Estates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, ERISA, tax, labor law, de facto merger, mere continuation, or substantial continuity, or under any products liability law or doctrine, or any bulk sales or similar laws whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated

or unliquidated, whether matured or unmatured, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to, liabilities on account of warranties, intercompany loans and receivables among the Debtors, or in any way relating to the operation of any of the Purchased Assets prior to the Closing Date.

15. All persons and entities presently holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its "Affiliates" (as such term is defined at 11 U.S.C. § 101(2)), or any of their respective officers, directors, members, managers, partners, principals, shareholders, professionals, representatives, successors or assigns, their property, or the Purchased Assets, such persons' or entities' Liens, Claims, or interests in and to the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its Affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its Affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser, its Affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, its Affiliates, or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing

to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens, Claims, and other interests in or on the Purchased Assets, if any, as provided for herein, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

16. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

17. The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the Estates. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against, the Estates or any of the Purchased Assets. The consideration provided by the Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

18. Nothing in this Order or the Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment to the Purchaser of any license, permit, registration, authorization, or approval of or

with respect to a governmental unit without the Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

**<u>Other Provisions</u>**

19. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and the Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer and, as such, shall have the full protections of section 363(m) of the Bankruptcy Code.

20. The Trustee and the Purchaser shall cooperate in a commercially reasonable manner with regard to the closing of the transaction contemplated in the Purchase Agreement, and, subject to paragraph 25 of this Order, shall make any modifications or supplements to any related agreements, documents, or other instruments as may be reasonably necessary to facilitate the consummation of the transaction.

21. Pursuant to Federal Rules of Bankruptcy Procedure 7062, 9014, 6004(h), this Order shall be effective immediately upon entry and the Trustee and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

22. Nothing in this Order or the Purchase Agreement approves or provides for the transfer to the Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Estates.

23. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

24. The failure specifically to reference any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement is authorized and approved in its entirety; provided, however, that this Order shall govern if any inconsistency exists between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

25. The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Estates or any non-consenting third party.

26. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Purchased Assets to the Purchaser; (b) interpret, implement, and enforce the provisions of this Order; and (c) protect the Purchaser against any alleged Liens, Claims, or other interests in or against the Purchased Assets of any kind or nature whatsoever.

27. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion, the terms of this Order shall govern.

**EXHIBIT B**

**Patents Assignment**

# PATENT ASSIGNMENT AGREEMENT

This PATENT ASSIGNMENT AGREEMENT (“**Patent Assignment”**), dated as of [__], 2024 is made and entered into by and George L. Miller, the chapter 7 trustee (the “**Assignor**” and, together with the Assignee, the “**Parties**” and each a “Party”) of the chapter 7 estates (collectively, the “**Estates**”) of Gelesis Holdings, Inc. (“**Holdings**”), Gelesis, Inc. (“**Operating**”) and Gelesis, LLC (“**LLC**”, and together with Holdings and Operating, “**Debtors**” and each entity individually, a “**Debtor**”) and Gelesis S.r.l., a company formed under the laws of Italy (the “**Assignee**”).

WHEREAS, by operation of law, the Estates have acceded to the Debtors’ rights, titles, and interests in in the Patents (as defined herein);

WHEREAS, Assignor desires to sell, convey, assign, transfer, deliver to Assignee, and Assignee desires to purchase, acquire, assume and accept from Assignor, all of the Debtors’ rights, titles, and interests in and to the Patents and has agreed to execute and deliver this Patent Assignment, for recording with the United States Patent and Trademark Office and corresponding entities or agencies in any applicable jurisdictions.

NOW THEREFORE, the Parties agree as follows:

1. <u>Assignment</u>. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby irrevocably sells, conveys, assigns, transfers, and delivers to Assignee, and Assignee hereby purchases, acquires, assumes, and accepts, all of Assignor's right, title, and interest in and to the following (the “**Assigned Patents**”):

(a) the patents and patent applications set forth in <u>Schedule 1,</u> attached hereto, and all issuances, divisions, continuations, continuations-in-part, reissues, extensions, reexaminations, and renewals thereof (the “**Patents”**);

(b) all rights of any kind whatsoever of Debtors accruing under any of the foregoing Patents provided by applicable law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world;

(c) any and all royalties, fees, income, payments, and other proceeds hereafter due or payable with respect to any and all of the foregoing Patents; and

(d) any and all claims and causes of action with respect to any of the Patents, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.

2. <u>Recordation and Further Actions</u>. Assignor hereby authorizes the Commissioner for Patents in the United States Patent and Trademark Office and the officials of corresponding entities or agencies in any applicable jurisdictions to record and register this Patent Assignment

upon request by Assignee. Following the date hereof, upon Assignee's reasonable request, and at Assignee's sole cost and expense, Assignor shall take such steps and actions, and provide such cooperation and assistance to Assignee and its successors, assigns, and legal representatives, including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be reasonably necessary to effect, evidence, or perfect the assignment of the Assigned Patents to Assignee, or any assignee or successor thereto.

3. Counterparts. This Patent Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this Patent Assignment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Patent Assignment.

4. Successors and Assigns. This Patent Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

5. Governing Law. This Patent Assignment and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this Patent Assignment and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction).

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Assignor has duly executed and delivered this Patent Assignment as of the date first above written.

GEORGE L. MILLER, AS TRUSTEE FOR THE ESTATES

By: ________________________________________
Name: George L. Miller
Title: Trustee
Address for Notices:

[ACKNOWLEDGMENT]

STATE OF [STATE] )
)SS.
COUNTY OF [COUNTY] )

On the [ORDINAL NUMBER] day of [MONTH], [YEAR], before me personally appeared [SIGNATORY NAME], personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who, being duly sworn, did depose and say that he/she/they executed the same [in his/her/their authorized capacity as the [SIGNATORY TITLE] of [ASSIGNOR], the [TYPE OF ENTITY] described], and acknowledged the instrument to be [his/her/their free act and deed/the free act and deed of [ASSIGNOR]] for the uses and purposes mentioned in the instrument.

__________________________
Notary Public
Printed Name:

My Commission Expires:
[DATE]]

[AGREED TO AND ACCEPTED:

GELESIS S.R.L.

By: ______________________________
Name:
Title: President and CEO
Address for Notices:

[ACKNOWLEDGMENT

STATE OF [STATE] )
)SS.
COUNTY OF [COUNTY] )

On the [ORDINAL NUMBER] day of [MONTH], [YEAR], before me personally appeared [SIGNATORY NAME], personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, who, being duly sworn, did depose and say that he/she/they executed the same [in his/her/their authorized capacity as the [SIGNATORY TITLE] of [ASSIGNEE], the [TYPE OF ENTITY] described], and acknowledged the instrument to be [his/her/their free act and deed/the free act and deed of [ASSIGNEE]] for the uses and purposes mentioned in the instrument.

______________________
Notary Public
Printed Name:

My Commission Expires:
[DATE]]

## SCHEDULE 1

## ASSIGNED PATENTS AND PATENT APPLICATIONS

# Gelesis Patent Listing



| EPLG # | CTRY | STATUS | APPLICATION # | FILING DATE | PATENT # | GRANT DATE | TITLE |
|---|---|---|---|---|---|---|---|
| 4090.1002 AU | AU | Abandoned | 2007230234 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 BR | BR | Abandoned | PI07088426 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 CA | CA | Abandoned | 2646066 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 CN | CN | Abandoned | 07800197605 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 EP | EP | Abandoned | 077595676 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 IN | IN | Abandoned | 5866CHENP | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 JP | JP | Abandoned | 2009503243 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 MX | MX | Abandoned | MXa2008012248 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 NZ | NZ | Abandoned | 572011 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 RU | RU | Abandoned | 2008142623 | Mar 28, 2007 | | | A method and a medicament for improving the ability of a hydro gel to swell and/or to increase the amount of time said hydro gel remains swollen in the stomach of an animal, a method and a |
| 4090.1002 US | US | Expired | 60787396 | Mar 30, 2006 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 US1 | US | Abandoned | 12295145 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 US2 | US | Abandoned | 12403788 | Mar 13, 2009 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 US3 | US | Issued | 14597600 | Jan 15, 2015 | 10272155 | Apr 30, 2019 | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 US4 | US | Abandoned | 16364908 | Mar 26, 2019 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 WO | WO | Completed | PCTUS2007065351 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.3000 AT1D | AT | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 AT1D2 | AT | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 AU1 | AU | Issued | 2008286354 | Aug 8, 2008 | 2008286354 | Oct 30, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 AU1D | AU | Issued | 2013204055 | Aug 8, 2008 | 2013204055 | Dec 8, 2016 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 AU1D1 | AU | Issued | 2016219713 | Aug 8, 2008 | 2016219713 | Jul 12, 2018 | Polymer Hydrogels and Methods of Preparation Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 BE1D | BE | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 BE1D2 | BE | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 BG1D | BG | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 BG1D2 | BG | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CA1 | CA | Issued | 2695974 | Aug 8, 2008 | 2695974 | Oct 18, 2016 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CH1D | CH | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 CH1D2 | CH | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CN1 | CN | Issued | 2008801043990 | Aug 8, 2008 | ZL200880104399.0 | May 7, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CN1D | CN | Abandoned | 201410126564X | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CY1D | CY | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 CY1D2 | CY | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CZ1D | CZ | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 CZ1D2 | CZ | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 DE1 | DE | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 DE1D | DE | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 DE1D2 | DE | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 DK1D | DK | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 DK1D2 | DK | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 EE1D | EE | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 EE1D2 | EE | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 EP1 | EP | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 EP1D | EP | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 EP1D2 | EP | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 EP1D3 | EP | Abandoned | 151885662 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 ES1 | ES | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 ES1D | ES | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 ES1D2 | ES | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 FI1D | FI | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 FI1D2 | FI | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 FR1 | FR | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 FR1D | FR | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 FR1D2 | FR | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 GB1 | GB | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 GB1D | GB | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 GB1D2 | GB | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 GR1D | GR | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 GR1D2 | GR | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 HKCN1 | HK | Abandoned | 111011486 | Feb 5, 2011 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 HKEPD1 | HK | Issued | 121060172 | Aug 8, 2008 | 1172633 | Apr 15, 2016 | Polymer Hydrogels and Medical Use Thereof |
| 4090.3000 HR1D | HR | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 HR1D2 | HR | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 HU1D | HU | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 HU1D2 | HU | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IE1D | IE | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 IE1D2 | IE | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IN1 | IN | Abandoned | 1591DELNP2010 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IN1D | IN | Abandoned | 201618038316 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IS1D | IS | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 IS1D2 | IS | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IT1 | IT | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IT1D | IT | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 IT1D2 | IT | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1 | JP | Issued | 2010520475 | Aug 8, 2008 | 5485151 | Feb 28, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1D | JP | Issued | 2013238364 | Aug 8, 2008 | 5760069 | Jun 12, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1D2 | JP | Abandoned | 2015115944 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1D3 | JP | Issued | 2017176735 | Aug 8, 2008 | 7027083 | Feb 18, 2022 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1D4 | JP | Abandoned | 2020002831 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 LT1D | LT | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 LT1D2 | LT | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 LU1D | LU | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 LU1D2 | LU | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 LV1D | LV | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 LV1D2 | LV | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 MC1D | MC | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 MC1D2 | MC | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 MT1D | MT | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 MT1D2 | MT | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 MX1 | MX | Issued | MXa2010001629 | Aug 8, 2008 | 329919 | Oct 29, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 NL1D | NL | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 NL1D2 | NL | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 NO1D | NO | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 NO1D2 | NO | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 PL1D | PL | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 PL1D2 | PL | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 PT1D | PT | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 PT1D2 | PT | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 RO1D | RO | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 RO1D2 | RO | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 RU1 | RU | Issued | 2010105385 | Aug 8, 2008 | 2493170 | Sep 20, 2013 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 RU1D | RU | Issued | 2013126920 | Aug 8, 2008 | 2641749 | Jan 22, 2018 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 SE1D | SE | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 SE1D2 | SE | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 SI1D | SI | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 SI1D2 | SI | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 SK1D | SK | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 SK1D2 | SK | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 TR1D | TR | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 TR1D2 | TR | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 US | US | Issued | 12703286 | Feb 10, 2010 | 8658147 | Feb 25, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US1 | US | Abandoned | 14150430 | Jan 8, 2014 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US2 | US | Issued | 15185443 | Jun 17, 2016 | 10086014 | Oct 2, 2018 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US3 | US | Abandoned | 16546722 | Aug 21, 2019 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US4 | US | Abandoned | 17333424 | May 28, 2021 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US5 | US | Pending | 18239951 | Aug 30, 2023 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 WO | WO | Closed | PCTIT2007000584 | Aug 10, 2007 | | | Superabsorbent Polymer Hydrogels and Method of Preparing Thereof |
| 4090.3000 WO1 | WO | Completed | PCTEP2008006582 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3001 US | US | Expired | 61115759 | Nov 18, 2008 | | | Methods for Creating Satiety While Improving Glycemic Index |
| 4090.3002 AU | AU | Issued | 2009316622 | Nov 18, 2009 | 2009316622 | Dec 18, 2014 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 AUD | AU | Abandoned | 2014271268 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 BR | BR | Issued | PI09215778 | Nov 18, 2009 | PI09215778 | Jan 30, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 CA | CA | Issued | 2743559 | Nov 18, 2009 | 2743559 | Jan 2, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control, Comprising Cross-Linked, Edible Polymer Hydrogels |
| 4090.3002 CN | CN | Abandoned | 2009801548650 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 CND | CN | Pending | 2016101720761 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 DE | DE | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 EP | EP | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 EPD | EP | Abandoned | 171658354 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 ES | ES | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 FR | FR | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 GB | GB | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 HKCND | HK | Pending | 161124706 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3002 HKEP | HK | Issued | 121015427 | Nov 18, 2009 | 1161037 | Aug 3, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 IN | IN | Abandoned | 4266CHENP2011 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 IT | IT | Lapsed | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 JP | JP | Issued | 2011536618 | Nov 18, 2009 | 6220493 | Oct 6, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 JPD | JP | Issued | 2015215448 | Nov 18, 2009 | 6412484 | Oct 5, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 JPD1 | JP | Issued | 2018184072 | Nov 18, 2009 | 6934849 | Aug 26, 2021 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 JPD2 | JP | Abandoned | 2021136200 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 KR | KR | Issued | 1020117013966 | Nov 18, 2009 | 10-1804354 | Nov 28, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 KRD | KR | Issued | 1020177034312 | Nov 18, 2009 | 10-1932616 | Dec 19, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 MX | MX | Issued | MXa2011005078 | Nov 18, 2009 | 332012 | Jul 29, 2015 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 RU | RU | Issued | 2011124705 | Nov 18, 2009 | 2518262 | Apr 11, 2014 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 RUD | RU | Abandoned | 2014110522 | Nov 18, 2009 | | | Methods and Compositions for Weight Optimization and for Improving Blood Glucose Level |
| 4090.3002 US | US | Expired | 61151745 | Feb 11, 2009 | | | MODIFIED FOODS COMPRISING POLYMER HYDROGELS |
| 4090.3002 US1 | US | Expired | 61167291 | Apr 7, 2009 | | | EDIBLE COMPOSITIONS COMPRISING POLYMER HYDROGELS |
| 4090.3002 US2 | US | Abandoned | 13106909 | May 13, 2011 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 US3 | US | Abandoned | 15942655 | Apr 2, 2018 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 US4 | US | Pending | 17981620 | Nov 7, 2022 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 WO | WO | Completed | PCTUS2009064988 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3003 AU | AU | Issued | 2012267855 | Jun 7, 2012 | 2012267855 | Jun 16, 2016 | Method for Producing Hydrogels |
| 4090.3003 BR | BR | Issued | 1120130312092 | Jun 7, 2012 | 1120130312092 | Nov 24, 2020 | Method for Producing Hydrogels |
| 4090.3003 CA | CA | Issued | 2838006 | Jun 7, 2012 | 2838006 | Jun 2, 2020 | Method for Producing Hydrogels |
| 4090.3003 CN | CN | Issued | 2012800365654 | Jun 7, 2012 | ZL201280036565.4 | Apr 24, 2018 | Method for Producing Hydrogels |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3003 CND | CN | Issued | 2018102426488 | Jun 7, 2012 | ZL201810242648.8 | Jan 12, 2021 | Method for Producing Hydrogels |
| 4090.3003 DE | DE | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 EP | EP | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 EPD | EP | Abandoned | 181897828 | Jun 7, 2012 | | | Method for Producing Hydrogels |
| 4090.3003 ES | ES | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 FR | FR | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 GB | GB | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 HKEP | HK | Issued | 141097694 | Jun 7, 2012 | 1196224 | Aug 30, 2019 | Method for Producing Hydrogels |
| 4090.3003 IN | IN | Issued | 56CHENP2014 | Jun 7, 2012 | 349605 | Oct 20, 2020 | Method for Producing Hydrogels |
| 4090.3003 IT | IT | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 JP | JP | Issued | 2014514632 | Jun 7, 2012 | 6177233 | Jul 21, 2017 | Method for Producing Hydrogels |
| 4090.3003 JPD | JP | Issued | 2017098862 | Jun 7, 2012 | 6639441 | Jan 7, 2020 | Method for Producing Hydrogels |
| 4090.3003 JPD1 | JP | Issued | 201914046 | Jun 7, 2012 | 6789326 | Nov 5, 2020 | Method for Producing Hydrogels |
| 4090.3003 KR | KR | Issued | 1020147000433 | Jun 7, 2012 | 10-1992449 | Jun 18, 2019 | Method for Producing Hydrogels |
| 4090.3003 MOD | MO | Lapsed | J4780 | Jun 7, 2012 | J/4780 | Jun 10, 2021 | Method for Producing Hydrogels |
| 4090.3003 MX | MX | Issued | MXa2013014297 | Jun 7, 2012 | 360730 | Nov 14, 2018 | Method for Producing Hydrogels |
| 4090.3003 RU | RU | Issued | 2013158913 | Jun 7, 2012 | 2618329 | May 3, 2017 | Method for Producing Hydrogels |
| 4090.3003 US | US | Expired | 61494298 | Jun 7, 2011 | | | Synthesis of Hydrogels Having High Bulk Density |
| 4090.3003 US1 | US | Expired | 61542494 | Oct 3, 2011 | | | Synthesis of Hydrogels Having High Bulk Densit |
| 4090.3003 US2 | US | Issued | 13491197 | Jun 7, 2012 | 9353191 | May 31, 2016 | Method for Producing Hydrogels |
| 4090.3003 US3 | US | Issued | 15139896 | Apr 27, 2016 | 10544233 | Jan 28, 2020 | Method for Producing Hydrogels |
| 4090.3003 US4 | US | Issued | 16773164 | Jan 27, 2020 | 11130823 | Sep 28, 2021 | Method for Producing Hydrogels |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3003 US5 | US | Abandoned | 17480571 | Sep 21, 2021 | | | Method for Producing Hydrogels |
| 4090.3003 US6 | US | Pending | 18376978 | Oct 5, 2023 | | | Method for Producing Hydrogels |
| 4090.3003 WO | WO | Completed | PCTUS2012041345 | Jun 7, 2012 | | | Method for Producing Hydrogels |
| 4090.3004 US | US | Expired | 61788583 | Mar 15, 2013 | | | Crosslinking of Carboxymethylcellulose with Electron Beam Radiation |
| 4090.3004 US1 | US | Expired | 61814675 | Apr 22, 2013 | | | Crosslinking of Carboxymethylcellulose with Electron Beam Radiation |
| 4090.3005 AU | AU | Issued | 2015276889 | Jun 19, 2015 | 2015276889 | Jul 30, 2019 | Methods for Treating Overweight or Obesity |
| 4090.3005 BR | BR | Abandoned | 1120160297130 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 CA | CA | Issued | 2950482 | Jun 19, 2015 | 2950482 | Dec 6, 2022 | Methods for Treating Overweight or Obesity |
| 4090.3005 CN | CN | Abandoned | 2015800325970 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 CND | CN | Pending | 2022110322631 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 EP | EP | Allowed | 158103838 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 HKEP | HK | Pending | 171088816 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 JP | JP | Issued | 2016572527 | Jun 19, 2015 | 6726109 | Jun 30, 2020 | A Composition for Treating Overweight or Obesity |
| 4090.3005 KR | KR | Abandoned | 1020167036240 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 KRD | KR | Abandoned | 1020237018087 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 MX | MX | Issued | MXa2016016800 | Jun 19, 2015 | 386595 | Sep 29, 2021 | Methods for Treating Overweight or Obesity |
| 4090.3005 NZ | NZ | Abandoned | 726172 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 RU | RU | Issued | 2016148609 | Jun 19, 2015 | 2696494 | Aug 2, 2019 | Methods for Treating Overweight or Obesity |
| 4090.3005 US | US | Expired | 62014926 | Jun 20, 2014 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 US1 | US | Issued | 14744506 | Jun 19, 2015 | 9855294 | Jan 2, 2018 | Methods for Treating Overweight or Obesity |
| 4090.3005 US2 | US | Abandoned | 15175804 | Jun 7, 2016 | | | Methods for Treating Overweight or Obesity Using Biomarkers to Improve Efficacy |
| 4090.3005 US3 | US | Issued | 15835984 | Dec 8, 2017 | 10953038 | Mar 23, 2021 | Methods for Treating Overweight or Obesity |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3005 US4 | US | Issued | 17177495 | Feb 17, 2021 | 11628184 | Apr 18, 2023 | Methods for Treating Overweight or Obesity |
| 4090.3005 WO | WO | Completed | PCTUS1536654 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 ZA | ZA | Abandoned | 201700023 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3006 US | US | Closed | | | | | Tunable Polymer Hydrogels |
| 4090.3007 AU | AU | Issued | 2016211329 | Jan 29, 2016 | 2016211329 | Dec 10, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 BR | BR | Issued | 1120170162008 | Jan 29, 2016 | 1120170162008 | Sep 20, 2022 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 CA | CA | Issued | 2974967 | Jan 29, 2016 | 2974967 | Jun 27, 2023 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 CN | CN | Issued | 2016800110757 | Jan 29, 2016 | ZL201680011075.7 | Jan 31, 2023 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 DE | DE | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 EP | EP | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 EPD | EP | Abandoned | 202099354 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 ES | ES | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 FR | FR | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 GB | GB | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 HKEP | HK | Issued | 181021352 | Jan 29, 2016 | 1242719 | May 21, 2021 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 HKEPD | HK | Abandoned | 420220488399 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 IN | IN | Issued | 201727030042 | Jan 29, 2016 | 352790 | Dec 1, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 IND | IN | Issued | 202028051046 | Jan 29, 2016 | 379429 | Oct 20, 2021 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 IT | IT | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 JP | JP | Issued | 2017539328 | Jan 29, 2016 | 6847841 | Mar 5, 2021 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 JPD | JP | Abandoned | 2021033428 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 KR | KR | Pending | 1020177023170 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3007 MX | MX | Issued | MXa2017009805 | Jan 29, 2016 | 397807 | Nov 25, 2022 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 NL | NL | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 NZ | NZ | Abandoned | 733787 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 PL | PL | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 RU | RU | Issued | 2017129508 | Jan 29, 2016 | 2709361 | Dec 17, 2019 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 SE | SE | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 TR | TR | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US | US | Expired | 62109392 | Jan 29, 2015 | | | Method for Producing Hydrogels Having High Elastic Modulus |
| 4090.3007 US1 | US | Issued | 15010626 | Jan 29, 2016 | 10179824 | Jan 15, 2019 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US2 | US | Issued | 16220598 | Dec 14, 2018 | 10584183 | Mar 10, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US3 | US | Issued | 16812767 | Mar 9, 2020 | 11130824 | Sep 28, 2021 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US4 | US | Abandoned | 17480707 | Sep 21, 2021 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US5 | US | Pending | 18590052 | Feb 28, 2024 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 WO | WO | Completed | PCTUS1615669 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 ZA | ZA | Abandoned | 201705705 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3008 AU | AU | Abandoned | 2018248418 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 BR | BR | Abandoned | 1120190207244 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 CA | CA | Abandoned | 3058740 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 CN | CN | Issued | 201880036583X | Apr 4, 2018 | ZL201880036583.X | May 6, 2022 | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 EP | EP | Pending | 187808704 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 JP | JP | Abandoned | 2019554524 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 KR | KR | Abandoned | 1020197032374 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3008 MX | MX | Abandoned | MXa2019011846 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 RU | RU | Abandoned | 2019135202 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 US | US | Expired | 62481947 | Apr 5, 2017 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 US1 | US | Issued | 15944960 | Apr 4, 2018 | 11020421 | Jun 1, 2021 | Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 WO | WO | Completed | PCTUS1825994 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3009 AU | AU | Issued | 2017257494 | Apr 24, 2017 | 2017257494 | Mar 16, 2023 | Method for Treating Constipation |
| 4090.3009 BR | BR | Pending | 1120180718211 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3009 CA | CA | Allowed | 3022090 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3009 CN | CN | Issued | 2017800323495 | Apr 24, 2017 | ZL201780032349.5 | Jun 3, 2022 | Method for Treating Constipation |
| 4090.3009 EP | EP | Pending | 177901832 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3009 HKEP | HK | Pending | 191290915 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3009 JP | JP | Issued | 2018555942 | Apr 24, 2017 | 7132128 | Aug 29, 2022 | Method for Treating Constipation |
| 4090.3009 KR | KR | Issued | 1020187033873 | Apr 24, 2017 | 10-2353040 | Jan 14, 2022 | Method for Treating Constipation |
| 4090.3009 MO | MO | Issued | J006435 | Apr 24, 2017 | J/006435 | Jan 10, 2023 | Method for Treating Constipation |
| 4090.3009 MX | MX | Issued | MXa2018012923 | Apr 24, 2017 | 380673 | Mar 17, 2021 | Method for Treating Constipation |
| 4090.3009 RU | RU | Issued | 2018140926 | Apr 24, 2017 | 2745992 | Apr 5, 2021 | Method for Treating Constipation |
| 4090.3009 US | US | Expired | 62326951 | Apr 25, 2016 | | | Method for Treating Constipation |
| 4090.3009 US1 | US | Issued | 15494915 | Apr 24, 2017 | 10098907 | Oct 16, 2018 | Method for Treating Constipation |
| 4090.3009 WO | WO | Completed | PCTUS1729107 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3010 US | US | Closed | | | | | Method for Treating Obesity |
| 4090.3011 AU | AU | Pending | 2018251210 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 BR | BR | Pending | 1120190213708 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3011 CA | CA | Abandoned | 3059445 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 CN | CN | Abandoned | 2018800390367 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 EP | EP | Pending | 187842042 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 HKEP | HK | Pending | 620200111875 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 JP | JP | Pending | 2019555608 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 JPD | JP | Pending | 2023022734 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 KR | KR | Abandoned | 1020197033206 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 MX | MX | Abandoned | MXa2019012086 | Apr 16, 2018 | | | Cross-Linked Hydrogel Compositions And Their Use In The Treatment Or Prevention Of Disorders Related To Intestinal Permeability |
| 4090.3011 RU | RU | Issued | 2019135203 | Apr 16, 2018 | 2782530 | Oct 28, 2022 | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 US | US | Expired | 62485557 | Apr 14, 2017 | | | Compositions and Methods for Treating Digestive Disorders or Diseases |
| 4090.3011 US1 | US | Expired | 62562665 | Sep 25, 2017 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 US2 | US | Issued | 15954340 | Apr 16, 2018 | 10695363 | Jun 30, 2020 | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 US3 | US | Abandoned | 16773135 | Jan 27, 2020 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 US4 | US | Pending | 17501142 | Oct 14, 2021 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 WO | WO | Completed | PCTUS1827803 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3016 US | US | Abandoned | 63050405 | Jul 10, 2020 | | | Superabsorbent Materials and Methods of Production Thereof |
| 4090.3017 US | US | Expired | 63091461 | Oct 14, 2020 | | | Methods for Treating NASH |
| 4090.3018 US | US | Expired | 63278559 | Nov 12, 2021 | | | Compositions and Methods for Modulating the Intestinal Microbiome |
| 4090.3018 US1 | US | Expired | 63335356 | Apr 27, 2022 | | | Compositions and Methods for Modulating the Intestinal Microbiome |
| 4090.3018 WO | WO | Pending | PCTUS2249797 | Nov 14, 2022 | | | Compositions and Methods for Modulating the Intestinal Microbiome |
| 4090.3019 US | US | Abandoned | 63278770 | Nov 12, 2021 | | | Compositions and Methods for Modulating the Intestinal Microbiome |
| 4090.3020 US | US | Abandoned | 63278632 | Nov 12, 2021 | | | Covalently Crosslinked Carboxymethylcellulose with High Crystallinity |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3021 US | US | Abandoned | 63273277 | Oct 29, 2021 | | | Therapeutic Methods Based on Mechanobiology |

**EXHIBIT C**

**Assignment and Assumption of Intellectual Property Rights**

*Execution Version*

**ASSIGNMENT AND ASSUMPTION OF INTELLECTUAL PROPERTY RIGHTS**

This ASSIGNMENT AND ASSUMPTION AGREEMENT ("**Agreement**"), dated as of ______________ 2024 is made and entered into by and George L. Miller, the chapter 7 trustee (the "**Assignor**" and, together with the Assignee, the "**Parties**" and each a "Party") of the chapter 7 estates (collectively, the "**Estates**") pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") of Gelesis Holdings, Inc. ("**Holdings**"), Gelesis, Inc. ("**Operating**") and Gelesis, LLC ("**LLC**", and together with Holdings and Operating, "**Debtors**" and each entity individually, a "**Debtor**") and Gelesis S.r.l., a company formed under the laws of Italy (the "**Assignee**").

WHEREAS, by operation of law, the Estates have acceded to the Debtors' Intellectual Property Rights (as defined herein); and

WHEREAS, Assignor desires to sell, convey, assign, transfer, deliver to Assignee, and Assignee desires to purchase, acquire, assume and accept from Assignor, all of the Debtors' rights, titles, and interests in and to the trademarks and domain names identified and listed on Schedule 1 hereto (the "**Debtor Intellectual Property Rights**"), and Assignee has agreed to assume all of Assignor's duties and obligations arising out of the ownership or operation of the Debtor Intellectual Property Rights.

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the approval by the Bankruptcy Court, the parties agree as follows:

1. Assignment and Assumption. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby irrevocably sells, conveys, assigns, transfers, and delivers to Assignee, and Assignee hereby purchases, acquires, assumes and accepts, all of Assignor's right, title, and interest in and to the Debtor Intellectual Property Rights together with all national, foreign, state and common law registrations, applications for registration and renewals and extensions thereof; all goodwill associated therewith; and all benefits, privileges, causes of action and remedies relating to any of the foregoing hereafter accrued (including, without limitation, the rights to apply for and maintain all such registrations, renewals and/or extensions; to sue for infringements or other violations of its rights in the Debtor Intellectual Property Rights; to settle and retain proceeds from any such actions; and to collect future royalties and other payments under, on account of or in relation to the Debtor Intellectual Property Rights).

2. Recordation and Further Actions. Assignor hereby authorizes the Commissioner for Trademarks in the United States Patent and Trademark Office and the officials of corresponding entities or agencies in any applicable jurisdictions to record and register this Assignment upon request by Assignee. Following the date hereof, upon Assignee's reasonable request, and at Assignee's sole cost and expense, Assignor shall take such steps and actions, and provide such cooperation and assistance to Assignee and its successors, assigns, and legal representatives,

including the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other documents, as may be reasonably necessary to effect, evidence, or perfect the assignment of the Assigned Trademarks to Assignee, or any assignee or successor thereto.

3. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

4. Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

5. Governing Law. This Agreement and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this Agreement and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction).

[*Remainder of Page Intentionally Left Blank*]

**IN WITNESS WHEREOF**, the parties have executed this Agreement effective as of the date first above written.

**ASSIGNOR:**

**GEORGE L. MILLER, AS TRUSTEE FOR THE ESTATES**

________________________________________

**ASSIGNEE:**

**GELESIS S.R.L**.

By: ________________________________________
Name:
Title:

**SCHEDULE 1**

**Debtor Intellectual Property Rights**

| Trademark | Case Number | Country | Sub Case | Case Type | Application No. | Filing Date | Registration No. | Registration Date | Status | Next Renewa | Owner Name | Agent Name | Classes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BRYTE | 1481670.04026 | European Union (Community) | EM | PRI | 016224578 | 05-Jan-2017 | 016224578 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.04026 | United Kingdom | BXEM | RER | UK00916224578 | 05-Jan-2017 | UK00916224578 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.04027 | United Kingdom | GB | PRI | UK00003205133 | 05-Jan-2017 | UK00003205133 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.4026 | European Union (Community) | EM | PRI | 16224578 | 05-Jan-2017 | 16224578 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.4026 | United Kingdom | BXEM | RER | UK00916224578 | 05-Jan-2017 | UK00916224578 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.4027 | United Kingdom | GB | ORD | 3205133 | 05-Jan-2017 | 3205133 | 26-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GELESIS | 1481670.4001 | Hong Kong | HK | ORD | 305348160 | 31-Jul-2020 | 305348160 | 31-Jul-2020 | Registered | 30-Jul-2030 | Gelesis, Inc. | China Patent Agent (H.K.) Ltd. | 05 Int., 10 Int. |
| GELESIS | 1481670.4001 | Macau | MO1 | ORD | N/176901 | 16-Dec-2020 | N/176901 | 10-Feb-2022 | Registered | 10-Feb-2029 | Gelesis, Inc. | J. Pereira Da Cruz, S.A. | 05 Int. |
| GELESIS | 1481670.4001 | Macau | MO2 | ORD | N/176902 | 16-Dec-2020 | N/176902 | 10-Feb-2022 | Registered | 10-Feb-2029 | Gelesis, Inc. | J. Pereira Da Cruz, S.A. | 10 Int. |
| GELESIS | 1481670.4001 | Singapore | SG | ORD | 40202015045W | 20-Jul-2020 | 40202015045W | 16-Mar-2021 | Registered | 20-Jul-2030 | Gelesis, Inc. | Drew & Napier - Singapore | 05 Int., 10 Int. |
| GELESIS | 1481670.4001 | Taiwan | TW | ORD | 109074967 | 26-Oct-2020 | 02171220 | 16-Sep-2021 | Registered | 15-Sep-2031 | Gelesis, Inc. | Lee & Li, Attorneys-at-law | 05 Int., 10 Int. |
| GELESIS | 1481670.4001 | United States of America | US | PRI | 85822855 | 14-Jan-2013 | 4941665 | 19-Apr-2016 | Registered | 19-Apr-2026 | Gelesis, Inc. | | 05 Int. |
| GELESIS | 1481670.4003 | Argentina | AR | ORD | 3352215 | 08-Sep-2014 | 2813933 | 06-Jul-2016 | Registered | 06-Jul-2026 | Gelesis, Inc. | Hausheer Belgrano & Fernand | 05 Int. |
| GELESIS | 1481670.4004 | Australia | AU | ORD | 1645161 | 04-Sep-2014 | 1645161 | 30-Mar-2015 | Registered | 04-Sep-2024 | Gelesis, Inc. | Minter Ellison Australia - Sydne | 05 Int. |
| GELESIS | 1481670.4005 | Brazil | BR | ORD | 908285442 | 15-Sep-2014 | 908285442 | 04-Jun-2018 | Registered | 04-Jun-2028 | Gelesis, Inc. | Campedelli Advogados Associ | 05 Int. |
| GELESIS | 1481670.4006 | Canada | CA | PRI | 1692338 | 04-Sep-2014 | TMA1,042,005 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int. |
| GELESIS | 1481670.4007 | China (People's Republic) | CN | ORD | 15331807 | 12-Sep-2014 | 15331807 | 28-Jun-2016 | Registered | 27-Jun-2026 | Gelesis, Inc. | Tee & Howe Intellectual Proper | 05 Int. |
| GELESIS | 1481670.4008 | European Union (Community) | EM | PRI | 013246988 | 11-Sep-2014 | 013246988 | 06-Aug-2016 | Registered | 11-Sep-2024 | Gelesis, Inc. | Locke Lord LLP - Brussels, Bel | 05 Int., 10 Int., 42 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GELESIS | 1481670.4008 | United Kingdom | BXEM | RER | UK00913246988 | 11-Sep-2014 | UK00913246988 | 06-Aug-2016 | Registered | 11-Sep-2024 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int., 42 Int. |
| GELESIS | 1481670.4009 | India | IN | ORD | 2805168 | 04-Sep-2014 | 2805168 | 26-Sep-2017 | Registered | 04-Sep-2024 | Gelesis, Inc. | Azb & Partners | 05 Int. |
| GELESIS | 1481670.4010 | Mexico | MX | ORD | 1524824 | 05-Sep-2014 | 1519817 | 04-Mar-2015 | Registered | 05-Sep-2024 | Gelesis, Inc. | Olivares & Cia | 05 Int. |
| GELESIS AND I | 1481670.4002 | United States of America | US | PRI | 85822868 | 14-Jan-2013 | 4941666 | 19-Apr-2016 | Registered | 19-Apr-2026 | Gelesis, Inc. | | 05 Int. |
| GELESIS IN CH | 1481670.4012 | China (People's Republic) | CN | ORD | 15331806 | 12-Sep-2014 | 15331806 | 28-Oct-2015 | Registered | 27-Oct-2025 | Gelesis, Inc. | Tee & Howe Intellectual Prope | 05 Int. |
| GELESIS PLENI | 1481670.4065 | China (People's Republic) | CN1 | ORD | 62037678 | 10-Jan-2022 | 62037678 | 07-Aug-2022 | Registered | 06-Aug-2032 | Gelesis, Inc. | Haiwen & Partners | 05 Int. |
| GELESIS PLENI | 1481670.4065 | China (People's Republic) | CN2 | ORD | 62049862 | 10-Jan-2022 | 62049862 | 07-Jul-2022 | Registered | 06-Jul-2032 | Gelesis, Inc. | Haiwen & Partners | 10 Int. |
| GLII | 1481670.04034 | European Union (Community) | EM | PRI | 016224602 | 05-Jan-2017 | 016224602 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.04034 | United Kingdom | BXEM | RER | UK00916224602 | 05-Jan-2017 | UK00916224602 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.04035 | United Kingdom | GB | ORD | UK00003205125 | 05-Jan-2017 | UK00003205125 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.4033 | Canada | CA | ORD | 1816849 | 05-Jan-2017 | TMA1,042,014 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int., 10 Int. |
| GLII | 1481670.4034 | European Union (Community) | EM | PRI | 16224602 | 05-Jan-2017 | 16224602 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.4034 | United Kingdom | BXEM | RER | UK00916224602 | 05-Jan-2017 | UK00916224602 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.4035 | United Kingdom | GB | ORD | UK00003205125 | 05-Jan-2017 | UK00003205125 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| INSPIRED BY N | 1481670.4049 | United States of America | US | PRI | | | | | Unfiled | | Gelesis, Inc. | | |
| JOURNETA | 1481670.04030 | European Union (Community) | EM | PRI | 016224594 | 05-Jan-2017 | 016224594 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| JOURNETA | 1481670.04030 | United Kingdom | BXEM | RER | UK00916224594 | 05-Jan-2017 | UK00916224594 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| JOURNETA | 1481670.04031 | United Kingdom | GB | ORD | UK00003205127 | 05-Jan-2017 | UK00003205127 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JOURNETA | 1481670.4029 | Canada | CA | ORD | 1816846 | 05-Jan-2017 | TMA1,042,011 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int., 10 Int. |
| JOURNETA | 1481670.4030 | European Union (Community) | EM | PRI | 16224594 | 05-Jan-2017 | 16224594 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| JOURNETA | 1481670.4030 | United Kingdom | BXEM | RER | UK00916224594 | 05-Jan-2017 | UK00916224594 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| JOURNETA | 1481670.4031 | United Kingdom | GB | ORD | UK00003205127 | 05-Jan-2017 | UK00003205127 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.04022 | European Union (Community) | EM | PRI | 016224561 | 05-Jan-2017 | 016224561 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.04022 | United Kingdom | BXEM | RER | UK00916224561 | 05-Jan-2017 | UK00916224561 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.04023 | United Kingdom | GB | PRI | UK00003205134 | 05-Jan-2017 | UK00003205134 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.4021 | Canada | CA | ORD | 1816830 | 05-Jan-2017 | TMA1,042,010 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int., 10 Int. |
| PLENITY | 1481670.4022 | European Union (Community) | EM | PRI | 016224561 | 05-Jan-2017 | 016224561 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.4022 | United Kingdom | BXEM | RER | UK00916224561 | 05-Jan-2017 | UK00916224561 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.4023 | United Kingdom | GB | ORD | UK00003205134 | 05-Jan-2017 | UK00003205134 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.4024 | Australia | AU | MPR | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4024 | Colombia | CO | MPR | SD2020/0025317 | 06-Mar-2020 | 678664 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | Clarke Modet & Co. - Colombia | 05 Int. |
| PLENITY | 1481670.4024 | Hong Kong | HK | ORD | 305348179 | 31-Jul-2020 | 305348179 | 31-Jul-2020 | Registered | 30-Jul-2030 | Gelesis, Inc. | China Patent Agent (H.K.) Ltd. | 05 Int., 10 Int. |
| PLENITY | 1481670.4024 | Int'l Registration - Madrid Agreeme | WO | ORD | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4024 | Israel | IL | MPR | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4024 | Japan | JP | MPR | 2020354981 | 06-Mar-2020 | 1523520 | 18-Aug-2023 | Registered | 06-Mar-2030 | Gelesis, Inc. | SUGIMURA & Partners | 05 Int. |
| PLENITY | 1481670.4024 | Korea, Republic of | KR | MPR | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLENITY | 1481670.4024 | Macau | MO1 | ORD | N/176899 | 16-Dec-2020 | N/176899 | 10-Feb-2022 | Registered | 10-Feb-2029 | Gelesis, Inc. | J. Pereira Da Cruz, S.A. | 05 Int. |
| PLENITY | 1481670.4024 | Macau | MO2 | ORD | N/176900 | 16-Dec-2020 | N/176900 | 10-Feb-2022 | Registered | 10-Feb-2029 | Gelesis, Inc. | J. Pereira Da Cruz, S.A. | 10 Int. |
| PLENITY | 1481670.4024 | Russian Federation | RU | MPR | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4024 | Saudi Arabia | SA1 | ORD | | | | | Unfiled | | Gelesis, Inc. | Cedar White Bradley IP LLC | 05 Int. |
| PLENITY | 1481670.4024 | Saudi Arabia | SA2 | ORD | | | | | Unfiled | | Gelesis, Inc. | Cedar White Bradley IP LLC | 10 Int. |
| PLENITY | 1481670.4024 | Singapore | SG | ORD | 40202015053W | 20-Jul-2020 | 40202015053W | 07-Jan-2021 | Registered | 20-Jul-2030 | Gelesis, Inc. | Drew & Napier - Singapore | 05 Int., 10 Int. |
| PLENITY | 1481670.4024 | Taiwan | TW | ORD | 109074968 | 26-Oct-2020 | 02171221 | 16-Sep-2021 | Registered | 15-Sep-2031 | Gelesis, Inc. | Lee & Li, Attorneys-at-law | 05 Int., 10 Int. |
| PLENITY | 1481670.4024 | United Arab Emirates | AE1 | ORD | | | | | Unfiled | | Gelesis, Inc. | Cedar White Bradley IP LLC | 05 Int. |
| PLENITY | 1481670.4024 | United Arab Emirates | AE2 | ORD | | | | | Unfiled | | Gelesis, Inc. | Cedar White Bradley IP LLC | 10 Int. |
| PLENITY | 1481670.4024 | United States of America | US2 | DIV | 87983022 | 06-Jan-2017 | 6064866 | 26-May-2020 | Registered | 26-May-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4042 | China (People's Republic) | CN2 | ORD | 42837302 | 05-Dec-2019 | | | Published | | Gelesis, Inc. | Haiwen & Partners | 10 Int. |
| PLENITY | 1481670.4044 | India | IN | ORD | | | | | Unfiled | | Gelesis, Inc. | Vaish Associates Advocates | 05 Int., 10 Int. |
| PLENITY | 1481670.4061 | China (People's Republic) | CN | ORD | 60126316 | 27-Oct-2021 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 05 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN1 | ORD | 62032518 | 10-Jan-2022 | 62032518 | 07-Jul-2022 | Registered | 06-Jul-2032 | Gelesis, Inc. | Haiwen & Partners | 01 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN2 | ORD | 62054638 | 10-Jan-2022 | 62054638 | 14-Jul-2022 | Registered | 13-Jul-2032 | Gelesis, Inc. | Haiwen & Partners | 29 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN3 | ORD | 62056660 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 30 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN4 | ORD | 62049966 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 31 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN5 | ORD | 62033127 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 35 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLENITY | 1481670.4066 | China (People's Republic) | CN6 | ORD | 62057196 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 41 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN7 | ORD | 62053124 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 42 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN8 | ORD | 62037787 | 10-Jan-2022 | 62037787 | 07-Jul-2022 | Registered | 06-Jul-2032 | Gelesis, Inc. | Haiwen & Partners | 44 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN9 | DIV | 62057196A | 10-Jan-2022 | 62057196A | 21-Aug-2022 | Registered | 20-Aug-2032 | Gelesis, Inc. | Haiwen & Partners | 41 Int. |
| PLENITY | 1481670.4071 | China (People's Republic) | CN | ORD | 71783092 | 24-May-2023 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 05 Int. |
| PLENTIFULL | 1481670.00022 | European Union (Community) | EM | ORD | 015276348 | 24-Mar-2016 | 015276348 | 18-Jul-2016 | Registered | 24-Mar-2026 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| PLENTIFULL | 1481670.00022 | United Kingdom | BXEM | RER | UK00915276348 | 24-Mar-2016 | UK00915276348 | 18-Jul-2016 | Registered | 24-Mar-2026 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| PLENTIFULL | 1481670.4014 | Canada | CA | PRI | 1772758 | 16-Mar-2016 | TMA1,041,968 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int. |
| PLENTIFULL | 1481670.4015 | European Union (Community) | EM | PRI | 15276348 | 24-Mar-2016 | 15276348 | 18-Jul-2016 | Registered | 24-Mar-2026 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| PLENTIFULL | 1481670.4015 | United Kingdom | BXEM | RER | UK00915276348 | 24-Mar-2016 | UK00915276348 | 18-Jul-2016 | Registered | 24-Mar-2026 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| SAEF | 1481670.04018 | European Union (Community) | EM | PRI | 016224611 | 05-Jan-2017 | 016224611 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.04018 | United Kingdom | BXEM | RER | UK00916224611 | 05-Jan-2017 | UK00916224611 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.04020 | United Kingdom | GB | ORD | UK00003205115 | 05-Jan-2017 | UK00003205115 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.4018 | European Union (Community) | EM | PRI | 16224611 | 05-Jan-2017 | 16224611 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.4018 | United Kingdom | BXEM | RER | UK00916224611 | 05-Jan-2017 | UK00916224611 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.4019 | Canada | CA | ORD | 1816853 | 05-Jan-2017 | TMA1,041,987 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 00 Undefined |
| SAEF | 1481670.4020 | United Kingdom | GB | ORD | UK00003205115 | 05-Jan-2017 | UK00003205115 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.4038 | European Union (Community) | EM | PRI | 8708356 | 24-Nov-2009 | 8708356 | 02-Jun-2010 | Registered | 24-Nov-2029 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SAEF | 1481670.4038 | United Kingdom | BXEM | RER | UK00908708356 | 24-Nov-2009 | UK00908708356 | 02-Jun-2010 | Registered | 24-Nov-2029 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| 吉利西斯 (GELE | 1481670.4069 | China (People's Republic) | CN | ORD | 63513802 | 24-Mar-2022 | 63513802 | 14-Oct-2022 | Registered | 13-Oct-2032 | Gelesis, Inc. | Haiwen & Partners | 05 Int. |
| 吉利西斯 (GELE | 1481670.4070 | China (People's Republic) | CN | ORD | 63509034 | 24-Mar-2022 | 63509034 | 21-Sep-2022 | Registered | 20-Sep-2032 | Gelesis, Inc. | Haiwen & Partners | 10 Int. |

**Internet Domain Names**

gelesis.co
gelesis.com
gelesis.info
gelesis.it
gelesis.us
gelesis100.com
gelesisclinical.com
gellica.com
gopleinty.com
goplenity.com
goplennity.com
helloplenity.com
helloplenity.info
helloplenity.net
helloplenity.org
helloplenity.us
helloplennity.com
learnaboutplenity.com
liveplenity.com
liveplenity.info
liveplenity.net
liveplenity.org
liveplenity.us
liveplennity.com
mypleinty.com
myplenity.ca
myplenity.co.uk
myplenity.com
myplenity.de
myplenity.dk
myplenity.es
myplenity.fr
myplenity.info
myplenity.it
myplenity.net
myplenity.org
myplenity.se
myplenity.tv
myplenity.us
myplennity.com
myplentity.com
myplenty.com

nabiproject.com
nabiproject.org
ourplenity.com
pleinty.com
plenitea.com
plenitee.com
plenity.biz
plenity.ch
plenity.de
plenity.dk
plenity.es
plenity.fr
plenity.info
plenity.it
plenity.reviews
plenity.se
plenity.tv
plenityexperience.com
plenityfacts.com
plenityguide.com
plenityhcp.com
plenityhcp.us
plenityhome.com
plenityhub.com
plenityinfo.com
plenityinformation.com
plenityjourney.com
plenitylife.com
plenitylife.info
plenitylife.net
plenitylife.org
plenitynow.com
plenityrx.com
plenityshop.com
plenityworld.com
plennity.com
plennityrx.com
shareplenity.com
shopplenity.com
startplenity.com
yourplenity.com

# EXHIBIT D

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>GELESIS HOLDINGS, INC., *et al.*,[1]<br>Debtors. | Chapter 7<br>Case No. 23-11787 (BLS)<br>(Jointly Administered)<br>Re D.I. No. _____ |

**ORDER GRANTING TRUSTEE'S MOTION FOR AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS, (B) APPROVING PAYMENT OF BREAK-UP FEE AND EXPENSE REIMBURSEMENT TO STALKING HORSE PURCHASER, (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE, AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

This matter comes before the Court upon consideration of the *Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estates' Assets, (B) Approving Payment of Break-Up Fee and Expense Reimbursement to Stalking Horse Purchaser, (C) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (D) Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Approving the Sale, and (B) Granting Certain Related Relief* (the "Sale Motion")[2] seeking, among other things, entry of an order: (i) approving the Bidding Procedures in connection with the Sale, (ii) approving the payment of a Break-Up Fee and Expense Reimbursement to the Stalking Horse Purchaser, (iii) scheduling an Auction and hearing to approve the Sale, (iv) approving the form and manner of notice thereof, and (v) granting related relief. After due deliberation and having determined

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are In re: Gelesis Holdings, Inc. (0610), Case No. 23-11787; In re: Gelesis, Inc. (9933), Case No. 23-11788; and In re: Gelesis, LLC (0102), Case No. 23-11789. The Debtors' headquarters was located at 501 Boyleston Street, Suite 6102, Boston, MA 02116.
[2] All capitalized terms used, but not otherwise defined, in this Order shall have the meanings given in the Sale Motion.

that the relief requested in the Sale Motion regarding the Sale process is in the best interest of the Estates,

**THE COURT HEREBY FINDS THAT:**[3]

A. The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in the Motion and granted herein include sections 105(a) and 363(b) and (f) of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e) and (f), 9007, and 9014, and Local Rule 6004-1(c)(ii).

B. Notice of the Sale Motion, having been given to the Notice Parties, is sufficient in light of the circumstances and the nature of the relief requested in the Sale Motion.

C. The Trustee has articulated good and sufficient reasons for the Court to grant the relief requested in the Sale Motion regarding the Sale process, including without limitation, (i) approval of the Bidding Procedures; and (ii) approval of, and authorization to serve, the Notice of Auction and Sale Hearing.

D. The Notice of Auction and Sale Hearing and the service thereof is calculated to provide all interested parties with timely and proper notice of the Sale, the Sale Hearing, and the Auction.

E. The Break-Up Fee and the Expense Reimbursement are fair, reasonable, and appropriate, were negotiated in good faith by the Trustee and the Stalking Horse Purchaser, and

---

[3]The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

represent the best method for maximizing the value of the Debtors' Estates in connection with the Sale.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. Objections, if any, to the portion of the relief requested in the Sale Motion that is granted in this Order that have not been withdrawn, waived, or settled are hereby overruled.

**Approval of Bidding Procedures**

2. The Bidding Procedures, substantially in the form attached to this Order as Exhibit 1, are hereby approved and fully incorporated into this Order. The Trustee is authorized to undertake any and all actions necessary or appropriate to implement the Bidding Procedures.

3. Subject to the Bidding Procedures, if the Trustee does not receive any Qualified Bids other than the Qualified Bid of the Stalking Horse Purchaser, no Auction will be held, and the Trustee will seek approval of the Sale to the Stalking Horse Purchaser pursuant to the Stalking Horse Agreement at the Sale Hearing.

4. As further described in the Bidding Procedures, in the event that the Trustee timely receives two (2) or more Qualified Bids, the Trustee shall conduct the Auction commencing on **_______ at __:00 a.m. (ET)**, at the offices of Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800, Philadelphia, PA 19103, or such later time or other place or manner as the Trustee shall notify all Qualified Bidders.

5. Any person wishing to submit a higher or better offer for the Purchased Assets must do so in accordance with the terms of the Bidding Procedures.

6. All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of the Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Purchased Assets.

7. The Trustee is hereby authorized to conduct the Sale without complying with any state or local bulk transfer law or requirements.

8. Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale; (b) the Auction will be conducted openly and all creditors will be permitted to attend (although only Qualified Bidders may bid); and (c) bidding at the Auction will be transcribed or videotaped.

**Approval of Notice of Auction and Sale Hearing**

9. The Notice of Auction and Sale Hearing, substantially in the form attached hereto as Exhibit 2: (i) is hereby approved; and (ii) shall be served, together with a copy of this Order, upon each of the Notice Parties within three (3) days of the date of this Order.

**Sale Hearing**

10. The Sale Hearing is scheduled to be held on ________, 2024 at ___:__ _.m. (ET) before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801. The Sale Hearing may be adjourned or rescheduled at the Trustee's sole discretion.

**Objections to Sale**

11. Objections, if any, to the relief requested in the Sale Motion as it relates to the Sale must: (i) be in writing and filed with the Court; (ii) comply with the Bankruptcy Rules and the Local Rules; and (iii) be filed and served upon, so as to be **received** by, the Service Parties on or before ________, 2024.

12. The failure of any person or entity to timely file an objection to the Sale Motion shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale of the Purchased Assets to the Stalking Horse Bidder or, if an Auction is held, to the Successful Bidder or Alternate Bidder.

**Approval of Stalking Horse Agreement and Payment of**
**<u>Break-Up Fee and Expense Reimbursement</u>**

13. The form of the Stalking Horse Agreement (which may be obtained from counsel to the Trustee upon written request), is hereby approved and is appropriate and reasonably calculated to enable the Trustee and other parties in interest to easily compare and contrast the differing terms of the bids presented at the Auction.

14. Any obligations of the Trustee set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order are authorized as set forth herein and therein.

15. The Break-Up Fee and Expense Reimbursement described in the Stalking Horse Agreement are hereby approved. Pursuant to sections 105, 363, and 503 of the Bankruptcy Code, the Trustee is hereby authorized to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Purchaser pursuant to and subject to the terms and conditions set forth in this Order and the Stalking Horse Agreement.

16. The amount of the Break-Up Fee and Expense Reimbursement shall be considered as added to the Stalking Horse Purchaser's bid in determining whether its bid is a higher and better offer for the Purchased Assets.

17. The Trustee is authorized to pay the Break-Up Fee and Expense Reimbursement from the proceeds of the closing of an Alternative Transaction (as defined in the Stalking Horse Agreement) without further order of the Court. Any lien, security interest, or other encumbrance

that otherwise attaches to the proceeds of an Alternative Transaction will not attach to the Break-Up Fee and Expense Reimbursement paid to the Stalking Horse Purchaser. Payment of the Break-Up Fee and Expense Reimbursement shall be the sole remedy of the Stalking Horse Purchaser if the Stalking Horse Agreement is terminated under circumstances where the Break-Up Fee and Expense Reimbursement are payable.

18. Subject to the terms of the Stalking Horse Agreement, the Break-Up Fee and Expense Reimbursement: (i) shall be deemed an actual and necessary cost of preserving the Estates within the meaning of Bankruptcy Code section 503(b), (ii) are of substantial benefit to the Debtors' Estates and the collateral of parties asserting liens, security interests, encumbrances or other interests in and to the Purchased Assets, which are adequately protected from any diminution arising from such Break-Up Fee and Expense Reimbursement, (iii) are reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Stalking Horse Purchaser, (iv) have been negotiated by the parties and their respective advisors at arm's-length and in good faith, and (v) are necessary to ensure that the Stalking Horse Purchaser will continue to pursue the proposed Sale of the Purchased Assets.

**Related Relief**

19. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

20. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21. To the extent that any provisions of this Order may be inconsistent with the Sale Motion, the terms of this Order shall control.

# Exhibit 1

## Bidding Procedures

# Bidding Procedures

George L. Miller, as chapter 7 trustee (the "**Trustee**") for the bankruptcy estates (the "**Estates**") of Gelesis Holdings, Inc., *et al.*[1] (the "**Debtors**"), jointly administered debtors in Case No. 23-11787 (BLS) presently pending in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), contemplates the sale (the "**Sale**") of certain assets of the Estates (the "**Purchased Assets**") to T-Investments S.r.l. and Andromeda Energy S.r.l. or its affiliated or controlled entity (the "**Stalking Horse Purchaser**") or such other Successful Bidder (as defined herein) pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"). The proposed transaction is subject to approval by the Court. In connection with the Sale, these bidding procedures (the "**Bidding Procedures**") were approved by order of the Court dated _______, 2024 (the "**Bidding Procedures Order**").[2]

## A. The Bidding Process

1. These Bidding Procedures describe, among other things, the manner in which prospective bidders may gain access to due diligence materials concerning the Purchased Assets, the manner in which bidders and bids become Qualified Bidders (as defined herein) and Qualified Bids (as defined herein), respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined herein), the ultimate selection of a Successful Bidder and Successful Bid (each as defined herein), and the Court's approval thereof (collectively, the "**Bidding Process**").

2. Neither the Trustee nor his representatives shall be obligated to furnish any information of any kind whatsoever to any person who is not a Qualified Bidder (defined below). In the exercise of his reasonable business judgment, the Trustee may amend these Bidding Procedures in writing or orally at the Auction, so as to better promote the goals of the Bidding Process, so long as such changes are not inconsistent with any Court order, including the Bidding Procedures Order. Any Auction rules adopted by the Trustee will not modify any of the terms of the Stalking Horse Agreement or the rights of the Stalking Horse Bidder under the Bid Procedures without the consent of the Stalking Horse Bidder

## B. Sale on "as is, where is" Basis

The sale of the Purchased Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind by the Trustee or his agents.

## C. Free and Clear of Any and All Claims and Interests

All of the Estates' right, title, and interest in and to the Purchased Assets, or any portion thereof, to be acquired, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are In re: Gelesis Holdings, Inc. (0610), Case No. 23-11787; In re: Gelesis, Inc. (9933), Case No. 23-11788; and In re: Gelesis, LLC (0102), Case No. 23-11789. The Debtors' headquarters was located at 501 Boyleston Street, Suite 6102, Boston, MA 02116.

[2] Capitalized terms used, but not otherwise defined, in these Bidding Procedures shall have the meanings given in the Bidding Procedures Order.

"**Interests**"), with such Interests to attach to the net proceeds of the sale of such Purchased Assets, except to the extent otherwise set forth in the Stalking Horse Agreement or Alternative APA, as applicable.

## D. Participation Requirements

1. To participate in the Bidding Process each interested person or entity must:

(i) deliver, unless previously delivered, to SSG an executed confidentiality agreement in form and substance satisfactory to the Trustee (to be delivered prior to the distribution of any confidential information by the Trustee to such person); and

(ii) be deemed by the Trustee, after consultation with his professionals, to be reasonably likely to be able to fund and complete the consummation of the proposed transaction within the time frame acceptable to the Trustee if selected as a Successful Bidder (as defined herein).

2. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Trustee and his professionals regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

3. As promptly as reasonably possible, the Trustee will determine if such person or entity is acceptable and deem such person or entity a "**Potential Bidder**."

## E. Due Diligence

1. The Trustee may, in his reasonable business judgment, afford each Potential Bidder such access to due diligence materials concerning the Purchased Assets as the Trustee deems appropriate. Due diligence access may include access to written materials, verbal discussions, on-site inspections, and other material that a Potential Bidder may reasonably request and as to which the Trustee, in his reasonable business judgment, may agree. The Trustee may, in the exercise of his reasonable business judgment, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline (as defined herein) until the Auction after consultation with his professionals and only if the Qualified Bidder has established to the Trustee's satisfaction that it intends in good faith to consummate the Sale. The Trustee may, in his reasonable business judgment, coordinate due diligence efforts such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at site inspections. The Trustee makes no representation or warranty as to the information to be provided through this due diligence process.

2. Each Qualified Bidder shall be deemed to acknowledge, and shall represent in any asset purchase agreement, that it has had an opportunity to inspect and examine the Purchased Assets and to conduct any and all due diligence prior to making its offer, that it has relied solely upon its own independent reviews, investigations, and/or inspections in submitting its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the Bidding Process.

### F. <u>Bid Deadline</u>

A Potential Bidder that desires to make a Bid must deliver written copies of its Bid, via electronic mail, hand delivery or overnight mail, to: (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John T. Carroll, III, Esq. (jcarroll@cozen.com), Simon Fraser, Esq. (sfraser@cozen.com) and David R. Doyle, Esq. (daviddoyle@cozen.com); and (ii) SSG Capital Advisors, LLC, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attn. J. Scott Victor (jsvictor@ssgca.com), Neil Gupta (ngupta@ssgca.com), and Nicholas A. Vernacchio (nvernacchio@ssgca.com), so that the Bid is actually received by 12:00 p.m. (Noon) (ET) on _________, 2024 (the "**Bid Deadline**") and wire transfer the Required Deposit to a bank account supplied by the Trustee. The Trustee may extend the Bid Deadline once or successively but is not obligated to do so. If the Trustee extends the Bid Deadline, he shall promptly notify all Potential Bidders of such extension.

### G. <u>Qualified Bid Requirements</u>

1. A proposal ("**Bid**") received from a Potential Bidder is a "**Qualified Bid**" if it complies with all of the following:

a. is received by the Bid Deadline (as defined herein);

b. discloses the identity of the Potential Bidder, including the identity of each person or entity that will be bidding for or purchasing the Purchased Assets or financing the Bid, and provides contact information for the Bidder's representatives; the Bid must also disclose any past or present connection or agreement with any of the Debtors, any other prospective bidder for all or any portion of the Assets, or any officer, director, or equity holder of any of the Debtors;

c. is on terms that the Trustee determines are the same or better for the Trustee than the terms of the Stalking Horse Agreement. No Bid may contain representations and warranties, covenants, or termination rights materially more onerous in the aggregate to the Trustee than those set forth in the Stalking Horse Agreement as determined by the Trustee;

d. provides for the purchase of all or substantially all of the Purchased Assets by the Potential Bidder, unless the Trustee determines, in his discretion, to sell less than all or substantially all of the Purchased Assets;

e. provides for the purchase of the Purchased Assets on an "as is, where is" basis;

f. is in the minimum amount of $15,735,000 (*i.e.,* a Qualified Initial Overbid pursuant to the Bid Procedures Order);

g. allocates value and/or a portion of the aggregate purchase price for each class of property (*e.g.,* Patents, Trademarks, Quota, domain name, etc.);

h. includes a copy of a definitive asset purchase agreement (an "**Alternative APA**") in substantially the form of the template asset and share purchase agreement posted

in the data room maintained by SSG (the "**Template APA**"), signed by an authorized representative of such Potential Bidder;

i. is accompanied by a redline comparison showing any changes that the Potential Bidder has made to the Template APA;

j. is not subject to any due diligence or financing conditions, or board or other approval;

k. is accompanied by a cash deposit made payable to the Trustee on or before the Bid Deadline of not less than $800,000.00 (the "**Required Deposit**");

l. includes written evidence of an unconditional commitment for financing (by a creditworthy bank or financial institution that shall provide such financing without alteration of conditions or delays) or other evidence of ability, as determined in the reasonable business judgment of the Trustee, to consummate the transaction. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Trustee;

m. includes evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or comparable governing body) acceptable to the Trustee with respect to the submission, execution, and delivery of its Bid, participation in the Auction, and closing of the proposed transaction contemplated in such Bid. The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith shall be made by the Qualified Bidder;

n. disclaims any right to receive a fee analogous to a break-up fee, expense reimbursement, "topping" or termination fee, or any other similar form of compensation. Except as expressly provided in the Stalking Horse Agreement with respect to the Stalking Horse Purchaser, no Qualified Bidder will be permitted to request, nor be granted by the Trustee, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

o. is reasonably likely (based on availability of financing, regulatory issues, experience, and other considerations) to be consummated, if selected as a Successful Bid (as defined herein), within a timeframe acceptable to the Trustee;

p. contains a binding and irrevocable agreement by the Potential Bidder to serve as an "Alternate Bidder" (as defined herein), if so selected by the Trustee in accordance with the Bidding Procedures; and

q. is irrevocable until the earlier of: (a) sixty (60) days after the Bankruptcy Court authorizes and approves a Successful Bid, or, Bids, for the Purchased Assets that are the subject of the Bid; and (b) the closing of the sale for the Purchased Assets that are the subject of the Bid, provided that if the Bid is not selected as the Successful Bid or Alternate Bid, the Bid may be revoked after the Auction.

2. A Potential Bidder that makes a Qualified Bid is referred to herein as a "**Qualified Bidder**."

3. The Trustee, in his reasonable business judgment, shall determine whether the Bid of a Potential Bidder meets the foregoing requirements to become a Qualified Bid. The Trustee as soon as practicable after determining that a Bid is a Qualified Bid, shall provide notice of such determination to the Stalking Horse Purchaser.

4. Notwithstanding anything herein to the contrary, the Trustee reserves the right to work with Potential Bidders, to aggregate bids into a consolidated Qualified Bid, or otherwise improve bids to be Qualified Bids.

5. The Stalking Horse Purchaser shall be deemed to have submitted a Qualified Bid and be considered a Qualified Bidder, and the Stalking Horse Agreement shall automatically be considered a Qualified Bid, for purposes of these Bidding Procedures.

6. For the avoidance of doubt, any Bid that requires any form of future or current payment from the Estates in the form of an expense reimbursement, purchase price adjustment or working capital adjustment, termination or breakup fee, or similar arrangement, except the Stalking Horse Purchaser's Bid as expressly provided in the Stalking Horse Agreement, shall not be considered a Qualified Bid until such concept is removed from the Bid.

7. A Qualified Bid shall be valued based upon various factors including, without limitation, the net value provided by such proposal, the timing and amount of any consideration received, and the likelihood and timing of consummation of such transaction.

## H. Credit Bid

At the Auction (if it is held), PureTech shall have the right to credit bid for the PureTech Collateral up to the value of the PureTech Secured Claim (a "**Credit Bid**") provided that PureTech meets the requirements of section 363(k) of the Bankruptcy Code, and such Bid shall be deemed a Qualified Bid if (i) the Credit Bid portion of the Bid and the additional cash portion of the Bid equal or exceed $15,735,000, (ii) the cash portion of the Bid is an amount not less than $3,172,956.16, (iii) PureTech notifies the parties listed in Section F above in writing by the Bid Deadline of its intent to Credit Bid and (iv) PureTech otherwise meets the requirements set forth in these Bidding Procedures. The Trustee under these Bidding Procedures expressly reserves and preserves all rights of the Trustee under applicable law, including without limitation his rights under section 363(k) and chapter 5 of the Bankruptcy Code.

## I. Template Asset Purchase Agreements

The Template APA in the data room identified as "Template APA" should be used for the purchase of the Purchased Assets.[3]

## J. Modification of Bids

Without the prior written consent of the Trustee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

## K. No Additional Qualified Bids

If the Trustee does not receive any Qualified Bids other than the Qualified Bid of the Stalking Horse Purchaser by the Bid Deadline, no Auction will be held, and the Stalking Horse Shall Be Named the Successful Bidder immediately following the Bid Deadline. The Trustee will seek approval of the Sale to the Stalking Horse Purchaser pursuant to the Stalking Horse Agreement at the Sale Hearing.

## L. Auction

1. If at least two (2) Qualified Bids (including the Stalking Horse Agreement) have been received, the Trustee shall conduct an Auction commencing on **______ at _____a.m. (ET), and continuing as may be necessary solely in Trustee's discretion** at the offices of Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800, Philadelphia, PA 19103, or such later time or other place or manner as the Trustee shall notify all Qualified Bidders. Only Qualified Bidders shall be eligible to participate in the Auction and only Qualified Bidders shall be entitled to make any subsequent Qualified Bids at the Auction. The Trustee shall not consider a particular Bid unless the bidding party has submitted a Qualified Bid and attends the Auction.

2. Prior to the start of the Auction, the Trustee shall evaluate all Qualified Bids received and shall determine which Qualified Bid constitutes the best offer for the Purchased Assets (the "**Starting Auction Bid**"). The Trustee shall announce the Starting Auction Bid at the commencement of the Auction.

3. At the Auction, the initial overbid and any subsequent overbids must be in increments of at least $100,000 (which amount the Trustee, in his reasonable business judgment, may modify at the Auction) until the Trustee declares a Successful Bidder. All incremental overbids shall be made and received on an open basis. If the Stalking Horse Purchaser submits an overbid, it will receive a credit equal to the value of the Break-Up Fee and Expense Reimbursement granted to it when bidding during the Auction.

[3] Alternatively, a Word version of the Template APA is available from SSG upon request.

4. Upon a Qualified Bidder's declaration of its Bid at the Auction, it must commit on the record to pay promptly following the Auction, if such Bid were to be the Successful Bid or the Alternate Bid, the incremental amount of its Required Deposit calculated based on the increased purchase price of such bid, if applicable. To the extent not previously provided herein, the Trustee may require a Qualified Bidder submitting an overbid to submit evidence satisfactory to the Trustee demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Bid at the conclusion of the Auction and prior to the Trustee's acceptance of the Successful Bid.

5. The Trustee, after consultation with his professionals, may employ and announce at the Auction additional and/or modified rules or procedures for conducting the Auction, provided that such rules are (i) not inconsistent with the Bidding Procedures Order or any other order of the Court, or the Bankruptcy Code, (ii) disclosed to each Qualified Bidder at the Auction, and (iii) do not modify any of the terms of the Stalking Horse Agreement or the rights of the Stalking Horse Bidder under the Bid Procedures without the consent of the Stalking Horse Bidder.

6. At the conclusion of the Auction, the Trustee shall (i) review each Qualified Bid (as may have been increased and/or modified at the Auction) on the basis of financial and contractual terms and the factors relevant to the Sale Process, including those factors affecting the speed and certainty of consummating the Qualified Bid, and (ii) identify the best bid for the Purchased Assets (the "**Successful Bid**") and the bidder making such best bid (the "**Successful Bidder**"). The Qualified Bidder with the next best Qualified Bid as compared to the Successful Bid, as determined by the Trustee in his reasonable business judgment, shall be required to act as Alternate Bidder (as defined in Section M.2.). Each Qualified Bidder shall agree and be deemed to agree to be the Alternate Bidder if so designated. Promptly following the conclusion of the Auction the Trustee shall file on the docket of the Debtors' bankruptcy cases a "Notice of Successful Bidder" identifying the Successful Bidder and the Purchased Assets proposed to be sold to such Successful Bidder, and the purchase price. If applicable, the Notice shall also identify the Alternate Bidder. The Trustee shall not solicit any Bids submitted after conclusion of the Auction.

7. All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes related to the Auction, and the construction and enforcement of the Qualified Bidder's proposed purchase agreement.

## M. The Sale Hearing

1. A hearing is presently scheduled to take place on __________ **(ET)** (the "**Sale Hearing**"). At the Sale Hearing, the Trustee shall seek entry of the Sale Order, among other things, authorizing and approving the Sale(s) of the Purchased Assets to the Stalking Horse Bidder or, if an Auction is held, to the Successful Bidder and/or Alternate Bidder (as defined herein), as applicable, pursuant to the terms and conditions set forth in the Stalking Horse Agreement or respective Alternative APAs. The Trustee, in his reasonable business judgment, may adjourn or reschedule the Sale Hearing. The Trustee shall notify all relevant parties of such adjournment or rescheduling in an appropriate manner.

2. If the Trustee receives more than one Qualified Bid and an Auction is conducted, then at the Sale Hearing, the Trustee will seek approval of the Successful Bid, and, at the Trustee's election, the next best Qualified Bid (the "**Alternate Bid**," and the bidder making such Alternate Bid, the "**Alternate Bidder**"). The Trustee's presentation to the Court of the Successful Bid and, if applicable, the Alternate Bid will not constitute the Trustee's acceptance of such Bids until such Bids are approved by the Court at the Sale Hearing. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the applicable Alternate Bid will be deemed to be the Successful Bid and the Trustee will be authorized, but not directed, to effect the Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Court. The Alternate Bid shall remain binding until the earlier of (a) sixty (60) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder unless further extended by agreement of the Trustee and Alternate Bidder. If a Successful Bidder fails to consummate the Sale as contemplated by its Successful Bid, the Trustee may select the Alternate Bidder as the Successful Bidder and such Alternate Bidder shall be deemed a Successful Bidder for all purposes and the Trustee shall be authorized but nor required to consummate the Sale without further order of the Court.

3. All Required Deposits, but excluding the Required Deposits of a Successful Bidder and Alternate Bidder (which, in the case of the Required Deposit of the Alternate Bidder, shall be returned within five (5) business days of the closing of the Sale to the Successful Bidder), shall be returned to Qualified Bidders within five (5) business days after the date of the Auction. The Trustee will return the Required Deposit by wire transfer if valid wire transfer instructions are provided to the Trustee or by check in the absence of the Trustee receiving valid wire instructions. The Trustee shall maintain Required Deposits in a non-interest bearing account. Required Deposits may only be used in accordance with the provisions of these Bidding Procedures. The Trustee shall not have any liability with respect to any Required Deposits. If a Successful Bidder fails to consummate the Sale as a result of its own default or the terms of the relevant asset purchase agreement between the Trustee and such Successful Bidder would allow the Trustee to retain such Successful Bidder's Required Deposit, the Trustee will not have any obligation to return the Required Deposit of such Successful Bidder, and such Required Deposit will become property of the Estates.

4. If the Stalking Horse Purchaser is not the Successful Bidder and the Stalking Horse Purchaser is otherwise entitled to receive the Break-Up Fee and Expense Reimbursement under the Stalking Horse Agreement, the obligations to pay the Break-Up Fee and Expense Reimbursement to the Stalking Horse Purchaser shall be entitled to administrative expense claim status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

## N. Reservation of Rights

The Trustee reserves his right, in the exercise of his fiduciary obligations and in his sole discretion to: (a) offer the Purchased Assets for sale as lots (the "**Lots**" and each a "**Lot**") of assets at the Auction and seek approval of a Sale at the Sale Hearing to two or more Successful Bidders, (b) determine which Qualified Bid, if any, is the highest or otherwise best offer, either for all of the Purchased Assets or for any Lot, as applicable; (c) reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code,

the Bidding Procedures, the Bidding Procedures Order or any other orders applicable to the Estates or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Estates; and (d) modify the Bidding Procedures, including, without limitation, by (1) extending any of the deadlines set forth above for the Bidding Process, (2) modifying bidding increments, (3) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without prior notice, (4) withdrawing from the Auction the Purchased Assets, or any Lot or portion thereof, at any time prior to or during the Auction, and/or (5) canceling the Auction, and rejecting all Qualified Bids other than the Qualified Bid of the Stalking Horse Purchaser if, in the Trustee's reasonable business judgment, and in consultation with his counsel, no such bid is for a fair and adequate price.

**Exhibit 2**

**Notice of Auction and Sale Hearing**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>GELESIS HOLDINGS, INC., *et al.*,[1]<br>Debtors. | Chapter 7<br>Case No. 23-11787 (BLS)<br>(Jointly Administered) |

**NOTICE OF SALE OF ASSETS, AUCTION, AND SALE HEARING**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. On ______, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an *Order Granting Trustee's Motion for an Order (A) Approving Bidding Procedures in Connection with Sale of Substantially All of the Estates' Assets, (B) Approving Payment of Break-Up Fee and Expense Reimbursement to Stalking Horse Purchaser, (C) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (D) Approving the Form and Manner of Notice Thereof* [Dkt. No. __] (the "Bidding Procedures Order"), which, among other things, establishes bidding procedures (the "Bidding Procedures") that govern the manner in which all or substantially all of the assets (the "Purchased Assets") of the above-captioned debtors (the "Debtors") are to be sold. All capitalized terms used but not defined herein shall have the meanings assigned to them in the Bidding Procedures Order. A copy of the Bidding Procedures is being served on you concurrently with this Notice.

2. All interested parties are invited to make offers to purchase all or some portion of the Purchased Assets in accordance with the terms and conditions of the Bidding Procedures.

3. Pursuant to the Bidding Procedures, in the event that the Trustee timely receives more than one Qualified Bid (as defined in the Bidding Procedures) the Trustee will conduct an auction for the Purchased Assets (the "Auction") commencing on **______, 2024 at __:__ a.m. (ET), and, as may be necessary, continuing through and including _____**, at the offices of Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800, Philadelphia, PA 19103, or such later time or other place or manner as the Trustee shall notify all Qualified Bidders.

4. Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order. Any person wishing to participate in the Bidding Process must become a "Qualified Bidder." The procedures for becoming a Qualified Bidder are contained in the Bidding Procedures. A Potential Bidder that desires to make a Bid must deliver written copies of its Bid, via electronic mail, hand delivery or overnight mail, to: (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John T. Carroll, III, Esq.

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are In re: Gelesis Holdings, Inc. (0610), Case No. 23-11787; In re: Gelesis, Inc. (9933), Case No. 23-11788; and In re: Gelesis, LLC (0102), Case No. 23-11789. The Debtors' headquarters was located at 501 Boyleston Street, Suite 6102, Boston, MA 02116.

(jcarroll@cozen.com), Simon Fraser, Esq. (sfraser@cozen.com) and David R. Doyle, Esq. (daviddoyle@cozen.com); and (ii) SSG Capital Advisors, LLC, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, Attn. J. Scott Victor (jsvictor@ssgca.com), Neil Gupta (ngupta@ssgca.com), and Nicholas A. Vernacchio (nvernacchio@ssgca.com), so that the Bid is actually received by 12:00 p.m. (Noon) (ET) on _________, 2024 (the "Bid Deadline"). The Trustee may extend the Bid Deadline once or successively but is not obligated to do so. If the Trustee extends the Bid Deadline, he shall promptly notify all Potential Bidders of such extension.

5. A hearing at which the Trustee will seek approval and authorization of the Sale to the Stalking Horse Purchaser, the Successful Bidder or Alternate Bidder, as applicable (the "Sale Hearing"), is scheduled to be held on __________ **(ET)**, unless otherwise continued by the Trustee pursuant to terms of the Bidding Procedures Order, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, Courtroom No. 1, 824 North Market Street, Wilmington, Delaware 19801.

6. Objections, if any, to the relief requested at the Sale Hearing as it relates to the Sale must: (a) be in writing and filed with the Court, (b) comply with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and (c) be filed and served on the following parties by the Objection Deadline: (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John T. Carroll, III, Esq. (jcarroll@cozen.com), Simon Fraser, Esq. (sfraser@cozen.com), and David R. Doyle, Esq. (daviddoyle@cozen.com); and (ii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081, Attn: Richard Schepacarter, Esq. (Richard.Schepacarter@usdoj.gov).

7. This Notice is qualified in its entirety by the Bidding Procedures Order.

Dated: March __, 2024

COZEN O'CONNOR

By: /s/ John T. Carroll, III
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE 19801
(302) 295-2000 Phone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

*Counsel for the Trustee,*
*George L. Miller*

***Schedule 2.1(a)***
***Purchased Assets***

All of the Estate's right, title and interest in and to:

Purchased Assets:

1. The Quota: $3 million
2. The Patents, Trademarks Gelesis and Plenity, Domain names: $12 million

***Schedule 2.1(b)***
***Patents and Intellectual Property***

**ASSIGNED PATENTS AND PATENT APPLICATIONS**

# Gelesis Patent Listing



| EPLG # | CTRY | STATUS | APPLICATION # | FILING DATE | PATENT # | GRANT DATE | TITLE |
|---|---|---|---|---|---|---|---|
| 4090.1002 AU | AU | Abandoned | 2007230234 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 BR | BR | Abandoned | PI07088426 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 CA | CA | Abandoned | 2646066 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 CN | CN | Abandoned | 07800197605 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 EP | EP | Abandoned | 077595676 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 IN | IN | Abandoned | 5866CHENP | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 JP | JP | Abandoned | 2009503243 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 MX | MX | Abandoned | MXa2008012248 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 NZ | NZ | Abandoned | 572011 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 RU | RU | Abandoned | 2008142623 | Mar 28, 2007 | | | A method and a medicament for improving the ability of a hydro gel to swell and/or to increase the amount of time said hydro gel remains swollen in the stomach of an animal, a method and a |
| 4090.1002 US | US | Expired | 60787396 | Mar 30, 2006 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 US1 | US | Abandoned | 12295145 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 US2 | US | Abandoned | 12403788 | Mar 13, 2009 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 US3 | US | Issued | 14597600 | Jan 15, 2015 | 10272155 | Apr 30, 2019 | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 US4 | US | Abandoned | 16364908 | Mar 26, 2019 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.1002 WO | WO | Completed | PCTUS2007065351 | Mar 28, 2007 | | | Use of Polymeric Materials with Other Substances for Improved Performance |
| 4090.3000 AT1D | AT | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 AT1D2 | AT | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 AU1 | AU | Issued | 2008286354 | Aug 8, 2008 | 2008286354 | Oct 30, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 AU1D | AU | Issued | 2013204055 | Aug 8, 2008 | 2013204055 | Dec 8, 2016 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 AU1D1 | AU | Issued | 2016219713 | Aug 8, 2008 | 2016219713 | Jul 12, 2018 | Polymer Hydrogels and Methods of Preparation Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 BE1D | BE | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 BE1D2 | BE | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 BG1D | BG | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 BG1D2 | BG | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CA1 | CA | Issued | 2695974 | Aug 8, 2008 | 2695974 | Oct 18, 2016 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CH1D | CH | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 CH1D2 | CH | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CN1 | CN | Issued | 2008801043990 | Aug 8, 2008 | ZL200880104399.0 | May 7, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CN1D | CN | Abandoned | 201410126564X | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CY1D | CY | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 CY1D2 | CY | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 CZ1D | CZ | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 CZ1D2 | CZ | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 DE1 | DE | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 DE1D | DE | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 DE1D2 | DE | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 DK1D | DK | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 DK1D2 | DK | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 EE1D | EE | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 EE1D2 | EE | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 EP1 | EP | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 EP1D | EP | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 EP1D2 | EP | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 EP1D3 | EP | Abandoned | 151885662 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 ES1 | ES | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 ES1D | ES | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 ES1D2 | ES | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 FI1D | FI | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 FI1D2 | FI | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 FR1 | FR | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 FR1D | FR | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 FR1D2 | FR | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 GB1 | GB | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 GB1D | GB | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 GB1D2 | GB | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 GR1D | GR | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 GR1D2 | GR | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 HKCN1 | HK | Abandoned | 111011486 | Feb 5, 2011 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 HKEPD1 | HK | Issued | 121060172 | Aug 8, 2008 | 1172633 | Apr 15, 2016 | Polymer Hydrogels and Medical Use Thereof |
| 4090.3000 HR1D | HR | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 HR1D2 | HR | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 HU1D | HU | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 HU1D2 | HU | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IE1D | IE | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 IE1D2 | IE | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IN1 | IN | Abandoned | 1591DELNP2010 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IN1D | IN | Abandoned | 201618038316 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IS1D | IS | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 IS1D2 | IS | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IT1 | IT | Issued | 087854717 | Aug 8, 2008 | 2178922 | Oct 7, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 IT1D | IT | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 IT1D2 | IT | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1 | JP | Issued | 2010520475 | Aug 8, 2008 | 5485151 | Feb 28, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1D | JP | Issued | 2013238364 | Aug 8, 2008 | 5760069 | Jun 12, 2015 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1D2 | JP | Abandoned | 2015115944 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1D3 | JP | Issued | 2017176735 | Aug 8, 2008 | 7027083 | Feb 18, 2022 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 JP1D4 | JP | Abandoned | 2020002831 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 LT1D | LT | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 LT1D2 | LT | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 LU1D | LU | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 LU1D2 | LU | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 LV1D | LV | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 LV1D2 | LV | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 MC1D | MC | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 MC1D2 | MC | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 MT1D | MT | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 MT1D2 | MT | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 MX1 | MX | Issued | MXa2010001629 | Aug 8, 2008 | 329919 | Oct 29, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 NL1D | NL | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 NL1D2 | NL | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 NO1D | NO | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 NO1D2 | NO | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 PL1D | PL | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 PL1D2 | PL | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 PT1D | PT | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 PT1D2 | PT | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 RO1D | RO | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 RO1D2 | RO | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 RU1 | RU | Issued | 2010105385 | Aug 8, 2008 | 2493170 | Sep 20, 2013 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 RU1D | RU | Issued | 2013126920 | Aug 8, 2008 | 2641749 | Jan 22, 2018 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 SE1D | SE | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 SE1D2 | SE | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 SI1D | SI | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 SI1D2 | SI | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 SK1D | SK | Lapsed | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 SK1D2 | SK | Lapsed | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 TR1D | TR | Issued | 121586333 | Aug 8, 2008 | 2463308 | Dec 3, 2014 | Hydrogels and Methods of Use Thereof |
| 4090.3000 TR1D2 | TR | Issued | 121769186 | Aug 8, 2008 | 2532685 | Dec 3, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |

# Gelesis Patent Listing

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3000 US | US | Issued | 12703286 | Feb 10, 2010 | 8658147 | Feb 25, 2014 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US1 | US | Abandoned | 14150430 | Jan 8, 2014 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US2 | US | Issued | 15185443 | Jun 17, 2016 | 10086014 | Oct 2, 2018 | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US3 | US | Abandoned | 16546722 | Aug 21, 2019 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US4 | US | Abandoned | 17333424 | May 28, 2021 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 US5 | US | Pending | 18239951 | Aug 30, 2023 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3000 WO | WO | Closed | PCTIT2007000584 | Aug 10, 2007 | | | Superabsorbent Polymer Hydrogels and Method of Preparing Thereof |
| 4090.3000 WO1 | WO | Completed | PCTEP2008006582 | Aug 8, 2008 | | | Polymer Hydrogels and Methods of Preparation Thereof |
| 4090.3001 US | US | Expired | 61115759 | Nov 18, 2008 | | | Methods for Creating Satiety While Improving Glycemic Index |
| 4090.3002 AU | AU | Issued | 2009316622 | Nov 18, 2009 | 2009316622 | Dec 18, 2014 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 AUD | AU | Abandoned | 2014271268 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 BR | BR | Issued | PI09215778 | Nov 18, 2009 | PI09215778 | Jan 30, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 CA | CA | Issued | 2743559 | Nov 18, 2009 | 2743559 | Jan 2, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control, Comprising Cross-Linked, Edible Polymer Hydrogels |
| 4090.3002 CN | CN | Abandoned | 2009801548650 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 CND | CN | Pending | 2016101720761 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 DE | DE | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 EP | EP | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 EPD | EP | Abandoned | 171658354 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 ES | ES | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 FR | FR | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 GB | GB | Issued | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 HKCND | HK | Pending | 161124706 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3002 HKEP | HK | Issued | 121015427 | Nov 18, 2009 | 1161037 | Aug 3, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 IN | IN | Abandoned | 4266CHENP2011 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 IT | IT | Lapsed | 098281686 | Nov 18, 2009 | 2358218 | Apr 12, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 JP | JP | Issued | 2011536618 | Nov 18, 2009 | 6220493 | Oct 6, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 JPD | JP | Issued | 2015215448 | Nov 18, 2009 | 6412484 | Oct 5, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 JPD1 | JP | Issued | 2018184072 | Nov 18, 2009 | 6934849 | Aug 26, 2021 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 JPD2 | JP | Abandoned | 2021136200 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 KR | KR | Issued | 1020117013966 | Nov 18, 2009 | 10-1804354 | Nov 28, 2017 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 KRD | KR | Issued | 1020177034312 | Nov 18, 2009 | 10-1932616 | Dec 19, 2018 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 MX | MX | Issued | MXa2011005078 | Nov 18, 2009 | 332012 | Jul 29, 2015 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 RU | RU | Issued | 2011124705 | Nov 18, 2009 | 2518262 | Apr 11, 2014 | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 RUD | RU | Abandoned | 2014110522 | Nov 18, 2009 | | | Methods and Compositions for Weight Optimization and for Improving Blood Glucose Level |
| 4090.3002 US | US | Expired | 61151745 | Feb 11, 2009 | | | MODIFIED FOODS COMPRISING POLYMER HYDROGELS |
| 4090.3002 US1 | US | Expired | 61167291 | Apr 7, 2009 | | | EDIBLE COMPOSITIONS COMPRISING POLYMER HYDROGELS |
| 4090.3002 US2 | US | Abandoned | 13106909 | May 13, 2011 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 US3 | US | Abandoned | 15942655 | Apr 2, 2018 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 US4 | US | Pending | 17981620 | Nov 7, 2022 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3002 WO | WO | Completed | PCTUS2009064988 | Nov 18, 2009 | | | Methods and Compositions for Weight Management and for Improving Glycemic Control |
| 4090.3003 AU | AU | Issued | 2012267855 | Jun 7, 2012 | 2012267855 | Jun 16, 2016 | Method for Producing Hydrogels |
| 4090.3003 BR | BR | Issued | 1120130312092 | Jun 7, 2012 | 1120130312092 | Nov 24, 2020 | Method for Producing Hydrogels |
| 4090.3003 CA | CA | Issued | 2838006 | Jun 7, 2012 | 2838006 | Jun 2, 2020 | Method for Producing Hydrogels |
| 4090.3003 CN | CN | Issued | 2012800365654 | Jun 7, 2012 | ZL201280036565.4 | Apr 24, 2018 | Method for Producing Hydrogels |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3003 CND | CN | Issued | 2018102426488 | Jun 7, 2012 | ZL201810242648.8 | Jan 12, 2021 | Method for Producing Hydrogels |
| 4090.3003 DE | DE | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 EP | EP | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 EPD | EP | Abandoned | 181897828 | Jun 7, 2012 | | | Method for Producing Hydrogels |
| 4090.3003 ES | ES | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 FR | FR | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 GB | GB | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 HKEP | HK | Issued | 141097694 | Jun 7, 2012 | 1196224 | Aug 30, 2019 | Method for Producing Hydrogels |
| 4090.3003 IN | IN | Issued | 56CHENP2014 | Jun 7, 2012 | 349605 | Oct 20, 2020 | Method for Producing Hydrogels |
| 4090.3003 IT | IT | Issued | 127964559 | Jun 7, 2012 | 2717685 | Aug 22, 2018 | Method for Producing Hydrogels |
| 4090.3003 JP | JP | Issued | 2014514632 | Jun 7, 2012 | 6177233 | Jul 21, 2017 | Method for Producing Hydrogels |
| 4090.3003 JPD | JP | Issued | 2017098862 | Jun 7, 2012 | 6639441 | Jan 7, 2020 | Method for Producing Hydrogels |
| 4090.3003 JPD1 | JP | Issued | 201914046 | Jun 7, 2012 | 6789326 | Nov 5, 2020 | Method for Producing Hydrogels |
| 4090.3003 KR | KR | Issued | 1020147000433 | Jun 7, 2012 | 10-1992449 | Jun 18, 2019 | Method for Producing Hydrogels |
| 4090.3003 MOD | MO | Lapsed | J4780 | Jun 7, 2012 | J/4780 | Jun 10, 2021 | Method for Producing Hydrogels |
| 4090.3003 MX | MX | Issued | MXa2013014297 | Jun 7, 2012 | 360730 | Nov 14, 2018 | Method for Producing Hydrogels |
| 4090.3003 RU | RU | Issued | 2013158913 | Jun 7, 2012 | 2618329 | May 3, 2017 | Method for Producing Hydrogels |
| 4090.3003 US | US | Expired | 61494298 | Jun 7, 2011 | | | Synthesis of Hydrogels Having High Bulk Density |
| 4090.3003 US1 | US | Expired | 61542494 | Oct 3, 2011 | | | Synthesis of Hydrogels Having High Bulk Densit |
| 4090.3003 US2 | US | Issued | 13491197 | Jun 7, 2012 | 9353191 | May 31, 2016 | Method for Producing Hydrogels |
| 4090.3003 US3 | US | Issued | 15139896 | Apr 27, 2016 | 10544233 | Jan 28, 2020 | Method for Producing Hydrogels |
| 4090.3003 US4 | US | Issued | 16773164 | Jan 27, 2020 | 11130823 | Sep 28, 2021 | Method for Producing Hydrogels |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3003 US5 | US | Abandoned | 17480571 | Sep 21, 2021 | | | Method for Producing Hydrogels |
| 4090.3003 US6 | US | Pending | 18376978 | Oct 5, 2023 | | | Method for Producing Hydrogels |
| 4090.3003 WO | WO | Completed | PCTUS2012041345 | Jun 7, 2012 | | | Method for Producing Hydrogels |
| 4090.3004 US | US | Expired | 61788583 | Mar 15, 2013 | | | Crosslinking of Carboxymethylcellulose with Electron Beam Radiation |
| 4090.3004 US1 | US | Expired | 61814675 | Apr 22, 2013 | | | Crosslinking of Carboxymethylcellulose with Electron Beam Radiation |
| 4090.3005 AU | AU | Issued | 2015276889 | Jun 19, 2015 | 2015276889 | Jul 30, 2019 | Methods for Treating Overweight or Obesity |
| 4090.3005 BR | BR | Abandoned | 1120160297130 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 CA | CA | Issued | 2950482 | Jun 19, 2015 | 2950482 | Dec 6, 2022 | Methods for Treating Overweight or Obesity |
| 4090.3005 CN | CN | Abandoned | 2015800325970 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 CND | CN | Pending | 2022110322631 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 EP | EP | Allowed | 158103838 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 HKEP | HK | Pending | 171088816 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 JP | JP | Issued | 2016572527 | Jun 19, 2015 | 6726109 | Jun 30, 2020 | A Composition for Treating Overweight or Obesity |
| 4090.3005 KR | KR | Abandoned | 1020167036240 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 KRD | KR | Abandoned | 1020237018087 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 MX | MX | Issued | MXa2016016800 | Jun 19, 2015 | 386595 | Sep 29, 2021 | Methods for Treating Overweight or Obesity |
| 4090.3005 NZ | NZ | Abandoned | 726172 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 RU | RU | Issued | 2016148609 | Jun 19, 2015 | 2696494 | Aug 2, 2019 | Methods for Treating Overweight or Obesity |
| 4090.3005 US | US | Expired | 62014926 | Jun 20, 2014 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 US1 | US | Issued | 14744506 | Jun 19, 2015 | 9855294 | Jan 2, 2018 | Methods for Treating Overweight or Obesity |
| 4090.3005 US2 | US | Abandoned | 15175804 | Jun 7, 2016 | | | Methods for Treating Overweight or Obesity Using Biomarkers to Improve Efficacy |
| 4090.3005 US3 | US | Issued | 15835984 | Dec 8, 2017 | 10953038 | Mar 23, 2021 | Methods for Treating Overweight or Obesity |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3005 US4 | US | Issued | 17177495 | Feb 17, 2021 | 11628184 | Apr 18, 2023 | Methods for Treating Overweight or Obesity |
| 4090.3005 WO | WO | Completed | PCTUS1536654 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3005 ZA | ZA | Abandoned | 201700023 | Jun 19, 2015 | | | Methods for Treating Overweight or Obesity |
| 4090.3006 US | US | Closed | | | | | Tunable Polymer Hydrogels |
| 4090.3007 AU | AU | Issued | 2016211329 | Jan 29, 2016 | 2016211329 | Dec 10, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 BR | BR | Issued | 1120170162008 | Jan 29, 2016 | 1120170162008 | Sep 20, 2022 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 CA | CA | Issued | 2974967 | Jan 29, 2016 | 2974967 | Jun 27, 2023 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 CN | CN | Issued | 2016800110757 | Jan 29, 2016 | ZL201680011075.7 | Jan 31, 2023 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 DE | DE | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 EP | EP | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 EPD | EP | Abandoned | 202099354 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 ES | ES | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 FR | FR | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 GB | GB | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 HKEP | HK | Issued | 181021352 | Jan 29, 2016 | 1242719 | May 21, 2021 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 HKEPD | HK | Abandoned | 420220488399 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 IN | IN | Issued | 201727030042 | Jan 29, 2016 | 352790 | Dec 1, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 IND | IN | Issued | 202028051046 | Jan 29, 2016 | 379429 | Oct 20, 2021 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 IT | IT | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 JP | JP | Issued | 2017539328 | Jan 29, 2016 | 6847841 | Mar 5, 2021 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 JPD | JP | Abandoned | 2021033428 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 KR | KR | Pending | 1020177023170 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3007 MX | MX | Issued | MXa2017009805 | Jan 29, 2016 | 397807 | Nov 25, 2022 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 NL | NL | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 NZ | NZ | Abandoned | 733787 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 PL | PL | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 RU | RU | Issued | 2017129508 | Jan 29, 2016 | 2709361 | Dec 17, 2019 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 SE | SE | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 TR | TR | Issued | 167441856 | Jan 29, 2016 | 3250612 | Dec 2, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US | US | Expired | 62109392 | Jan 29, 2015 | | | Method for Producing Hydrogels Having High Elastic Modulus |
| 4090.3007 US1 | US | Issued | 15010626 | Jan 29, 2016 | 10179824 | Jan 15, 2019 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US2 | US | Issued | 16220598 | Dec 14, 2018 | 10584183 | Mar 10, 2020 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US3 | US | Issued | 16812767 | Mar 9, 2020 | 11130824 | Sep 28, 2021 | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US4 | US | Abandoned | 17480707 | Sep 21, 2021 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 US5 | US | Pending | 18590052 | Feb 28, 2024 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 WO | WO | Completed | PCTUS1615669 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3007 ZA | ZA | Abandoned | 201705705 | Jan 29, 2016 | | | Method for Producing Hydrogels Coupling High Elastic Modulus and Absorbance |
| 4090.3008 AU | AU | Abandoned | 2018248418 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 BR | BR | Abandoned | 1120190207244 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 CA | CA | Abandoned | 3058740 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 CN | CN | Issued | 201880036583X | Apr 4, 2018 | ZL201880036583.X | May 6, 2022 | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 EP | EP | Pending | 187808704 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 JP | JP | Abandoned | 2019554524 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 KR | KR | Abandoned | 1020197032374 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3008 MX | MX | Abandoned | MXa2019011846 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 RU | RU | Abandoned | 2019135202 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 US | US | Expired | 62481947 | Apr 5, 2017 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 US1 | US | Issued | 15944960 | Apr 4, 2018 | 11020421 | Jun 1, 2021 | Superabsorbent Materials and Methods of Production Thereof |
| 4090.3008 WO | WO | Completed | PCTUS1825994 | Apr 4, 2018 | | | Improved Superabsorbent Materials and Methods of Production Thereof |
| 4090.3009 AU | AU | Issued | 2017257494 | Apr 24, 2017 | 2017257494 | Mar 16, 2023 | Method for Treating Constipation |
| 4090.3009 BR | BR | Pending | 1120180718211 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3009 CA | CA | Allowed | 3022090 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3009 CN | CN | Issued | 2017800323495 | Apr 24, 2017 | ZL201780032349.5 | Jun 3, 2022 | Method for Treating Constipation |
| 4090.3009 EP | EP | Pending | 177901832 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3009 HKEP | HK | Pending | 191290915 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3009 JP | JP | Issued | 2018555942 | Apr 24, 2017 | 7132128 | Aug 29, 2022 | Method for Treating Constipation |
| 4090.3009 KR | KR | Issued | 1020187033873 | Apr 24, 2017 | 10-2353040 | Jan 14, 2022 | Method for Treating Constipation |
| 4090.3009 MO | MO | Issued | J006435 | Apr 24, 2017 | J/006435 | Jan 10, 2023 | Method for Treating Constipation |
| 4090.3009 MX | MX | Issued | MXa2018012923 | Apr 24, 2017 | 380673 | Mar 17, 2021 | Method for Treating Constipation |
| 4090.3009 RU | RU | Issued | 2018140926 | Apr 24, 2017 | 2745992 | Apr 5, 2021 | Method for Treating Constipation |
| 4090.3009 US | US | Expired | 62326951 | Apr 25, 2016 | | | Method for Treating Constipation |
| 4090.3009 US1 | US | Issued | 15494915 | Apr 24, 2017 | 10098907 | Oct 16, 2018 | Method for Treating Constipation |
| 4090.3009 WO | WO | Completed | PCTUS1729107 | Apr 24, 2017 | | | Method for Treating Constipation |
| 4090.3010 US | US | Closed | | | | | Method for Treating Obesity |
| 4090.3011 AU | AU | Pending | 2018251210 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 BR | BR | Pending | 1120190213708 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3011 CA | CA | Abandoned | 3059445 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 CN | CN | Abandoned | 2018800390367 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 EP | EP | Pending | 187842042 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 HKEP | HK | Pending | 620200111875 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 JP | JP | Pending | 2019555608 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 JPD | JP | Pending | 2023022734 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 KR | KR | Abandoned | 1020197033206 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 MX | MX | Abandoned | MXa2019012086 | Apr 16, 2018 | | | Cross-Linked Hydrogel Compositions And Their Use In The Treatment Or Prevention Of Disorders Related To Intestinal Permeability |
| 4090.3011 RU | RU | Issued | 2019135203 | Apr 16, 2018 | 2782530 | Oct 28, 2022 | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 US | US | Expired | 62485557 | Apr 14, 2017 | | | Compositions and Methods for Treating Digestive Disorders or Diseases |
| 4090.3011 US1 | US | Expired | 62562665 | Sep 25, 2017 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 US2 | US | Issued | 15954340 | Apr 16, 2018 | 10695363 | Jun 30, 2020 | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 US3 | US | Abandoned | 16773135 | Jan 27, 2020 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 US4 | US | Pending | 17501142 | Oct 14, 2021 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3011 WO | WO | Completed | PCTUS1827803 | Apr 16, 2018 | | | Compositions and Methods for Treating or Preventing Gut Permeability-Related Disorders |
| 4090.3016 US | US | Abandoned | 63050405 | Jul 10, 2020 | | | Superabsorbent Materials and Methods of Production Thereof |
| 4090.3017 US | US | Expired | 63091461 | Oct 14, 2020 | | | Methods for Treating NASH |
| 4090.3018 US | US | Expired | 63278559 | Nov 12, 2021 | | | Compositions and Methods for Modulating the Intestinal Microbiome |
| 4090.3018 US1 | US | Expired | 63335356 | Apr 27, 2022 | | | Compositions and Methods for Modulating the Intestinal Microbiome |
| 4090.3018 WO | WO | Pending | PCTUS2249797 | Nov 14, 2022 | | | Compositions and Methods for Modulating the Intestinal Microbiome |
| 4090.3019 US | US | Abandoned | 63278770 | Nov 12, 2021 | | | Compositions and Methods for Modulating the Intestinal Microbiome |
| 4090.3020 US | US | Abandoned | 63278632 | Nov 12, 2021 | | | Covalently Crosslinked Carboxymethylcellulose with High Crystallinity |

# Gelesis Patent Listing



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4090.3021 US | US | Abandoned | 63273277 | Oct 29, 2021 | | | Therapeutic Methods Based on Mechanobiology |

**Debtor Intellectual Property Rights**

| Trademark | Case Number | Country | Sub Case | Case Type | Application No. | Filing Date | Registration No. | Registration Date | Status | Next Renewa | Owner Name | Agent Name | Classes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BRYTE | 1481670.04026 | European Union (Community) | EM | PRI | 016224578 | 05-Jan-2017 | 016224578 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.04026 | United Kingdom | BXEM | RER | UK00916224578 | 05-Jan-2017 | UK00916224578 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.04027 | United Kingdom | GB | PRI | UK00003205133 | 05-Jan-2017 | UK00003205133 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.4026 | European Union (Community) | EM | PRI | 16224578 | 05-Jan-2017 | 16224578 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.4026 | United Kingdom | BXEM | RER | UK00916224578 | 05-Jan-2017 | UK00916224578 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| BRYTE | 1481670.4027 | United Kingdom | GB | ORD | 3205133 | 05-Jan-2017 | 3205133 | 26-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GELESIS | 1481670.4001 | Hong Kong | HK | ORD | 305348160 | 31-Jul-2020 | 305348160 | 31-Jul-2020 | Registered | 30-Jul-2030 | Gelesis, Inc. | China Patent Agent (H.K.) Ltd. | 05 Int., 10 Int. |
| GELESIS | 1481670.4001 | Macau | MO1 | ORD | N/176901 | 16-Dec-2020 | N/176901 | 10-Feb-2022 | Registered | 10-Feb-2029 | Gelesis, Inc. | J. Pereira Da Cruz, S.A. | 05 Int. |
| GELESIS | 1481670.4001 | Macau | MO2 | ORD | N/176902 | 16-Dec-2020 | N/176902 | 10-Feb-2022 | Registered | 10-Feb-2029 | Gelesis, Inc. | J. Pereira Da Cruz, S.A. | 10 Int. |
| GELESIS | 1481670.4001 | Singapore | SG | ORD | 40202015045W | 20-Jul-2020 | 40202015045W | 16-Mar-2021 | Registered | 20-Jul-2030 | Gelesis, Inc. | Drew & Napier - Singapore | 05 Int., 10 Int. |
| GELESIS | 1481670.4001 | Taiwan | TW | ORD | 109074967 | 26-Oct-2020 | 02171220 | 16-Sep-2021 | Registered | 15-Sep-2031 | Gelesis, Inc. | Lee & Li, Attorneys-at-law | 05 Int., 10 Int. |
| GELESIS | 1481670.4001 | United States of America | US | PRI | 85822855 | 14-Jan-2013 | 4941665 | 19-Apr-2016 | Registered | 19-Apr-2026 | Gelesis, Inc. | | 05 Int. |
| GELESIS | 1481670.4003 | Argentina | AR | ORD | 3352215 | 08-Sep-2014 | 2813933 | 06-Jul-2016 | Registered | 06-Jul-2026 | Gelesis, Inc. | Hausheer Belgrano & Fernand | 05 Int. |
| GELESIS | 1481670.4004 | Australia | AU | ORD | 1645161 | 04-Sep-2014 | 1645161 | 30-Mar-2015 | Registered | 04-Sep-2024 | Gelesis, Inc. | Minter Ellison Australia - Sydne | 05 Int. |
| GELESIS | 1481670.4005 | Brazil | BR | ORD | 908285442 | 15-Sep-2014 | 908285442 | 04-Jun-2018 | Registered | 04-Jun-2028 | Gelesis, Inc. | Campedelli Advogados Associ | 05 Int. |
| GELESIS | 1481670.4006 | Canada | CA | PRI | 1692338 | 04-Sep-2014 | TMA1,042,005 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int. |
| GELESIS | 1481670.4007 | China (People's Republic) | CN | ORD | 15331807 | 12-Sep-2014 | 15331807 | 28-Jun-2016 | Registered | 27-Jun-2026 | Gelesis, Inc. | Tee & Howe Intellectual Prope | 05 Int. |
| GELESIS | 1481670.4008 | European Union (Community) | EM | PRI | 013246988 | 11-Sep-2014 | 013246988 | 06-Aug-2016 | Registered | 11-Sep-2024 | Gelesis, Inc. | Locke Lord LLP - Brussels, Bel | 05 Int., 10 Int., 42 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GELESIS | 1481670.4008 | United Kingdom | BXEM | RER | UK00913246988 | 11-Sep-2014 | UK00913246988 | 06-Aug-2016 | Registered | 11-Sep-2024 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int., 42 Int. |
| GELESIS | 1481670.4009 | India | IN | ORD | 2805168 | 04-Sep-2014 | 2805168 | 26-Sep-2017 | Registered | 04-Sep-2024 | Gelesis, Inc. | Azb & Partners | 05 Int. |
| GELESIS | 1481670.4010 | Mexico | MX | ORD | 1524824 | 05-Sep-2014 | 1519817 | 04-Mar-2015 | Registered | 05-Sep-2024 | Gelesis, Inc. | Olivares & Cia | 05 Int. |
| GELESIS AND [ | 1481670.4002 | United States of America | US | PRI | 85822868 | 14-Jan-2013 | 4941666 | 19-Apr-2016 | Registered | 19-Apr-2026 | Gelesis, Inc. | | 05 Int. |
| GELESIS IN CH | 1481670.4012 | China (People's Republic) | CN | ORD | 15331806 | 12-Sep-2014 | 15331806 | 28-Oct-2015 | Registered | 27-Oct-2025 | Gelesis, Inc. | Tee & Howe Intellectual Prope | 05 Int. |
| GELESIS PLENI | 1481670.4065 | China (People's Republic) | CN1 | ORD | 62037678 | 10-Jan-2022 | 62037678 | 07-Aug-2022 | Registered | 06-Aug-2032 | Gelesis, Inc. | Haiwen & Partners | 05 Int. |
| GELESIS PLENI | 1481670.4065 | China (People's Republic) | CN2 | ORD | 62049862 | 10-Jan-2022 | 62049862 | 07-Jul-2022 | Registered | 06-Jul-2032 | Gelesis, Inc. | Haiwen & Partners | 10 Int. |
| GLII | 1481670.04034 | European Union (Community) | EM | PRI | 016224602 | 05-Jan-2017 | 016224602 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.04034 | United Kingdom | BXEM | RER | UK00916224602 | 05-Jan-2017 | UK00916224602 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.04035 | United Kingdom | GB | ORD | UK00003205125 | 05-Jan-2017 | UK00003205125 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.4033 | Canada | CA | ORD | 1816849 | 05-Jan-2017 | TMA1,042,014 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int., 10 Int. |
| GLII | 1481670.4034 | European Union (Community) | EM | PRI | 16224602 | 05-Jan-2017 | 16224602 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.4034 | United Kingdom | BXEM | RER | UK00916224602 | 05-Jan-2017 | UK00916224602 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| GLII | 1481670.4035 | United Kingdom | GB | ORD | UK00003205125 | 05-Jan-2017 | UK00003205125 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| INSPIRED BY N | 1481670.4049 | United States of America | US | PRI | | | | | Unfiled | | Gelesis, Inc. | | |
| JOURNETA | 1481670.04030 | European Union (Community) | EM | PRI | 016224594 | 05-Jan-2017 | 016224594 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| JOURNETA | 1481670.04030 | United Kingdom | BXEM | RER | UK00916224594 | 05-Jan-2017 | UK00916224594 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| JOURNETA | 1481670.04031 | United Kingdom | GB | ORD | UK00003205127 | 05-Jan-2017 | UK00003205127 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JOURNETA | 1481670.4029 | Canada | CA | ORD | 1816846 | 05-Jan-2017 | TMA1,042,011 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int., 10 Int. |
| JOURNETA | 1481670.4030 | European Union (Community) | EM | PRI | 16224594 | 05-Jan-2017 | 16224594 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| JOURNETA | 1481670.4030 | United Kingdom | BXEM | RER | UK00916224594 | 05-Jan-2017 | UK00916224594 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| JOURNETA | 1481670.4031 | United Kingdom | GB | ORD | UK00003205127 | 05-Jan-2017 | UK00003205127 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.04022 | European Union (Community) | EM | PRI | 016224561 | 05-Jan-2017 | 016224561 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.04022 | United Kingdom | BXEM | RER | UK00916224561 | 05-Jan-2017 | UK00916224561 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.04023 | United Kingdom | GB | PRI | UK00003205134 | 05-Jan-2017 | UK00003205134 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.4021 | Canada | CA | ORD | 1816830 | 05-Jan-2017 | TMA1,042,010 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int., 10 Int. |
| PLENITY | 1481670.4022 | European Union (Community) | EM | PRI | 016224561 | 05-Jan-2017 | 016224561 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.4022 | United Kingdom | BXEM | RER | UK00916224561 | 05-Jan-2017 | UK00916224561 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.4023 | United Kingdom | GB | ORD | UK00003205134 | 05-Jan-2017 | UK00003205134 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| PLENITY | 1481670.4024 | Australia | AU | MPR | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4024 | Colombia | CO | MPR | SD2020/0025317 | 06-Mar-2020 | 678664 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | Clarke Modet & Co. - Colombia | 05 Int. |
| PLENITY | 1481670.4024 | Hong Kong | HK | ORD | 305348179 | 31-Jul-2020 | 305348179 | 31-Jul-2020 | Registered | 30-Jul-2030 | Gelesis, Inc. | China Patent Agent (H.K.) Ltd. | 05 Int., 10 Int. |
| PLENITY | 1481670.4024 | Int'l Registration - Madrid Agreeme | WO | ORD | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4024 | Israel | IL | MPR | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4024 | Japan | JP | MPR | 2020354981 | 06-Mar-2020 | 1523520 | 18-Aug-2023 | Registered | 06-Mar-2030 | Gelesis, Inc. | SUGIMURA & Partners | 05 Int. |
| PLENITY | 1481670.4024 | Korea, Republic of | KR | MPR | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLENITY | 1481670.4024 | Macau | MO1 | ORD | N/176899 | 16-Dec-2020 | N/176899 | 10-Feb-2022 | Registered | 10-Feb-2029 | Gelesis, Inc. | J. Pereira Da Cruz, S.A. | 05 Int. |
| PLENITY | 1481670.4024 | Macau | MO2 | ORD | N/176900 | 16-Dec-2020 | N/176900 | 10-Feb-2022 | Registered | 10-Feb-2029 | Gelesis, Inc. | J. Pereira Da Cruz, S.A. | 10 Int. |
| PLENITY | 1481670.4024 | Russian Federation | RU | MPR | A0094899 | 06-Mar-2020 | 1523520 | 06-Mar-2020 | Registered | 06-Mar-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4024 | Saudi Arabia | SA1 | ORD | | | | | Unfiled | | Gelesis, Inc. | Cedar White Bradley IP LLC | 05 Int. |
| PLENITY | 1481670.4024 | Saudi Arabia | SA2 | ORD | | | | | Unfiled | | Gelesis, Inc. | Cedar White Bradley IP LLC | 10 Int. |
| PLENITY | 1481670.4024 | Singapore | SG | ORD | 40202015053W | 20-Jul-2020 | 40202015053W | 07-Jan-2021 | Registered | 20-Jul-2030 | Gelesis, Inc. | Drew & Napier - Singapore | 05 Int., 10 Int. |
| PLENITY | 1481670.4024 | Taiwan | TW | ORD | 109074968 | 26-Oct-2020 | 02171221 | 16-Sep-2021 | Registered | 15-Sep-2031 | Gelesis, Inc. | Lee & Li, Attorneys-at-law | 05 Int., 10 Int. |
| PLENITY | 1481670.4024 | United Arab Emirates | AE1 | ORD | | | | | Unfiled | | Gelesis, Inc. | Cedar White Bradley IP LLC | 05 Int. |
| PLENITY | 1481670.4024 | United Arab Emirates | AE2 | ORD | | | | | Unfiled | | Gelesis, Inc. | Cedar White Bradley IP LLC | 10 Int. |
| PLENITY | 1481670.4024 | United States of America | US2 | DIV | 87983022 | 06-Jan-2017 | 6064866 | 26-May-2020 | Registered | 26-May-2030 | Gelesis, Inc. | | 05 Int. |
| PLENITY | 1481670.4042 | China (People's Republic) | CN2 | ORD | 42837302 | 05-Dec-2019 | | | Published | | Gelesis, Inc. | Haiwen & Partners | 10 Int. |
| PLENITY | 1481670.4044 | India | IN | ORD | | | | | Unfiled | | Gelesis, Inc. | Vaish Associates Advocates | 05 Int., 10 Int. |
| PLENITY | 1481670.4061 | China (People's Republic) | CN | ORD | 60126316 | 27-Oct-2021 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 05 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN1 | ORD | 62032518 | 10-Jan-2022 | 62032518 | 07-Jul-2022 | Registered | 06-Jul-2032 | Gelesis, Inc. | Haiwen & Partners | 01 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN2 | ORD | 62054638 | 10-Jan-2022 | 62054638 | 14-Jul-2022 | Registered | 13-Jul-2032 | Gelesis, Inc. | Haiwen & Partners | 29 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN3 | ORD | 62056660 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 30 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN4 | ORD | 62049966 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 31 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN5 | ORD | 62033127 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 35 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PLENITY | 1481670.4066 | China (People's Republic) | CN6 | ORD | 62057196 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 41 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN7 | ORD | 62053124 | 10-Jan-2022 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 42 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN8 | ORD | 62037787 | 10-Jan-2022 | 62037787 | 07-Jul-2022 | Registered | 06-Jul-2032 | Gelesis, Inc. | Haiwen & Partners | 44 Int. |
| PLENITY | 1481670.4066 | China (People's Republic) | CN9 | DIV | 62057196A | 10-Jan-2022 | 62057196A | 21-Aug-2022 | Registered | 20-Aug-2032 | Gelesis, Inc. | Haiwen & Partners | 41 Int. |
| PLENITY | 1481670.4071 | China (People's Republic) | CN | ORD | 71783092 | 24-May-2023 | | | Pending | | Gelesis, Inc. | Haiwen & Partners | 05 Int. |
| PLENTIFULL | 1481670.00022 | European Union (Community) | EM | ORD | 015276348 | 24-Mar-2016 | 015276348 | 18-Jul-2016 | Registered | 24-Mar-2026 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| PLENTIFULL | 1481670.00022 | United Kingdom | BXEM | RER | UK00915276348 | 24-Mar-2016 | UK00915276348 | 18-Jul-2016 | Registered | 24-Mar-2026 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| PLENTIFULL | 1481670.4014 | Canada | CA | PRI | 1772758 | 16-Mar-2016 | TMA1,041,968 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 05 Int. |
| PLENTIFULL | 1481670.4015 | European Union (Community) | EM | PRI | 15276348 | 24-Mar-2016 | 15276348 | 18-Jul-2016 | Registered | 24-Mar-2026 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| PLENTIFULL | 1481670.4015 | United Kingdom | BXEM | RER | UK00915276348 | 24-Mar-2016 | UK00915276348 | 18-Jul-2016 | Registered | 24-Mar-2026 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| SAEF | 1481670.04018 | European Union (Community) | EM | PRI | 016224611 | 05-Jan-2017 | 016224611 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.04018 | United Kingdom | BXEM | RER | UK00916224611 | 05-Jan-2017 | UK00916224611 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.04020 | United Kingdom | GB | ORD | UK00003205115 | 05-Jan-2017 | UK00003205115 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.4018 | European Union (Community) | EM | PRI | 16224611 | 05-Jan-2017 | 16224611 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.4018 | United Kingdom | BXEM | RER | UK00916224611 | 05-Jan-2017 | UK00916224611 | 04-May-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.4019 | Canada | CA | ORD | 1816853 | 05-Jan-2017 | TMA1,041,987 | 17-Jul-2019 | Registered | 17-Jul-2029 | Gelesis, Inc. | MOFFAT & CO., FINLAYSON | 00 Undefined |
| SAEF | 1481670.4020 | United Kingdom | GB | ORD | UK00003205115 | 05-Jan-2017 | UK00003205115 | 05-Jan-2017 | Registered | 05-Jan-2027 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int., 10 Int. |
| SAEF | 1481670.4038 | European Union (Community) | EM | PRI | 8708356 | 24-Nov-2009 | 8708356 | 02-Jun-2010 | Registered | 24-Nov-2029 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SAEF | 1481670.4038 | United Kingdom | BXEM | RER | UK00908708356 | 24-Nov-2009 | UK00908708356 | 02-Jun-2010 | Registered | 24-Nov-2029 | Gelesis, Inc. | Locke Lord LLP - UK | 05 Int. |
| 吉利西斯 (GELE | 1481670.4069 | China (People's Republic) | CN | ORD | 63513802 | 24-Mar-2022 | 63513802 | 14-Oct-2022 | Registered | 13-Oct-2032 | Gelesis, Inc. | Haiwen & Partners | 05 Int. |
| 吉利西斯 (GELE | 1481670.4070 | China (People's Republic) | CN | ORD | 63509034 | 24-Mar-2022 | 63509034 | 21-Sep-2022 | Registered | 20-Sep-2032 | Gelesis, Inc. | Haiwen & Partners | 10 Int. |

**Internet Domain Names**

gelesis.co
gelesis.com
gelesis.info
gelesis.it
gelesis.us
gelesis100.com
gelesisclinical.com
gellica.com
gopleinty.com
goplenity.com
goplennity.com
helloplenity.com
helloplenity.info
helloplenity.net
helloplenity.org
helloplenity.us
helloplennity.com
learnaboutplenity.com
liveplenity.com
liveplenity.info
liveplenity.net
liveplenity.org
liveplenity.us
liveplennity.com
mypleinty.com
myplenity.ca
myplenity.co.uk
myplenity.com
myplenity.de
myplenity.dk
myplenity.es
myplenity.fr
myplenity.info
myplenity.it
myplenity.net
myplenity.org
myplenity.se
myplenity.tv
myplenity.us
myplennity.com
myplentity.com
myplenty.com

nabiproject.com
nabiproject.org
ourplenity.com
pleinty.com
plenitea.com
plenitee.com
plenity.biz
plenity.ch
plenity.de
plenity.dk
plenity.es
plenity.fr
plenity.info
plenity.it
plenity.reviews
plenity.se
plenity.tv
plenityexperience.com
plenityfacts.com
plenityguide.com
plenityhcp.com
plenityhcp.us
plenityhome.com
plenityhub.com
plenityinfo.com
plenityinformation.com
plenityjourney.com
plenitylife.com
plenitylife.info
plenitylife.net
plenitylife.org
plenitynow.com
plenityrx.com
plenityshop.com
plenityworld.com
plennity.com
plennityrx.com
shareplenity.com
shopplenity.com
startplenity.com
yourplenity.com

***Schedule 9.2(g)***
***Loan Documents***

| *No.* | *Agreement* | *Bank/ Party* | *Execution Date* | *Maturity* | *Amount* | *Amount Due* |
|---|---|---|---|---|---|---|
| *1.* | *Minibond (Notarial Deed no. 55.569/ 22.448)* | *Unicredit S.p.A.* | *24 November 2020* | *10 December 2027* | *€ 5,000,000* | *€ 3,296,819.00* |
| *2.* | *Loan N. 130569* | *Intesa San Paolo S.p.A.* | *22 November 2019* | *31 October 2029* | *€ 7,500,000* | *€ 5,512,508.32* |
| *3.* | *Loan N. 89514* | *Intesa San Paolo S.p.A.* | *26 March 2021* | *26 March 2025* | *€ 5,000,000* | *€ 4,583,333.26* |
| *4.* | *Decree n. 4696 (F/050174/00/X32* | *MISE* | *20 November 2017* | *30 June 2028* | *€ 512.848,14* | *€ 297,510.85* |

# EXHIBIT E

## Quota Purchase Deed

*DRAFT - Subject to Italian Notary's comments*

**EXHIBIT E**
**QUOTA PURCHASE DEED**

**CONTRATTO DI COMPRAVENDITA DI QUOTE**

TRA

**[Gelesis Inc],** società costituita ai sensi della legge del Delaware, con sede legale in Boston, 501 Boylston Street, Suite 6102, Boston, Massachusetts (USA), 02116, iscritta nel Registro delle imprese del Delaware con numero 95125740639, [con capitale sociale interamente versato di $ USD [-]], sottoposta a procedura USA chapter 7 (trustee George L. Miller), qui rappresentato da [-], quale [-], in forza di [-].

(il "***Venditore***")

E

**[T-Investments S.r.l.]**, società costituita ai sensi del diritto italiano, con sede legale in [-], [-], numero di iscrizione nel Registro delle Imprese di [-], codice fiscale e P. IVA n. [-], con capitale sociale interamente versato di Euro [-], qui rappresentata da [-], quale [-], in forza di [-] ("***Theras***");

e

**[Andromeda Energy S.r.l.],** società costituita ai sensi del diritto italiano, con sede legale in [-], [-], numero di iscrizione nel Registro delle Imprese di [-], codice fiscale e P. IVA n. [-], con capitale sociale interamente versato di Euro [-], qui rappresentata da [-], quale [-], in forza di [-] ("[***Andromeda Energy***]").

**EQUITY INTERESTS' TRANSFER AGREEMENT**

BETWEEN

**[Gelesis Inc],** a company incorporated under the laws of Delaware, with registered office in Boston, 501 Boylston Street, Suite 6102, Boston, Massachusetts (USA), registration number on the Companies' Register of Delaware 95125740639, [with corporate capital of $ USD [-], under USA chapter 7 procedure (trustee George L. Miller), hereby represented by [-], by virtue of [-].
***[Note: actual parties to the deed to be confirmed]***

(the "***Seller***")

AND

**[T-Investments S.r.l.]**, a company incorporated under the laws of Italy, with registered office in [-], [-], registration number on the Companies' Register of [-], with Fiscal Code and VAT no. [-], with corporate capital of Euro [-], fully paid in, hereby represented by [-], by virtue of [-] ("***Theras***");

e

**[Andromeda Energy S.r.l.],** a company incorporated under the laws of Italy, with registered office in [-], [-], registration number on the Companies' Register of [-], with Fiscal Code and VAT no. [-], with corporate capital of Euro [-], fully paid in, hereby represented by [-], by virtue of [-] ("[***Andromeda Energy***]").

([T-Investments e Andromeda Energy], congiuntamente, gli "***Acquirenti***")

([T-Investments e Andromeda], jointly, the "***Purchasers***")

(Gli Acquirenti e il Venditore, congiuntamente le "***Parti***" e ciascuno di essi una "***Parte***").

(The Purchasers and the Seller, jointly, the "***Parties***" and each a "***Party***").

**PREMESSE**

- Gelesis S.r.l. è una società costituita ai sensi del diritto italiano, con sede legale in Calimera (LE), Italia, Via Europa 187, numero di iscrizione nel Registro delle Imprese di Lecce, codice fiscale e P. IVA n. 06508451215, con capitale sociale pari a Euro [1.892.020,03], interamente deliberato, sottoscritto e versato (la "***Società***").
- I soci attuali della Società sono:
  - Fondo Per La Ricerca e L'innovazione S.r.l. ("***RIF***"), proprietaria di una quota avente valore nominale pari a Euro 386.539,69, rappresentativa di circa 20,43% del capitale sociale della Società (la "***Quota RIF***"); e
  - Gelesis Inc., proprietaria di una quota avente valore nominale pari a Euro 1.505.480,34 rappresentativa di circa 79,57% del capitale sociale della Società e sottoposta a procedura USA chapter 7 (trustee George L. Miller) (la "***Quota Gelesis US***").
- La Quota RIF è gravata da un diritto di pegno di cui è beneficiaria la Banca Europea per gli Investimenti, costituito con atto notarile del 2 settembre 2022 (con n. di repertorio 11.594 e n. di raccolta 6.105).
- [Le Parti danno atto che RIF ha rinunciato (come da dichiarazione scritta acquisita agli atti sociali) alle limitazioni statutarie al trasferimento delle partecipazioni e, in particolare, al proprio diritto di co-vendita ai sensi dell'articolo 9 del vigente statuto sociale della Società].
- Il 30 ottobre 2023, Gelesis Inc ha fatto istanza per una procedura volontaria ai sensi della normativa USA, chapter 7, avviando detta procedura davanti al Tribunale fallimentare degli Stati Uniti, Distretto del Delaware.
- Il Venditore intende vendere agli Acquirenti, che intendono acquistare dal Venditore, l'intera Quota Gelesis US verso il pagamento di un corrispettivo, e ai sensi degli ulteriori termini e condizioni, di cui di seguito.

**WHEREAS**

- Gelesis S.r.l. is a company incorporated under the laws of Italy, with registered office in Calimera (LE), Italy, Via Europa 187, registration number on the Companies' Register of Lecce with Fiscal Code and VAT no. 06508451215, with corporate capital equal to [Euro1,892,020.03], fully resolved, subscribed and paid in (the "***Company***").
- The current shareholders of the Company are:
  - Fondo Per La Ricerca e L'innovazione S.r.l. ("***RIF***"), owning equity interests with a nominal value of Euro 386,539.69, representing approximately 20.43% of the Company's corporate capital (the "***Equity Interest RIF***"); and
  - Gelesis Inc., owning equity interests with a nominal value of Euro 1,505,480.34, representing approximately 79.57% of the Company's corporate capital and under USA chapter 7 procedure (trustee George L. Miller) (the "***Equity interest Gelesis US***").
- RIF Equity Interest is pledged in favor of the European Investment Bank, established by notarial deed dated 2 September 2022 (Rep. no. 11,594; Racc. no. 6,105).
- [The Parties acknowledge that RIF has waived (as per the written letter at the Company's records) the limitations to the transfer of the equity interests provided under the by-laws and, in particular, its tag along right pursuant to Article 9 of the by-laws of the Company in force].
- On October 30, 2023, Gelesis Inc. filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, commencing a chapter 7 case in the United States Bankruptcy Court for the District of Delaware.
- The Seller intends to transfer to the Purchasers, who intend to purchase from the Seller, the entire Equity Interest Gelesis US against the payment of a consideration, and under the other terms and conditions, set forth below.

**TUTTO CIÒ PREMESSO, LE PARTI CONVENGONO E STIPULANO QUANTO SEGUE**

**THE ABOVE BEING SAID, THE PARTIES AGREE UPON THE FOLLOWING**

**1. Premesse e definizioni**

Le premesse costituiscono parte integrante e sostanziale del presente contratto ("***Contratto***"). I termini definiti nel Contratto, ove scritti con lettera iniziale maiuscola, sono utilizzati con lo specifico significato ad essi attribuiti dal Contratto stesso. I termini definiti al singolare si intendono anche al plurale e viceversa, ove il contesto lo richieda.

**1. Recitals and Definitions**

The recitals are an integral and substantial part of this agreement ("***Agreement***"). The terms defined within the Agreement, where written with capital letter, are used with the specific meaning given within the Agreement. The terms defined in singular form are also defined in plural and *viceversa*, where requested.

**2. Oggetto**

Il Venditore vende la Quota Gelesis US agli Acquirenti, e gli Acquirenti accettano e acquistano la Quota Gelesis US dal Venditore, verso il pagamento del corrispettivo di cui al successivo articolo **Error! Reference source not found.**, come segue:

- il Venditore vende a [T-Investments], che accetta, una partecipazione nel capitale sociale della Società del valore nominale di Euro [-], pari al [-] per cento del capitale sociale;
- il Venditore vende ad [Andromeda], che accetta, una partecipazione nel capitale sociale della Società del valore nominale di Euro [-], pari al [-] per cento del capitale sociale.

**2. Object**

The Sellers transfer the Equity Interest Gelesis US to the Purchasers, and Purchasers accept and purchase the Equity Interest Gelesis US from the Seller, against payment of the purchase price provided under Article 3 below, as follows:

- The Seller transfers to [T-Investments], who accepts, equity interests in the corporate capital of the Company having a nominal value of Euro [-], equal to [-] per cent of the corporate capital;
- The Seller transfers to [Andromeda], who accepts, equity interests in the corporate capital of the Company having a nominal value of Euro [-], equal to [-] per cent of the corporate capital.

**3. Corrispettivo**

Il corrispettivo complessivo per la compravendita della Quota Gelesis US è pari a $ USD [-] ([-]*/00)*, pari a Euro [-] ([-]*/00*), attribuito come segue:

- $ USD [-] ([-]*/00)*, pari a Euro [-] ([-]*/00*), quale prezzo pagato da [Theras] per la compravendita delle partecipazioni acquistate da [Theras];
- $ USD [-] ([-]*/00)*, pari a Euro [-] ([-]/00), quale prezzo pagato da [T-Investments] per la compravendita delle partecipazioni acquistate da [T-Investments].

Le Parti si danno atto che tali corrispettivi sono fissi e, quindi, non sono soggetti ad aggiustamenti o variazioni e sono già stati corrisposti dagli Acquirenti per quanto di rispettiva competenza secondo separati accordi tra le Parti.

Pertanto, con la sottoscrizione del presente Contratto, il Venditore conferma gli avvenuti pagamenti degli importi sopra indicati da parte degli Acquirenti (per quanto di rispettiva competenza) e rilascia ampia e definitiva quietanza a saldo.

**3. Purchase Price**

The aggregate purchase price for the sale and purchase of the Equity Interest Gelesis US is equal to $ USD [-] ([-]*/00)*, equal to Euro ([-]*/00)*, allocated as follows:

- $ USD [-] ([-]*/00)*, equal to Euro [-] ([-]/00), as consideration paid by [Theras] for the equity interests purchased by [Theras];
- $ USD [-] ([-]*/00)*, equal to Euro [-] ([-]/00), as consideration paid by [T-Investments] for the equity interests purchased by [T-Investments].

The Parties acknowledge that the above mentioned purchase prices are fix and, thus, not subject to any adjustment or variations and have been already paid by the Purchasers, as respectively applicable, as separately agreed between the Parties.

Therefore, by means of this Agreement, the Seller confirms the duly payments of the purchase prices mentioned above by the Purchasers (as applicable) and confirms the related full discharge and release.

**4. Dichiarazioni e Garanzie**

Il Venditore dichiara e garantisce:

- di avere ogni potere o autorità necessari per la sottoscrizione e l'esecuzione del presente Contratto;
- l'inesistenza sulla Quota Gelesis US di pegni, oneri, pesi e vincoli di qualsiasi natura; e che
- il capitale sociale della Società è stato interamente versato.

**4. Representations and Warranties**

The Seller represents and warrants:

- To have any and all power or authority necessary to sign and execute this Agreement;
- That the Equity Interest Gelesis US is not pledged, encumbered or otherwise subject to third party rights of any nature; and
- That the corporate capital of the Company has been fully paid-in.

**5. Effetti**

Fatto salvo quanto disposto dall'art. 2470 c.c., il presente Contratto e la cessione della Quota Gelesis US avranno efficacia a partire dalla data di sottoscrizione del Contratto.

Il presente Contratto dovrà essere depositato per l'iscrizione nel competente Registro delle Imprese ai sensi e per gli effetti di cui all'art. 2470 c.c.

A seguito della cessione ai sensi del presente Contratto, il capitale della Società risulta così ripartito:

- **[T-Investments]**, titolare di una partecipazione nel capitale sociale del valore nominale di Euro [-], pari al [-] per cento del capitale sociale della Società;
- **[Andromeda]**, titolare di una partecipazione nel capitale sociale del valore nominale di Euro [-], pari al [-] per cento del capitale sociale della Società;
- **RIF**, titolare di una partecipazione nel capitale sociale del valore nominale di Euro 386.539, 69, pari a circa il 20,43 per cento del capitale sociale della Società.

**5. Effects**

Without prejudice to Article 2470 of the Italian Civil Code, this Agreement and the transfer of the Equity Interest Gelesis US shall be effective from the date of execution of the Agreement.

This Agreement shall be filed for registration at the competent Companies' Register, according to Article 2470 of the Italian Civil Code.

Upon completion of the transfer under this Agreement, the corporate capital of the Company is owned as follows:

- **[T-Investments]**, owning equity interests with a nominal value of Euro [-], representing [-] per cent of the corporate capital of the Company;
- **[Andromeda]**, owning equity interests with a nominal value of Euro [-], representing [-] per cent of the corporate capital of the Company;
- **RIF**, owning equity interests with a nominal value of Euro 386,539.69, representing approximately 20.43% of the corporate capital of the Company.

**6. Altri accordi**

La sottoscrizione del presente Contratto non sostituisce o modifica altri separati accordi esistenti tra le Parti (precedenti o contestuali), anche se aventi lo stesso oggetto. Il Presente Contratto non costituisce novazione ai sensi dell'articolo 1230 e ss. c.c.

**6. Other Agreements**

The execution of this Agreement shall not replace or amend other agreements between the Parties (whether executed before or simultaneously), even if with the same scope. This Agreement shall not have the effects provided by Article 1230 and following of the Italian Civil Code.

**7. Spese**

Le spese notarili, l'imposta di registro e qualsiasi altra spesa relativa al presente Contratto saranno a carico delle parti Acquirenti, [nella misura del cinquanta per cento ciascuno].

**7. Expenses**

The notary expenses, as well as the registration taxes and any other expense relating to the Agreement, shall be borne by the Purchasers [equally].

**8. Lingua**

Il presente Contratto è stato redatto in inglese e in italiano; in caso di controversia tra le due versioni, prevale la versione in lingua italiana.

**9. Legge applicabile**

Il presente Contratto è regolato dalla legge Italiana.

**10. Foro Competente**

Qualsiasi controversia che dovesse insorgere tra le Parti da, o in connessione con, il presente Contratto, (ivi incluse quelle relative alla sua validità, efficacia, interpretazione, esecuzione e risoluzione) sarà sottoposta alla giurisdizione esclusiva del foro di [Milano].

***

*[Le Parti dichiarano di essere state edotte dal notaio autenticante le firme del contenuto delle vigenti disposizioni in materia di protezione dei dati personali delle persone fisiche, anche alla luce del Reg. Eur. n. 2016/679 - G.D.P.R. (General Data Protection Regulation), si dichiarano edotte e consapevoli che l'atto notarile deve essere conservato inalterato nel tempo nel suo tenore originario e che i dati e le informazioni acquisiti per il presente atto e in esso contenuti saranno, in parte o integralmente, comunicati, prevalentemente attraverso rete telematica riservata e protetta, a soggetti pubblici nei casi e nei modi previsti dalla legge, e, pertanto, espressamente prestano il proprio consenso al trattamento sia manuale sia elettronico e alla conservazione dei propri relativi dati in conformità alle finalità previste dalla legge.*
*Le Parti dichiarano, altresì, di esser state informate, dal notaio autenticante le firme, in materia di prevenzione dell'utilizzo del sistema finanziario a scopo di riciclaggio dei proventi di attività criminose e di finanziamento del terrorismo (D.Lgs. n. 231/2007), e, in particolare, circa le sanzioni penali previste dall'art.55 di tale D.Lgs. per il caso di omessa o falsa indicazione delle generalità del soggetto, se diverso dal cliente, per conto del quale eventualmente si esegue l'operazione per cui è richiesta la prestazione professionale.*

*A tal fine, dichiarano:*
*– di non essere persone politicamente esposte;*
*– che i titolari effettivi dell'operazione perfezionata con il presente atto corrispondono a quanto dichiarato;*
*– che lo scopo della presente operazione è quello dichiarato in atto e che non sussistono ulteriori finalità in frode o contrarie a legge, anche ai sensi dell'art. 11 del D.Lgs 72/2000 (sottrazione al pagamento delle imposte)].*

**8. Language**

This Agreement has been drafted in English and in Italian. In case of conflicts between the English and the Italian version, the Italian version shall prevail.

**9. Applicable Law**

This Agreement is governed by Italian law.

**10. Jurisdiction**

Any disputes between the Parties arising out of, or in connection with, this Agreement (including those relating to its validity, effectiveness, interpretation, execution and termination) shall be subject to the exclusive jurisdiction of the Courts of [Milan].

***

*[The Parties declare that they have been informed by the notary authenticating the signatures of the content of the provisions in force regarding the protection of personal data of natural persons, also in the light of the Reg. Eur. n. 2016/679 - G.D.P.R. (General Data Protection Regulation), declare that they are informed and aware that the notarial deed must be kept unchanged over time in its original content and that the data and information acquired for this deed and contained therein will be, in whole or in part, communicated, mainly through a reserved and protected telematic network, to public subjects in the cases and in the ways provided for by law, and, therefore, expressly give their consent to both manual and electronic processing and to the conservation of their related data in accordance with the purposes set by the law. law.*
*The Parties also declare that they have been informed, by the notary authenticating the signatures, regarding the prevention of the use of the financial system for the purpose of laundering the proceeds of criminal activities and terrorist financing (Legislative Decree no. 231/ 2007), and, in particular, regarding the penal sanctions provided for by article 55 of this Legislative Decree for the case of omitted or false indication of the personal details of the subject, if different from the client, on whose behalf the operation for which the professional service is required.*

*To this end, they declare:*
*– that you are not a politically exposed person;*
*– that the beneficial owners of the transaction completed with this deed correspond to what is declared;*
*– that the purpose of this operation is the one declared in place and that there are no further purposes in fraud or contrary to the law, also pursuant to article 11 of Legislative Decree 72/2000 (avoiding the payment of taxes)].*

Repertorio n. Raccolta n.

*Autenticazione delle sottoscrizioni*

*[Notarial statement]*