**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>GELESIS HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-11787 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: September 16, 2026 at 10:30 a.m. (ET)**<br>**Objection Deadline: September 9, 2026 at 4:00 p.m. (ET)** |

**TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT**
**WITH PURETECH HEALTH LLC**

George L. Miller, in his capacity as the chapter 7 trustee (the "Trustee") of the estates (the "Estates") of the debtors (the "Debtors") in the above-captioned bankruptcy cases (each individually a "Bankruptcy Case," and collectively, the "Bankruptcy Cases"), hereby moves, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of the United States Bankruptcy Code (the "Bankruptcy Code") for approval of a certain settlement with PureTech Health LLC ("PureTech"). In support of this Motion, the Trustee respectfully states:

**Jurisdiction, Core Nature, and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are In re: Gelesis Holdings, Inc. (0610), Case No. 23-11787; In re: Gelesis, Inc. (9933), Case No. 23-11788; and In re: Gelesis, LLC (0102), Case No. 23-11789. The Debtors' headquarters was located at 501 Boyleston Street, Suite 6102, Boston, MA 02116.

**Background**

2. Prior to the Petition Date, the Debtors were a biotherapeutics company focusing on weight management. Founded in 2006, the Debtors developed a naturally-derived, FDA cleared weight loss drug called Plenity®. The technology is the first of its kind and protected by patents registered around the world. The Debtors' portfolio also included potential therapies in development for patients with Type 2 Diabetes, Non-alcoholic Fatty Liver Disease (NAFLD)/Non-alcoholic Steatohepatitis (NASH), and Functional Constipation. The Debtors performed their research and development, and manufactured their pharmaceutical products, through their non-debtor subsidiary, Gelesis S.r.l., an Italian corporation with facilities in the Puglia region of Italy.

3. Beginning in July 2022, PureTech purportedly provided certain funding (the "Funding") to the Debtors in the asserted total amount of $26.85 million, via certain convertible promissory notes issued pursuant to a certain *Short Term Promissory Note* dated July 25, 2022, as amended and restated with an effective date of July 27, 2022, and a certain *Note and Warrant Purchase Agreement* dated February 21, 2023, as amended. Of this total amount, $11.85 million was purportedly secured by collateral including the Debtors' intellectual property (but not the Quota (as defined below)). The remaining $15 million was unsecured. PureTech's outstanding principal under the notes was convertible at any time into equity in Debtor Gelesis Holdings, Inc.

4. As described in more detail in the Trustee's Objection (as defined below), at all times relevant to the Funding, PureTech and the Debtors were closely related in a number of ways. For example, PureTech owned (and still owns) 22.8% of the equity in Debtor Gelesis Holdings, Inc., making it a direct owner of this entity, and an indirect owner of the other two Debtors.[2] The Debtors' co-founder, minority shareholder, and former CEO, Mr. Yishai Zohar, also co-founded

[2] Debtor Gelesis Holdings, Inc. is the 100% owner of Debtor Gelesis, Inc. In turn, Debtor Gelesis, Inc. is the 99.15% owner of Debtor Gelesis LLC.

PureTech, and formerly worked for PureTech. Mr. Zohar's wife, Daphne Zohar, was one of the co-founders of PureTech, and served as its CEO, and as a board member, until April 2024. Moreover, throughout 2023, PureTech and the Debtors were planning to merge (although the merger transaction ultimately failed to close).

5. On October 30, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code, thereby commencing the Bankruptcy Cases. On or shortly after the Petition Date, the Trustee was appointed. The Debtors had ceased all operations as of the Petition Date, and the Trustee has not operated the Debtors' business.

6. On March 1, 2024, PureTech filed a proof of claim on each Debtor's claims register asserting claims on account of the Funding (together, the "Proofs of Claim"). Each Proof of Claim asserted a secured claim in the amount of $12,562,043.84 and a general unsecured claim of $17,893,750, for a total claim of $30,455,793.84 in each Bankruptcy Case (the "Claims"). Aside from the aforementioned alleged secured portions asserted in the Claims, no other secured claims have been asserted against the Debtors.

7. On April 9, 2024, the Trustee filed a motion for approval of a sale of the Estates' primary assets, including patents and other intellectual property, and their ownership interest in Gelesis S.r.l. (the "Quota"), to a certain purchaser (the "Sale"). On May 23, 2024, the Court entered an order approving the Sale, and the Sale closed shortly thereafter. See D.I. 80. The total sale price was $15 million, of which $3 million was allocated to the Quota, and $12 million to the Patents, the Trademarks Gelesis and Plenity, and the Domain Names.[3]

8. On July 13, 2026, PureTech filed a *Motion to Compel Trustee to Make Distributions to Creditors* [D.I. 141] (the "Motion"), in which PureTech requested that the Court compel the

[3] The capitalized terms in this sentence not otherwise defined herein shall have the meanings provided in the *Asset and Share Purchase Agreement* in which the terms of the Sale were memorialized, as approved by the Court.

Trustee to make distributions on account of all unobjected-to claims within thirty days of the granting of the Motion. By necessity, if PureTech's Motion were granted, the Trustee would find himself compelled to pay the asserted secured portion of the Claims filed by PureTech in full, as he has not yet objected to the Claims, and these are the sole secured claims asserted against the Debtors.

9. On July 27, 2026, the Trustee filed an Objection to PureTech's Motion [D.I. 146] (the "Objection"). In his Objection, among other things, the Trustee asserted that because of the close relationship between the Debtors and PureTech, the Trustee planned to object to PureTech's Claims on the grounds that they should be equitably subordinated to the level of equity. Accordingly, the Trustee could not acquiesce to PureTech's request to receive payment of its Claims as asserted.

10. Following the Trustee's filing of the Objection, the Trustee and PureTech entered into discussions about a potential resolution of both the Motion and PureTech's Claims. Following arm's length negotiations, the Trustee and PureTech have reached an agreement to resolve the Motion and the Claims pursuant to certain terms and conditions (the "Settlement"), which are set out in a certain *Stipulation Between Trustee and PureTech Health LLC* (the "Stipulation"), a copy of which is attached to this Motion as Exhibit "A."[4]

11. The principal terms of the Settlement include the following:

> Reduction of secured component; allowance and payment. The Claims shall be allowed and paid as follows: (i) PureTech shall have an allowed secured claim of $10,262,635 in the Bankruptcy Cases, on account of which the Trustee shall make a full distribution to PureTech as promptly as reasonably possible following the entry of a final order[5] by the Bankruptcy Court approving the Stipulation (the "Approval Order") and in no event more than seven (7) business days after the

[4] To the extent of any inconsistency between this Motion and the terms of the Stipulation, the terms of the Stipulation shall govern.

[5] The Approval Order shall become a final order when the time for taking an appeal has expired or, in the event that an appeal has been taken, on the day when the Approval Order is affirmed with no further right of appeal.

Approval Order has become a final order; and (ii) in each of the Bankruptcy Cases, PureTech shall have an allowed general unsecured claim for the remaining balance of the total amount asserted in its applicable Proof of Claim. The Trustee shall make distributions (if any) on account of such allowed general unsecured claims pursuant to the relevant provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, after approval by the Bankruptcy Court of the Trustee's final report, at the same time as the Trustee makes distributions (if any) to the other holders of allowed general unsecured claims in the Bankruptcy Cases.

Allocation of sale proceeds between Quota and IP. PureTech consents to the Trustee's allocation, attached to the Stipulation as Exhibit "A," of his fees, expenses, and commission as between, on one hand, the Sale proceeds attributable to the Quota, which is not part of PureTech's collateral, and, on the other hand, the Sale proceeds attributable to PureTech's asserted collateral.

Mutual Releases. Except as otherwise provided in the Stipulation, upon the receipt by PureTech of the amount set forth in subparagraph 1(i) of the Stipulation, the Trustee on the one hand, and PureTech on the other hand, in respect of the mutual promises and other consideration recited in the Stipulation, shall release each other and their respective predecessors in interest, successors, shareholders, members, directors, officers, employees, agents, attorneys and assigns of any and all obligations, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, arising out of, by reason of, or relating to the Bankruptcy Cases, the Debtors, and the Debtors' Estates. Notwithstanding the foregoing, the Parties' rights and obligations arising out of the Stipulation, including without limitation PureTech's right pursuant to subparagraph 1(ii) of the Stipulation to share in the distribution, if any, made by the Trustee to general unsecured creditors after approval of the Trustee's final report, are not released.

## Relief Requested

12. By this Motion, the Trustee respectfully seeks entry of an order, in substantially the attached form: (i) approving the Settlement and the Stipulation; and (ii) authorizing the Trustee to enter into the Stipulation, and take all actions necessary or appropriate to implement the terms of the Stipulation.

## Basis For Relief Requested

13. The Bankruptcy Court has the authority to grant the relief requested in this Motion pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a). Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or

appropriate to carry out the provisions of this title." Bankruptcy Rule 9019 grants the Bankruptcy Court authority to approve settlements of claims and controversies after notice and a hearing.

14. Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, this District has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

15. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (*quoting Louise's*, 211 B.R. at 801). The Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors. *See Martin*, 91 F.3d at 393 (*citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).

16. Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425. "[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (*quoting In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979)).

17. The Trustee submits that the Settlement with PureTech, as embodied in the Stipulation, meets these standards. The Settlement resolves the objection that the Trustee would otherwise need to bring seeking to equitably subordinate PureTech's claims to the level of equity, or otherwise recharacterize them as equity interests. If the Trustee were to litigate this objection, the Estates would face time-consuming and expensive litigation involving fact-intensive issues, which would likely include extensive discovery and trial preparation. A significant portion of the Sale proceeds would likely be consumed by the litigation, and the Estates would only see any benefit if the Trustee were successful. As with any litigation, the Trustee's prevailing at trial would certainly not be assured.

18. The Settlement removes this cost and uncertainty, and effectively carves out a portion of the Sale proceeds attributable to PureTech's asserted collateral for the benefit of unsecured creditors. Moreover, the Settlement effects a global resolution of all issues between the Estates and PureTech – their only asserted secured creditor – thereby bringing the Bankruptcy Cases materially closer to conclusion.

19. Accordingly, the Trustee respectfully submits that the Settlement is a sound exercise of his business judgment, is in the best interests of the Estates, and meets or exceeds the required range of reasonableness under the applicable caselaw.

## Notice and Conclusion

20. This Motion will be served on: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for PureTech; and (iii) all parties who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of this Motion (the "Notice Parties"). In light of the relief requested, the Trustee respectfully submits that such notice is adequate, and that no other or further notice need be given.

WHEREFORE, the Trustee respectfully requests that the Court enter an order, in substantially in the attached form: (i) granting this Motion; (ii) approving the Settlement and the Stipulation; (iii) authorizing the Trustee to enter into the Stipulation, and to take all actions necessary or appropriate to implement the terms of the Stipulation; and (iv) providing any other relief that may be appropriate.

Dated: August 26, 2026

COZEN O'CONNOR

By: */s/ Simon E. Fraser*

John T. Carroll, III (No. 4060)
Simon E. Fraser (No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE 19801
(302) 295-2000 Phone
jcarroll@cozen.com
sfraser@cozen.com

*Counsel to George L. Miller,*
*Chapter 7 Trustee*